UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| In re:<br><br>VITAL PHARMACEUTICALS, INC.,<br>et al.,<br><br>    Debtors. | CASE NO. 22-17842-PDR<br>(Jointly Administered)<br><br>CHAPTER 11 |
| VPX LIQUIDATING TRUST,<br>by and through its Liquidating Trustee,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN H. OWOC, et al.,<br><br>    Defendants. | ADV. PROC. NO. 24-1009-PDR |

## MOTION TO DISMISS AMENDED ADVERARY COMPLAINT

Defendants John H. Owoc, Megan Elizabeth Owoc, Elite Island LLC, JHO GA-I Investment LLC, JHO NV-I Investment LLC, Sheridan Real Estate Investment A, LLC, Sheridan Real Estate Investment B, LLC and Sheridan Real Estate Investment C, LLC (the "Defendants"), by and through undersigned counsel, respectfully request the Court dismiss the Amended Complaint (the "Complaint") (ECF 105) filed in this case on June 7, 2024 and as grounds in support thereof respectfully state as follows:

## INTRODUCTION

The original Adversary Complaint filed in this case (ECF 1) contained 110 pages, 32 counts, all of which adopted every single allegation of the Adversary Complaint, and 669

*Case No. 22-17842-PDR*
*Adv. Proc. No. 24-1009-PDR*

numbered paragraphs. It also contained numerous violations of Eleventh Circuit precedent and Fed.R.Civ.P. 8(a)(2) and 10(b).[1]

All of the defendants in the case moved to dismiss the Adversary Complaint or, in one case, for a more definite statement. Several reached an agreement, without any explanation of what they agreed to, other than the Plaintiff agreed to file an amended complaint (See ECFs 89, 93 and 96). As to the Defendants herein, the Court granted their initial motion to dismiss in part and denied it in part with leave to amend (see ECF 97).

So what did the Plaintiff do for an encore? The Plaintiff somehow managed to increase the number of pages to 149 (exclusive of exhibits, which are another 101 pages), increase the number of paragraphs to 930 and the number of counts to 54, even though the Plaintiff dropped at least three counts (one for aiding and abetting breach of fiduciary duty against Megan Owoc and two counts for turnover that were not viable pursuant to long-standing Eleventh Circuit precedent). And while some of the additions were necessary based on the Court's rulings on April 24 (such as breaking out the objections to claims), the Plaintiff nonetheless failed to amend to cure two of the problems that deemed the prior complaint a shotgun pleading – failure to eliminate irrelevant, conclusory and repetitive allegations and failing to break down certain counts in order to separate claims against multiple defendants. While the Plaintiff cured the defect from the prior Adversary Complaint of adopting every single allegation of the Adversary Complaint into each and every count, the current Complaint now contains numerous allegations that are not adopted into any count, thus making them irrelevant and unnecessary. These continued violations of Rules 8(a)(2) and 10(b) again require dismissal of the Complaint.

---

[1] Unless otherwise stated, any citations to the Federal Rules of Civil Procedure are to rules that are incorporated into the Bankruptcy Rules and are thus applicable to this adversary proceeding.

**LAW OFFICES OF ROBERT F. REYNOLDS, P.A.**
515 East Las Olas Blvd., Suite 850, Fort Lauderdale, Florida 33301 Telephone 954.766.9928

Additionally, as with the original Adversary Complaint, there are additional grounds to dismiss certain counts, such as claims for declaratory relief that are not tied to any underlying substantive claim and, in the case of the claims against the Commercial LLCs (as they are defined in the Complaint), allegations that negate any assertion that the Debtor did not receive value for the transfers because the Debtor received a benefit from the repayment to Truist Bank from the sales of the underlying properties. All of the foregoing demonstrates that the Complaint, much like the first iteration of the claims that the Plaintiff filed, must be dismissed, this time with prejudice.

## **PROCEDURAL HISTORY AND PLEADING DEFICIENCIES**

1.      Plaintiff filed the original Adversary Complaint on January 18, 2024. After the Court ruled on the various motions to dismiss, the Plaintiff filed the current version of the Complaint on June 7, 2024.

2.      The Complaint is broken into the following sections:

   a.  Nature of the Action (paragraphs 1-20), which contains 20 paragraphs of factual allegations, many of which re repeated in later paragraphs, <u>and none of which are adopted into any counts of the Complaint</u>;

   b.  Jurisdiction and venue (paragraphs 21-27),

   c.  Parties (paragraphs 28-66);

   d.  Factual Background, (paragraphs 67-437), which is broken down into Roman numerals allegedly describing different issues raised in the Complaint. However, Paragraphs 67, 68 and 69 are not adopted into any counts of the Complaint;

   e.  Counts I through VI, (paragraphs 438-502) which plead various claims for breach of fiduciary duty against Jack Owoc;

*Case No. 22-17842-PDR*
*Adv. Proc. No. 24-1009-PDR*

f.   Count VII (paragraphs 503-508), which pleads a count for aiding and abetting fiduciary duty against John Owoc, Jack Owoc's son;

g.   Count VIII (paragraphs 509-514), which pleads a count for aiding and abetting breach of fiduciary duty against Braden Shaw;

h.   Count IX (paragraphs 515-520), which pleads a count for aiding and abetting breach of fiduciary duty against David Runnebaum;

i.   Count X (paragraphs 482-488), which pleads a claim for aiding and abetting breach of fiduciary duty against a group of defendants defined as the "Real Estate LLCs;"

j.   Count XI (paragraphs 529-535), which pleads a count for aiding and abetting breach of fiduciary duty against Elite Island, LLC;

k.   Count XII (paragraphs 536-543), which pleads a count for unjust enrichment against Jack Owoc and Megan Owoc;

l.   Counts XIII through XVI (paragraphs 544-566), which plead counts against Jack Owoc for alleged fraudulent transfers pursuant to 11 U.S.C. § 548 and Chapter 726, Florida Statutes;

m.   Counts XVII through XX (paragraphs 576-612), which plead counts against Jack Owoc and the Commercial LLCs for alleged fraudulent transfers pursuant to 11 U.S.C. § 548 and Chapter 726, Florida Statutes;

n.   Count XXI (paragraphs 613-620), which pleads a preference claim against Jack Owoc and Megan Owoc jointly, although the allegations state separate amounts against each of them;

**LAW OFFICES OF ROBERT F. REYNOLDS, P.A.**
515 East Las Olas Blvd., Suite 850, Fort Lauderdale, Florida 33301 Telephone 954.766.9928

o. Count XXII through XV (paragraphs 621-663), which plead counts against Jack Owoc John Owoc and Stag Development, LLC for alleged fraudulent transfers pursuant to 11 U.S.C. § 548 and Chapter 726, Florida Statutes;

p. Count XVI through XXIX (paragraphs 664-703), which plead counts against a group of defendants referred to as the "Real Estate Enterprise Defendants" for alleged fraudulent transfers pursuant to 11 U.S.C. § 548 and Chapter 726, Florida Statutes;

q. Counts XXX and XXXI (paragraphs 704-720), which plead counts for declaratory relief that are not tied to any specific claim for relief; turnover;

r. Counts XXXII through XXXV, which plead counts against Elite Island, LLC for alleged fraudulent transfers pursuant to 11 U.S.C. § 548 and Chapter 726, Florida Statutes;

s. Count XXXVI (paragraphs 761-773), which pleads a claim for declaratory relief related to claims filed in the Debtors' main case that are related to the Commercial LLCs;

t. Count XXXVII (paragraphs 774-781), which pleads a claim for declaratory relief as to money referred to as the "Disputed Sheridan Funds;"

u. Count XXXVIII (paragraphs 782-788), which although pled as declaratory relief appears to be an objection to a claim filed on behalf of an entity named JHO Real Estate LLC;

v. Counts XXIX through XLIV (paragraphs 789-856), which plead objections to claims fined by various defendants;

    w.  Counts XLV through XLIX (paragraphs 857-894), which plead claims for recharacterization of claims that various defendants filed in the Debtors' main case and/or were scheduled on the Debtor's schedules; and

    x.  Counts L through LIV (paragraphs 895-930), which seek equitable subordination of claims that various defendants filed in the Debtors' main case and/or were scheduled on the Debtor's schedules.

3.    The Complaint then contains an unnumbered prayer for relief that sets forth all the relief the Plaintiff seeks against every single defendant.

4.    With regard to the Factual Background contained in paragraphs 67-437, the allegations are broken down into thirteen different Roman numerals, some of which are then broken down into further subparts.

5.    While the Plaintiff remedied the issue of adopting all paragraphs of the Complaint into every count, the Plaintiff has still not eliminated the dozens of irrelevant and immaterial paragraphs contained in the Complaint.

6.    Fed.R.Civ.P. 8(a)(2) and (3) direct plaintiffs to provide "(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief."

7.    Plaintiff's Complaint is anything but "short and plain." As noted above, there are over 400 paragraphs of factual allegations before the Plaintiff even reaches Count I.

8.    As with the initial Adversary Complaint, one of the reasons the Plaintiff has violated Rule 8(a)(2) is because the Plaintiff repeats allegations on numerous occasions. The most glaring example of this repetition, as it was in the initial Adversary Complaint, is in the first section that is now titled "Introduction" instead of "Nature of the Action." While the Plaintiff did reduce the number of paragraphs in the Introduction from the Adversary Complaint from 25 to

20, the Plaintiff again goes into factual allegations that are later repeated, thus lengthening the Complaint unnecessarily. For example, Paragraphs 5 through 9 make allegations related to the litigation between the Debtors and Orange Bang, Inc. and the settlement of same. Plaintiff then repeats these allegations in Section II.A of the Factual Background, which subsection is titled "The 2010 Settlement with OBI."

9.    Moreover, as part of its cure of the adoption of every paragraph of the Complaint into every count, the Plaintiff does not adopt any of the first 20 paragraphs into any count. So why keep the paragraphs, which are clearly repetitive of other allegations but which the Plaintiff admits are not necessary because the Plaintiff does not rely on them at all?

10.   This unnecessary repetition continues to be prevalent throughout the Introduction section, as all of the allegations therein are repeated in the various sections of the Factual Background. The only paragraph in this section that actually discusses the nature of the action is Paragraph 20, which sets forth the claims asserted and the relief requested (which, like the entire Introduction section, is repeated in the unnumbered paragraph at the end of the Complaint that again sets forth the relief the Plaintiff seeks).

11.   Beyond the repetitive allegations contained throughout the Complaint, the Complaint also contains numerous conclusory and inconsequential allegations. Examples of these are found in Paragraphs 82 (conclusory allegations); 98 (conclusory allegations); 116-122 (going into unnecessary details regarding what transpired during the Monster Lawsuit); 120 (conclusory allegations); 133-139 (going into unnecessary details regarding what transpired during the OBI/Monster Arbitration); 158 (conclusory allegations); 160-162 (continued repetition of allegations related to "Super Creatine" that are initially set forth in Paragraphs 10-13 in the section titles "Nature of the Action" and are repeated in paragraphs 96-102); 166 (conclusory allegations); 185 (conclusory allegations); 194 (conclusory allegations); 216

(conclusory allegations); 218 (conclusory allegations); 222 and 223 (conclusory allegations); 233 (conclusory allegations); 262 (conclusory allegations); 283 (conclusory allegations); 294 and 295 (conclusory and repetitive allegations); 356 and 362 (conclusory allegations); 369-373 (allegations regarding social media use that do not tie to any alleged damages); 387-391 (conclusory allegations not tied to any alleged damages); 408 (conclusory allegations); and 424 (conclusory allegations).

12.     The repetitive, conclusory and immaterial allegations are all further examples of the Plaintiff's violations of Rules 8(a)(2) and 10(b).

13.     As an additional pleading defect, Count XXI improperly combines preference claims against Jack Owoc and Megan Owoc. This pleading defect existed in the original Adversary Complaint (in the original Adversary Complaint the preference count was Count XIX) and was not corrected.

14.     Specifically, Paragraphs 617(c) and (d) assert amounts that were received by Jack Owoc and Megan Owoc separately, but does not state whether the Plaintiff is only seeking to recover said amounts from either Jack Owoc or Megan Owoc or whether they are somehow jointly liable.

15.     This same pleading defect pervades and infects other counts in the Complaint. For example, Counts XXII through XV assert fraudulent transfer claims against Jack Owoc, Tropical Sunset 117, LLC, Jon Owoc and Stag Development, LLC. The amounts that the Plaintiff seek to recover are set forth in Exhibits "F" and "G" attached to the Complaint.

16.     A review of Exhibits "F" and "G" shows that there were different recipients of the various alleged transfers. And while the amounts and dates of the transfers are set forth, the Plaintiff, after painstakingly setting forth in sordid detail which entity allegedly owned which

property, simply lumps all of the defendants named in Counts XXII through XV and says they are all liable for every penny of the alleged transfers the Plaintiff seeks to recover.

17.     The same is true of Counts XXVI through XXIX, which assert identical claims – in the alternative to Counts XXII through XXV according to the Plaintiffs – against a group of defendants that the Plaintiff defines as the "Real Estate Enterprise Defendants" and adopts Exhibits "H" and "I." Again, despite acknowledging that the "Real Estate Enterprise Defendants" are separate entities and despite attempting to describe the alleged "Real Estate Enterprise" in Paragraphs 233-282, the Plaintiff makes no attempt to state which of the "Real Estate Enterprise Defendants" is liable for which transfer and instead improperly lumps them together.

18.     Finally, the same issue arises in Counts XVIII through XX, which assert fraudulent transfer claims against Jack Owoc and the Commercial LLCs. Those counts seek to recover $115,924,743.00 in alleged fraudulent transfers as set forth in Exhibits "C" and "D."

19.     In the case of Exhibits "C" and "D," the exhibits break out at times the specific entity whom the Plaintiff alleges was the beneficiary of the transfer, but again lumps all the defendants together and makes each of the liable for all of the transfers despite acknowledging that some of the transfers only benefitted certain of the defendants.

20.     Moreover, although the Plaintiff stated in Paragraphs 580, 589, 598 and 607 that the transfers were made for the benefit of Jack Owoc, Jaco Owoc is not mentioned anywhere on Exhibits "C" and "D" in the column titled "For the Benefit of" despite the fact that the other Commercial LLCs are all mentioned at least once. This is contrary to Exhibits "E," "F," "G" and "H" which all list Jack Owoc in the "For the Benefit of" Column, thus specifically indicating which transfers the Plaintiff alleges Jack Owoc is allegedly liable to repay.

21.     The foregoing are all pleading defects that violate – for a second time – Rules 8(a)(2) and 10(b) and the Eleventh Circuit cases explicitly prohibiting shotgun pleadings. They are not, however, the only pleading defects present in the Complaint, although the Eleventh Circuit cases state, as set forth below, that a second shotgun complaint is grounds for dismissal with prejudice.

22.     Counts XVII through XX – the fraudulent transfer claims asserted against Jack Owoc and the Commercial LLCs – the Complaint contains allegations that specifically defeat the claims. Counts XVII through XX seek to avoid and recover fraudulent transfers under both the provisions of 11 U.S.C. § 548 and Chapter 726, Florida Statutes. The total amount the Plaintiff alleges was transferred that can be recovered in these counts is $115,924,743.00. Complaint, Paragraphs 579 and 597.

23.     However, the Complaint specifically alleges that that when the Commercial LLCs sold properties the Debtors received $123 million in value in paydowns on the Debtors' secured indebtedness to Truist, as well as an additional unpled amount when a third property was sold. These amounts are substantially more than the Plaintiff seeks from the Commercial LLCs. See Paragraphs 307-308 (sale proceeds of $51.1 million paid to Truist to reduce Debtors' secured indebtedness); Paragraphs 340-341 (sale proceeds of $71.9 million paid to Truist to reduce Debtors' secured indebtedness); Paragraphs 318-319 ("Certain of the sales proceeds . . . were paid to Truist to reduce the Company's outstanding secured indebtedness.")

24.     These paydowns more than constitute sufficient value to defeat all claims asserted against the Commercial LLCs, as well as against Jack Owoc in Counts XVI through XX, and thus requires dismissal of those counts as well as Counts XXXI and XXXVII (which are also subject to dismissal based on the failure to properly assert declaratory claims as described below).

25.     Lastly, the Complaint contains several counts seeking declaratory relief (Counts XXX, XXXI, XXXVI, XXXVII and XXXVIII), three of which directly involve the Defendants herein and one that indirectly affects Jack Owoc (Count XXX).

26.     All of the foregoing seek relief by citing to 28 U.S.C. § 2201, which authorizes a "court of the United States" to grant declaratory relief. However, case law underlying Section 2201 states that it is merely procedural in nature and does not create any substantive rights or remedies. Plaintiff's declaratory relief claims are not tied to any other substantive claims in the Complaint, thus rendering them defective and subject to dismissal.

27.     Moreover, the Eleventh Circuit has held that bankruptcy courts are not "court(s) of the United States" pursuant to 28 U.S.C. § 451. Accordingly, this Court, respectfully, is not authorized to grant declaratory relief pursuant to Section 2201.

28.     All of the foregoing, as will be explained in further detail below, requires the Complaint to be dismissed. Because the violations of Rule 8(a)(2) and 10(b) and Eleventh Circuit precedent regarding shotgun pleadings is the second violation, the Court should dismiss the Complaint with prejudice as to the Defendants herein.

## MEMORANDUM OF LAW

## I.     The Complaint, Despite Remedying Some of the Prior Violations, is Still A Shotgun Pleading.

As the Defendants herein argued in their prior motion, Fed.R.Civ.P. 8(a)(2) states that a complaint shall contain "A short and plain statement of the claim showing that the pleader is entitled to relief[.]" Rule 10(b) states that "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a

denial—must be stated in a separate count or defense." As the Defendants set forth above, the Complaint in this case, despite fixing some of the defects found in the original Adversary Complaint, still violates both rules and is thus a shotgun pleading subject to being stricken.

In *Barmapov v. Amuial*, 986 F.3d 1321 (11th Cir. 2021) the Eleventh Circuit described shotgun pleadings as follows:

> A shotgun pleading is a complaint that violates either Federal Rule of Civil Procedure 8(a)(2) or Rule 10(b), or both. . . . The "self-evident" purpose of these rules is "to require the pleader to present his claims discretely and succinctly, so that[] his adversary can discern what he is claiming and frame a responsive pleading." These rules were also written for the benefit of the court, which must be able to determine "which facts support which claims," "whether the plaintiff has stated any claims upon which relief can be granted," and whether evidence introduced at trial is relevant.
>
> Shotgun pleadings "are flatly forbidden by the spirit, if not the letter, of these rules" because they are "calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked." Besides violating the rules, shotgun pleadings also "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." We have "little tolerance" for them.

*Barmapov*, 986 F.3d at 1324 (citations omitted) (quotes in original).

The Eleventh Circuit has published dozens of opinions continually castigating attorneys who file shotgun pleadings and imploring trial courts to sanction the practice when shotgun pleadings are filed. In *Weiland v. Palm Beach County Sheriff's Office*, 792 F. 3d 1313 (11th Cir. 2015) the Eleventh Circuit reviewed over 60 published opinions that had discussed the issue of shotgun pleadings and then stated the following:

> In the hope that we could impose some clarity on what we have said and done about unclear complaints, we have examined more than sixty published decisions issued since . . . 1985. One thing we looked for is how many types of shotgun pleadings have been used, wittingly or unwittingly, by attorneys and litigants.
>
> Though the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings. The most common type — by a long shot — is a complaint containing multiple counts where each count adopts the

allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Weiland*, 792 F.3d at 1321-1323 (footnotes omitted). The *Weiland* case cited numerous cases in footnotes that fell into the foregoing categories. While the Plaintiff may have remedied the violation of the first *Weiland* category in the current Complaint, the Complaint still violates at least two of the *Weiland* categories because it still contains dozens of paragraphs that are repetitive, irrelevant, conclusory and not tied to any claims for relief, thus violating the second *Weiland* category, and still asserts multiple claims against multiple defendants without specifying what each defendant is allegedly responsible for, thus violating the fourth *Weiland* category.

In *Barmapov, supra* the Eleventh Circuit, after acknowledging that the complaint filed in that case did not fall into categories one, three and four set forth in *Weiland*, nonetheless found that the complaint filed in the case "undoubtedly falls into the second category of shotgun pleadings" because it was rife with immaterial factual allegations." *Barmapov*, 986 F. 3d at 1325. The court ultimately concluded that the plaintiff's complaint in *Barmapov* was a shotgun pleading and affirmed the dismissal of the complaint.

As noted above, the Complaint in this case contains dozens of repetitive allegations, such as the assertions in the Introduction that are repeated several times throughout the Complaint and

the continued repetition of allegations related to the alleged "Super Creatine" issues. The allegations in the Introduction are not adopted into any count, thus effectively admitting that they are not relevant or necessary to the Plaintiff's claims. The Complaint also contains a number of conclusory allegations that make no factual assertions at all or are entirely too vague to constitute factual assertions. See Paragraphs 158 ("Jack Owoc's inexplicable decision plunged the Company into further disarray and close to financial ruin."); 166 ("Factoring in the contingent liabilities from the pending litigations reveals the dire nature of the Company's financial condition and insolvency."); 185 ("While the Company was facing significant litigations that, among other things, exposed the Super Creatin Scheme and the improper use of the "Bang" mark and threatened the Company's existence, Jack Owoc was busy funneling assets out of the Company and the reach of its creditors."); 222 ("In addition to treating the Company's money as his own – despite mounting litigation costs, contingent liabilities, and judgments – Jack Owoc used the Company's employees to facilitate all manners of his personal affairs and transactions."); 233 ("Starting in 2018, Jack Owoc began transferring money out of the Company for more than just his personal expenses."); and 294-295 ("Jack Owoc did not just limit himself to acquiring residential properties with the Company's resources. He also acquired commercial properties using the Company's funds and then secreted them outside the reach of creditors by placing them in the names of entities that Jack Owoc created and solely owned. . . . While the Company was in dire financial condition and facing significant litigations that exposed the Super Creatine Scheme and improper use of the "Bang" mark and threatened the Company's existence, Jack Owoc continued to move the Company's assets around like puzzle pieces in order to hide them from potential creditors. Jack Owoc knew the Company could fail as a result of his own misconduct and wanted to plunder as much as he could while he still had time."). These

examples taken from the paragraphs cited above more than demonstrate that the Complaint is a shotgun pleading given that it contains dozens of conclusory and repetitive allegations.

The Complaint also falls into category two of the *Weiland* violations because it contains numerous allegations that are not tied to any claims for damages or that are immaterial. As noted above, the entire Introduction is unnecessary as it is not adopted into a single count of the Complaint. But this is not the only section of entirely irrelevant allegations. Paragraphs 116 through 122 make assertions related to the litigation between Monster Energy Company, the Debtors and Jack Owoc. While the result of the Monster litigation may (or may not) be relevant to the Plaintiff's claims (which result the Plaintiff alleges in Paragraph 123), what transpired during that litigation has no relevance to and is immaterial to the Plaintiff's claims. The Plaintiff repeated this pleading violation in Paragraphs 133 through 139, which contain entirely immaterial allegations regarding the arbitration between the Debtors, Monster and Orange Bang, Inc. Again, while the result of the arbitration may or may not be material, what transpired in the arbitration has nothing to do with the Plaintiff's claims.

Adding to the above violations, in Paragraphs 369 through 373 the Plaintiff makes a number of allegations regarding Jack Owoc's alleged misuse of social media after the Debtors filed their petitions. Yet, in Count II, which is the count that alleges that Jack Owoc breached fiduciary duties postpetition, there is no mention of the alleged social media misuse as a basis for damages, with the exception of Paragraph 455(d), which asserts that one alleged social media post "could" have caused damages to the Debtors. These allegations are woefully insufficient to support any sort of damage claims and further exemplify the shotgun pleading approach the Plaintiff has taken yet again.

In addition to violating category two of the *Weiland* test the Complaint again violates category four of *Weiland* by grouping, on several occasions, multiple defendants into counts

without setting forth which conduct and damages the Plaintiff alleges each specific defendant is liable for. Count XXI, the preference count, is violative of category four of the *Weiland* test because it improperly lumps together Jack Owoc and Megan Owoc as defendants in a preference claim that asserts that a number of transfers were preferential, but is not entirely clear as to which transfers were preferential as to whom. The same flaws persist in all of the fraudulent transfer counts set forth above (Counts XVII through XX and XXII through XXIX), which likewise lump together fraudulent transfer claims against numerous defendants without specifying which defendant is liable for what conduct and damages. The numerous and pervasive violations of Ruled 8(a)(2) and 10(b) are more than technical violations; when combined with the dozens of repetitive, immaterial and conclusory allegations the violations push the Complaint well within categories two and four of *Weiland* and compel the finding that the current Complaint, much like the original Adversary Complaint, is a shotgun pleading.

The Eleventh Circuit has held that a court should dismiss a case on shotgun pleading grounds if the plaintiff who has counsel is given one chance to amend but fails to correct the shotgun pleading violations. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294-1296 (11th Cir. 2018 (citations omitted). The Plaintiff has sophisticated counsel in this case. There is no reason why the Complaint could not have been properly remedied and all of the deficiencies fixed. Instead, the Plaintiff cured some defects but failed to address the plethora of irrelevant, immaterial, repetitive and conclusory allegations and failed to remedy the numerous instances of improperly lumping together defendants in claims. These numerous, multiple pleading violations infect the entire Complaint, and the Court should therefore dismiss it with prejudice based on the Plaintiff's failure to file a pleading that complies with the Federal Rules of Civil Procedure and Eleventh Circuit precedent.

**II.** **Counts XVII Through XX, XXX and XXI Must Be Dismissed Because the Plaintiff's Allegations that the Debtors Received More Than $123 Million of Value From the Commercial LLC's Negate Any Claims Against the Commercial LLCs and Against Jack Owoc That Relate to the Commercial LLCs.**

Counts XVII through XX assert fraudulent transfer claims against the Commercial LLCs and Jack Owoc. Counts XXXI and XXXVII are declaratory relief counts that seek findings that certain funds and real property are property of the Debtors and not the Commercial LLCs. All of these claims fail on their face as a matter of law because the Complaint itself pleads and acknowledges that the Commercial LLCs provided more than $123 million in value to the Debtors when the various properties were sold, which is more than the approximately $115 million the Plaintiff seeks to recover from the Commercial LLCs. Because no claims exist against the Commercial LLCs due to them providing significantly more value to the Debtors than the Plaintiff seeks to recover, the claims must be dismissed.

"In determining whether a complaint survives [Fed.R.Civ.P. 12(b)(6)], we ask whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' . . . 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Brooks v. Powell*, 800 F.3d 1295, 1300 (11th Cir. 2015) (citations omitted). In the instant case, the Plaintiff's fraudulent transfer and related claims based on amounts transferred for the benefit of the Commercial LLCs fail because the Plaintiff's allegations include allegations that the Debtors received significantly more from the Commercial LLCs - at least $7 million more, depending on how much was paid to reduce the Debtors' indebtedness from the sale of the "Sheridan B" property, which the Plaintiff did not state in the Complaint – than the Plaintiff alleges is the amount of transfers attributable to the Commercial LLCs. The Complaint states that the sales of the various properties resulted in the reduction of the Debtors' debt to Truist by at least $123

17

million, which constitutes value to the Debtors and defeats any ability of the Plaintiff to prove any claims against the Commercial LLCs or any claims against Jack Owoc related to the Commercial LLCs. Indeed, the definition of value at both 11 U.S.C. § 548(d)(2)(A) and Fla. Stat. § 726.104(1) state that the satisfaction of an antecedent debt constitutes value. See 11 U.S.C. § 548(d)(2)(A) ("'Value' means . . . satisfaction or securing of a present or antecedent debt of the debtor . . ."); Fla. Stat. § 726.104(1) ("Value is given for a transfer or an obligation if, in exchange for the transfer or obligation . . . an antecedent debt is secured or satisfied"). Given that the Plaintiff has alleged that the Commercial LLCs satisfied the Debtor's debt to Truist in amounts more than the Plaintiffs allege were transferred for the benefit of the Commercial LLCs (and Jack Owoc), the Plaintiff's fraudulent transfer claims necessarily fail.

Because the only substantive claims that the Plaintiff has asserted against the Commercial LLCs fail as a matter of law, the declaratory relief claims the Plaintiff has asserted fail as well. The amounts set forth in Counts XXXI and XXXVII that the Plaintiff asserts somehow give it a right to declaratory relief are far less than the amounts that the Plaintiff has acknowledged the Debtors received from the Commercial LLCs, even if they are not part of the $115 million set forth in the Complaint. The Plaintiff has not asserted any other substantive claims against the Commercial LLCs, which is also grounds to dismiss the declaratory relief claims as discussed in more detail below. Simply put, the reduction of the Debtors' debt to Truist in the amount of $123 million plus whatever was received from the third sale, all of which the Plaintiff alleged and acknowledged the Debtors received, is fatal to Counts XVII through XX, XXXI and XXXVII, all of which should be dismissed with prejudice.

**III.    The Plaintiff's Declaratory Relief Claims Must be Dismissed Because 28 U.SC. § 2201 Does Not Create Any Substantive Rights, and Thus Cannot Be The Basis For the Plaintiff's Claims. Moreover, this Court, Respectfully, is Not Authorized to Grant Relief Pursuant to Section 2201.**

Counts XXX, XXXI, XXXVI, XXXVII and XXXVIII of the Complaint seek various forms of declaratory relief against the Defendants herein (and in the case of Count XXX against others). None of the declaratory relief counts reference any substantive claims that the Plaintiff has asserted or attempted to assert against the Defendants herein. This failure to assert any sort of substantive claim that would support declaratory relief is fatal to the declaratory relief claims, as Section 2201 is a procedural device and not a source of substantive rights. Moreover, the Eleventh Circuit has held on at least two occasions that bankruptcy courts are not "court(s) of the United States," which is a requirement in Section 2201 for the ability to provide declaratory relief. Because the Plaintiff has failed to plead any substantive rights to support its declaratory relief claims, and because this Court cannot, respectfully, award relief pursuant to Section 2201, the Plaintiff's declaratory relief claims must be dismissed.

"Declaratory relief is a procedural device which depends on an underlying substantive cause of action and cannot stand on its own." *Arencibia v. AGA Serv. Co.*, 533 F. Supp. 2d 1180, 1195 (S.D. Fla. 2021) (citations omitted). With regard to Counts XXXI and XXXVII, which assert declaratory relief claims related to the fraudulent transfer claims against the Commercial LLCs, all of the substantive counts that the Plaintiff asserted against the Commercial LLCs are due to be dismissed based on the Plaintiff's allegations that the Commercial LLCs provided more than $123 million of value to the Debtors. Because there are no other substantive claims asserted against the Commercial LLCs, the declaratory relief claims must also fail because there are no underlying substantive claims remaining against the Commercial LLCs. Additionally, none of the declaratory relief claims assert or relate to any underlying substantive cause of action as

*Arencibia* states. Because there is no underlying substantive cause of action asserted with regard to any of the declaratory relief causes of action, none of them can stand on their own.

Even if the Plaintiff could somehow utilize the declaratory relief statute to plead any sort of cognizable claim, this Court, respectfully, cannot award the Plaintiff any sort of declaratory relief. Section 2201 states that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . ." 28 U.S.C. § 451 states that "The term 'court of the United States' includes the Supreme Court of the United States, courts of appeals, district courts constituted by chapter 5 of this title, including the Court of International Trade and any court created by Act of Congress the judges of which are entitled to hold office during good behavior." The Eleventh Circuit has twice held that this definition does not include bankruptcy courts. *See In re Davis*, 899 F.2d 1136, 1138-1142 (11th Cir. 1990); *Ine re Brickell Inv. Corp.*, 922 F.2d 696, 701-702 (11th Cir. 1991). Although those decisions did not involve Section 2201, they did address the question of whether or not a bankruptcy court is a "court of the United States" pursuant to Section 451, which exact phrase is contained in Section 2201, and concluded the answer was no. So far as undersigned counsel's research has shown, both decisions are still good law and thus binding on this Court.

There is nothing distinguishing about the language in Section 2201 that would lead to a different result. Simply put, this Court, respectfully, does not qualify as a "court of the United States" as Congress has defined the term in Section 451. Because the Court is not a "court of the United States" under said definition, and because only a "court of the United States" can grant declaratory relief pursuant to Section 2201, to the extent the declaratory relief counts are not dismissed for failing to plead any underlying substantive right they must be dismissed because this Court, respectfully, lacks the authority to grant said relief.

*Case No. 22-17842-PDR*
*Adv. Proc. No. 24-1009-PDR*

## RESERVATION OF RIGHTS[2]

Defendants herein do not waive any rights or defenses not set forth or raised herein.

## CONCLUSION

WHEREFORE, for the reasons states herein, Defendants herein respectfully request the Court grant this Motion, dismiss the Plaintiff's Complaint with prejudice as well as grant any other relief the Court deems proper under the circumstances.

Dated this 26th day of July, 2024.

**LAW OFFICES OF ROBERT F. REYNOLDS, P.A.**
515 East Las Olas Blvd., Suite 850
Fort Lauderdale, FL 33301
Telephone 954.766.9928
Email: rreynolds@robertreynoldspa.com

By: /s/ Robert F. Reynolds
     Robert F. Reynolds
     Florida Bar No. 174823

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been furnished via the Court's CM/ECF electronic noticing system to Brett Amron, Esq., bamron@bastamron.com, Jeffrey Kucera, Esq., jeffrey.kucera@klgates.com, Mark Roher, Esq., mroher@markroherlaw.com, Charles Tatelbaum, Esq., cmt@TrippScott.com and all other persons entitled to receive electronic notices in this case on this 26th day of July, 2024.

     /s/ Robert F. Reynolds
     ROBERT F. REYNOLDS

---

[2] While the Defendants herein recognize that the Court treats the allegations of the Complaint as true when passing on a motion to dismiss, the Defendants herein nonetheless deny all of the allegations of the Complaint and deny they have any liability whatsoever to the Plaintiff.

**LAW OFFICES OF ROBERT F. REYNOLDS, P.A.**
515 East Las Olas Blvd., Suite 850, Fort Lauderdale, Florida 33301 Telephone 954.766.9928