UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*,[1] | Case No.: 22-17842-PDR |
| Debtors. | (Jointly Administered) |
| _____/ | |
| VPX LIQUIDATING TRUST, by and through its Liquidating Trustee, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 24-01009-PDR |
| JOHN H. OWOC, MEGAN ELIZABETH OWOC, JONATHAN W. OWOC, BRANDEN SHAW, DAVID RUNNEBAUM, JWO REAL ESTATE INVESTMENT I, LLC, JWO REAL ESTATE INVESTMENT II LLC, JW OWOC ENTERPRISES, LLC, 167 SPYGLASS LN LLC, 120 SPYGLASS LN LLC, 3 PELICAN DR LLC, TROPICAL SUNSET LLC, STAG DEVELOPMENT LLC, SHAW INVESTMENTS & REALTY, INC., ELITE ISLAND LLC, JHO GA-1 INVESTMENT, LLC, JHO NV-1 INVESTMENT LLC, SHERIDAN REAL ESTATE INVESTMENT A, LLC, SHERIDAN REAL ESTATE INVESTMENT B, LLC, and SHERIDAN REAL ESTATE INVESTMENT C, LLC, | |
| Defendants. | |
| _____/ | |

## LIQUIDATING TRUST'S MOTION (I) TO COMPEL BETTER ANSWERS TO INTERROGATORIES AND COMPLIANCE WITH THIS COURT'S APRIL 17, 2025 ORDER, AND (II) FOR ATTORNEYS' FEES

---

[1]    The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

Plaintiff, the VPX Liquidating Trust (the "Liquidating Trust" or "Plaintiff") in the above-captioned adversary proceeding (the "Adversary Proceeding"), by and through its undersigned counsel, pursuant to Rule 36 of the Federal Rules of Civil Procedure (the "Rules"), made applicable hereto pursuant to Rule 7036 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby moves (this "Second Motion"): (i) to compel better answers to the Interrogatories (defined below) served upon Defendants Jack H. Owoc ("Jack Owoc"), Megan Elizabeth Owoc ("Megan Owoc," and together with Jack Owoc, the "Owocs"), Elite Island LLC ("Elite Island"), and the Commercial LLCs[2] (collectively, "Defendants") and Defendants' compliance with this Court's Order (defined below) entered on April 17, 2025; and (ii) for attorneys' fees, and states as follows:

## PRELIMINARY STATEMENT

More than eight months ago, Plaintiff served Interrogatories on each of the Defendants. Following Defendants' failure to provide answers to the Interrogatories, Plaintiff served Defendants with a deficiency letter addressing their failure to respond. While Defendant Megan Owoc subsequently provided untimely and inadequate answers to the Interrogatories served on her, Defendants otherwise disregarded and ignored the deficiency letter, and Defendants Jack Owoc, Elite Island, and the Commercial LLCs did nothing to remedy their failure to respond to the Interrogatories.

Based upon, *inter alia*, (i) the inadequacy of Megan Owoc's answers to the Interrogatories, and (ii) Jack Owoc, Elite Island, and the Commercial LLCs' failure to respond to the Interrogatories, Plaintiff filed its *Amended Motion to Compel Discovery Responses and for*

---

[2] "Commercial LLCs" means JHO GA-I Investment LLC, JHO NV-I Investment LLC, Sheridan Real Estate Investment A, LLC, Sheridan Real Estate Investment B, LLC and Sheridan Real Estate Investment C, LLC.

*Attorneys' Fees* [ECF No. 250] (the "First Motion").  On April 17, 2025, the Court ordered the Defendants to provide all outstanding answers to the Interrogatories (and, in the case of Megan Owoc, amended interrogatory answers) within sixty days, i.e. by June 16, 2025.[3]  The Order further required the Defendants to "make a rolling production of their answers over the course of the next sixty days" and such "answers must be reasonable."[4]  Nonetheless, the Defendants provided no answers – amended or otherwise – during the sixty-day period, then requested a week-long extension via email at 6:00 pm on June 16, 2025.[5]

While Plaintiff consented to Defendants' request,[6] the responses Defendants ultimately provided contain numerous non-responsive answers and demonstrates the Defendants' failure to comply with the Order and follow the Court's directive at the hearing.  Prime examples are Defendants' answers to Interrogatories seeking their position regarding whether specific transfers were made, the purpose of specific transfers, and the identities of subsequent transferees (if any) of specific transfers.  Not only did Megan Owoc fail to amend her original answers stating that she was "still reviewing records" to determine her responses to those Interrogatories, every other Defendant adopted the same non-answers.  With respect to those Interrogatories, despite the passage of more than four months since the hearing, Defendants have made no effort to provide information beyond what was already contained in Megan Owoc's deficient original answers.

---

[3]    *See Order Granting in Part and Denying in Part Liquidating Trust's Amended Motion to Compel Discovery Responses* [ECF No. 273] (the "Order").

[4]    In addition to the Order, during the hearing on the First Motion, the Court specifically instructed the Defendants that they were to provide their answers on a rolling basis during that sixty-day period (i.e., "[A]s you get an answer you give it to them."), and the Defendants were to make "significant effort to complete discovery within that 60-day period."  *See* Transcript of Hearing, March 26, 2025 at 88:6–22, Main Case ECF No. 2880.

[5]    *See* Email Exchange between R. Reynolds and P. Klock, June 16, 2025, Ex. A at 2.

[6]    On the following morning, the undersigned provided the Plaintiff's consent to the requested extension.  *See id.* at 1.

Moreover, Defendants have been in possession of the documents that were produced by Plaintiff for more than three months. While the Owocs have been in possession of a majority of these documents since the Spring 2023, Plaintiff produced documents in this Adversary Proceeding on the following dates: January 29, 2025; March 10, 2025; March 18, 2025; March 21, 2025; and April 8, 2025. Such documents provide the Defendants with adequate information for Defendants to properly and completely respond to the Interrogatories. Importantly, the Owocs have demonstrated fulsome knowledge and recollection with respect to the Tropical Sunset 117, LLC ("Tropical Sunset") transfers,[7] yet claim ignorance as to the transfers at issue in the Interrogatories.

Despite multiple attempts to meet and confer, including a second deficiency letter (i) addressing the failure to adequately answer the Interrogatories and (ii) requesting amended interrogatory responses by July 8, 2025, the Defendants have failed to provide amended answers to the Interrogatories.

As a result of Defendants' failure to comply with the discovery rules and the Order, Plaintiff is again forced to incur the time and expense of filing the Second Motion. Accordingly, Plaintiff respectfully requests that the Court order Defendants to provide full and complete answers to the Interrogatories, and grant Plaintiff the costs and fees incurred in filing the First Motion and this Second Motion.[8]

---

[7]    For example, at the June 11, 2025 hearing, Megan Owoc asserted that the transfers totaling approximately $22.8 million related to Tropical Sunset "were [Jack Owoc's] distributions, his dividends . . . ." *See* Transcript of Hearing, June 11, 2025 at 22:3–9, Main Case ECF No. 2921. Likewise, Jack Owoc asserted that he "contributed roughly $29 million" to Tropical Sunset. *Id*. at 26:15–18.

[8]    At the hearing on the First Motion, the Court reserved its ruling on Plaintiff's request for fees, and stated,

> In terms of fees, I'm not going to award them at this point. I will reserve to see how things go the next round. Mr. Reynolds, the reason I'm reserving is because that 30 days that you say you're going to amended [sic], and the 60 days that you say you're going to also amend, those dates are important

## FACTUAL BACKGROUND

### A. The Adversary Proceeding

1. On January 18, 2024, the Liquidating Trust filed its *Adversary Complaint for Breaches of Fiduciary Duty, Corporate Waste, Aiding and Abetting Breaches of Fiduciary Duty, Unjust Enrichment, Avoidance and Recovery of Transfers Pursuant to 11 U.S.C. §§ 502, 547, 548 and 550 and Fla. Stat. § 726.105(1)(a), (b), and 726.108, Turnover of Property, Declaratory Judgment, and Disallowance of Claims* [Adv. Pro. ECF No. 1] against Defendants, among others, which was subsequently amended on September 16, 2024. *See* Adv. Pro. ECF No. 148.[9]

2. On October 7, 2024, Defendants filed the *Answer and Affirmative Defenses of Defendants John H. Owoc, Megan Elizabeth Owoc, Elite Island LLC, JHO GA-1 Investment LLC, JHO NV-1 Investment LLC, Sheridan Real Estate Investment A, LLC, Sheridan Real Estate Investment B, LLC and Sheridan Real Estate Investment C, LLC to Second Amended Complaint* [Adv. Pro. ECF No. 156].

### B. The Liquidating Trust's Interrogatories

3. On November 22, 2024, the Liquidating Trust served interrogatories (the "Interrogatories") on Defendants. *See* Liquidating Trust's Interrogatories to Defendants, Composite Ex. B.

4. Defendants' answers to the Liquidating Trust's Interrogatories were due on December 5, 2024.

---

to me, that you and your clients work in good faith to serve discovery responses. If you don't, then I think sanctions at that point become appropriate, but I'm going to reserve on that, okay?

*See* Transcript of Hearing, March 26, 2025 at 101:25–102:11, Main Case ECF No. 2880.

[9] On February 7, 2025, the Clerk of the Court filed the redacted version of the *Second Amended Complaint* [Adv. Pro. ECF No. 229].

4936-5903-7529, v. 4

5.      Defendants did not serve timely responses to the Interrogatories, or otherwise communicate to Plaintiff when the responses to the Interrogatories would be served.

6.      On January 30, 2025, the Liquidating Trust sent a letter (the "First Deficiency Letter") to Defendants which, *inter alia*, offered Defendants an opportunity to meet and confer regarding the failure to respond to the Interrogatories and requested a response by a date certain. *See id.*, Ex. C.

7.      The First Deficiency Letter requested, *inter alia*, answers and objections to the Interrogatories on or before February 7, 2025.[10]  Defendants did not respond to the Deficiency Letter, but did serve deficient interrogatory answers from Megan Owoc on February 10, 2025.

8.      Additionally, on March 7, 2025, the Liquidating Trust notified Defendants, via email, that the Liquidating Trust intended to file a motion to compel if Defendants did not promptly remedy the deficiencies, and provided Defendants with a draft copy of the First Motion.  *See* Email from M. Julceus to R. Reynolds, March 7, 2025, Ex. D.  Defendants did not respond.

9.      On March 14, 2025, Plaintiff filed the First Motion.

10.     On March 26, 2025, the Court held a hearing on the First Motion.

11.     On April 17, 2025, the Court entered the Order, which directed the Defendants to provide reasonable answers (and in the case of Megan Owoc, amended answers) to the Interrogatories within sixty days, use "significant effort" to provide complete answers to the Interrogatories, and provide answers to the interrogatories on a rolling basis during that sixty-day period.  Adv. Pro. ECF No. 273 at ¶¶ 2–3.

12.     Defendants failed to provide any answers to the Plaintiff during the sixty-day period.

---

[10]    The Deficiency Letter inadvertently listed February 7, 2024, as opposed to February 7, 2025, as the deadline to respond.

6

13.     On Defendants' deadline of June 16, 2025, at 6:00 pm, counsel for Defendants emailed the undersigned and stated, "Our amended responses to the interrogatories are due today. We need an additional week to finalize them. I assume that will be objected to so I will file a motion.  Please let me know if you have any other questions."  *See* Email Exchange between R. Reynolds and P. Klock, June 16–17, 2025, Ex. A at 2.

14.     Hours later, prior to any meaningful conferral with the undersigned, Defendants filed a motion seeking a one-week extension of their discovery deadline.  *See* Adv. Pro. ECF No. 282.

15.     On the morning of June 17, 2025, the undersigned informed Defendants that Plaintiff had no objection to a one-week extension.  Ex. A at 1.

16.     On June 23, 2025, Defendants served answers to the Interrogatories (and, in the case of Megan Owoc, amended answers), which contain numerous non-responsive answers and are therefore deficient (and, in the case of Megan Owoc, contain – verbatim – some of the same deficient answers set forth in her original answers that were to be amended).  *See generally* Defendants' Answers and Objections to Interrogatories, Composite Ex. E; *see*, *e.g.*, *id*. at 8 (Defendant Megan Owoc responding to Interrogatory No. 2 and stating, "Megan Elizabeth Owoc is still reviewing records and determining what transfers were made and if any were not made and will amend this response accordingly"), 2 (Defendant Jack Owoc responding to Interrogatory No. 3 and stating, "Jack Owoc is still reviewing records and determining what transfers were made and if any were not made and will amend this response accordingly"); *see also* First Motion at ¶ 28 ("Interrogatory No. 2 requests that Defendant Megan Owoc identify any transfer set forth in Exhibit C of the Complaint which she denies was made. In response, Defendant states simply that she is still reviewing records to determine what transfers were made or not made. Thus, to date,

Megan Owoc has failed to provide any information responsive to Interrogatory No. 2, despite the passage of more than three and a half months since the Interrogatories were served, and she must be compelled to do so.").

17.    On July 2, 2025, Plaintiff served Defendants with another deficiency letter (the "Second Deficiency Letter"); this time regarding the Defendants' answers to the Interrogatories (and, in the case of Megan Owoc, her amended answers). *See* Letter from P. Klock to R. Reynolds, July 2, 2025, Ex. F.

18.    The Second Deficiency Letter identified non-responsive and deficient answers served by each of the Defendants, and requested better answers to the Interrogatories or a response to the Second Deficiency Letter by July 8, 2025. *Id.*

19.    On July 3, 2025, Defendants responded that they would be unable to respond to the Second Deficiency Letter by July 8, 2025. Email Exchange between R. Reynolds and P. Klock, July 2–24, 2025, Ex. G at 3.

20.    On July 6, 2025, Plaintiff asked if Defendants could respond to the Second Deficiency Letter by July 11, 2025. *Id.* at 2.

21.    Having received no response from Defendants, Plaintiff followed up on July 16, 2025, and informed Defendants that Plaintiff would seek relief from the Court if no response was received by July 18, 2025. *Id.* at 1.

22.    On July 20, 2025, Defendants' counsel responded that he had been "out of the office for several days" since the Second Deficiency Letter was sent, but promised a response to same on or before July 23, 2025. Email from R. Reynolds to P. Klock, July 20, 2025, Ex. H at 1.

23.    On July 24, 2025, Defendants' counsel responded again to say only that "[t]he Owocs are still working on amended responses" and that he would "keep prodding them to complete the amended responses." Ex. G at 1.

24.    On July 29, 2025, as a last-ditch effort to meet and confer, Plaintiff requested a call with Defendant's counsel. During the meet and confer call that occurred on July 30, 2025, counsel was unable to provide a timeframe within which the Defendants would provide amended responses to the Interrogatories, and again stated that the Owocs were still working on amended responses.

## RELIEF REQUESTED

25.    Despite Plaintiff's extensive efforts to resolve these discovery issues without judicial involvement, Defendants have failed to either cure the deficiencies in their answers or provide anything other than a vague statement that they are working on it. Thus, Plaintiff seeks entry of an order compelling Defendants to provide full and complete answers to the Interrogatories immediately and awarding Plaintiff attorneys' fees incurred filing and prosecuting the First Motion and the Second Motion.

## ARGUMENT

### A.  Plaintiff Attempted to Meet and Confer with Defendants

26.    Before filing a motion to compel, the movant must have in good faith conferred or attempted to confer with the opposing party to obtain the discovery without court action. Fed. R. Civ. P. 37(a)(1).

27.    Here, Plaintiff sent the Second Deficiency Letter on July 2, 2025 identifying, with specificity, certain deficiencies in Defendants' answers to the Interrogatories. *See* Ex. F. Plaintiff also followed up with Defendants three times via email after sending the Second Deficiency Letter,

and conferred with Defendants by telephone prior to filing this Second Motion – all to no avail. *See generally* Ex. G.

**B. The Court Should Compel Defendants to Provide Better Answers to Plaintiff's Interrogatories and Comply with this Court's Order**

28.     Defendants have failed to provide fulsome and complete answers to the Interrogatories, and their answers are therefore deficient.

29.     Rule 33(b)(3) of the Federal Rules of Civil Procedure requires that each interrogatory, "to the extent it is not objected to, be answered separately and fully in writing under oath."

30.     In addition, this Court entered the Order that required, *inter alia*, the Defendants to "make significant effort to produce as much responsive information as possible," and their answers to the Interrogatories to be reasonable.     Adv. Pro. ECF No. 273 at ¶¶ 2–3. A bankruptcy court necessarily retains the power to enforce its own orders**.** *Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958, 969 (11th Cir. 2012).

31.     Instead of providing the information called for by certain Interrogatories, the Defendants provided non-responsive answers by instead stating simply that they are "still reviewing records" and will amend their answers at some point in the future, as follows:

   a.   Jack Owoc Responses to Interrogatory Nos. 3 ("Jack Owoc is still reviewing records and determining what transfers were made and if any were not made and will amend this response accordingly."), 4 ("Jack Owoc is still reviewing records and determining what transfers were made for a reason other than a distribution to Jack Owoc and will amend this response accordingly. However, as an initial response, Jack Owoc can confirm that the transfers for $5,769.24 were payments of salary to Megan Elizabeth Owoc as compensation for her employment with the

10

Debtors. Additionally, the transfers of $28,846.16 and then $68,866.54 were salary to Jack Owoc and not distributions."), 5 ("Jack Owoc is still reviewing records and determining what transfers were subsequently paid to a third person as she [sic] does not recall from memory if any of the transfers were sent to a third party, especially because the transfers were of money which is fungible."), *see* Composite Ex. E at 2;

b. Megan Owoc Responses to Interrogatory Nos. 2 ("Megan Elizabeth Owoc is still reviewing records and determining what transfers were made and if any were not made and will amend this response accordingly."), 3 ("Megan Elizabeth Owoc is still reviewing records and determining what transfers were made for a reason other than a distribution to Jack Owoc and will amend this response accordingly. However, as an initial response, Megan Elizabeth Owoc can confirm that the transfers for $5,769.24 were payments of salary to Megan Elizabeth Owoc as compensation for her employment with the Debtors. Additionally, the transfers of $28,846.16 and then $68,866.54 were salary to Jack Owoc and not distributions."), 4 ("Megan Elizabeth Owoc is still reviewing records and determining what transfers were subsequently paid to a third person as she does not recall from memory if any of the transfers were sent to a third party, especially because the transfers were of money which is fungible."), *id.* at 8–9;

c. Elite Island Responses to Interrogatory Nos. 8 ("Elite Island, LLC is still reviewing records and determining what transfers were made and if any were not made and will amend this response accordingly."), 9 ("Elite Island, LLC is still reviewing records and determining what transfers were made and if any were not made and

11

will amend this response accordingly."), 10 ("Elite Island, LLC is still reviewing records and determining what transfers were made and if any were not made and will amend this response accordingly."), *id.* at 13–14; and

d. Commercial LLC Responses to Interrogatory Nos. 9 ("As of the time of answering this interrogatory Jack Owoc is still reviewing records and has not located the answer to this interrogatory but will continue to investigate and amend this response accordingly."), 10 ("As of the time of answering this interrogatory Jack Owoc is still reviewing records and has not located the answer to this interrogatory but will continue to investigate and amend this response accordingly."), *id.* at 17.

32.    Instead of providing information called for by other Interrogatories, or even certifying that they had made a reasonable inquiry in connection with attempting to answer those Interrogatories, the Defendants stated that they simply "do[] not recall" the answers to those interrogatories, or that "as of the date of the responses to these interrogatories" they do not recall the answer, as follows:

a. Jack Owoc Responses to Interrogatory Nos. 5 ("Jack Owoc is still reviewing records and determining what transfers were subsequently paid to a third person as she [sic] does not recall from memory if any of the transfers were sent to a third party, especially because the transfers were of money which is fungible."), 9 ("Jack Owoc does not recall the particulars of this transaction as of the date of responding to these interrogatories."), 10 ("Jack Owoc does not recall the particulars of this transaction as of the date of responding to these interrogatories."), 11 ("Jack Owoc does not recall all of the specifics of the transaction but to the best of his recollection he followed the instructions of Trust Bank and counsel as the funds were used to

12

pay down a loan due to Truist Bank."), 12 ("Jack Owoc does not recall the particulars of this transaction as of the date of responding to these interrogatories."), 13 ("Jack Owoc does not recall all of the specifics of the transaction but to the best of his recollection he followed the instructions of Trust Bank and counsel as the funds were used to pay down a loan due to Truist Bank."), 14 ("Jack Owoc does not recall the particulars of this transaction as of the date of responding to these interrogatories."), 17 ("Jack Owoc does not recall the specifics of the filing of the claims as of the date of the responses to these interrogatories but believes they were filed by counsel."), 18 ("Jack Owoc does not recall the specifics of the filing of the claims as of the date of the responses to these interrogatories but believes they were filed by counsel."), 19 ("Jack Owoc does not recall the specifics of the filing of the claims as of the date of the responses to these interrogatories but believes they were filed by counsel. If these claims needed to be presented by way of a motion instead of filing a proof of claim Jack Owoc was not aware of this requirement."), *id.* at 2, 4–6 ;

b. Megan Owoc Responses to Interrogatory Nos. 4 ("Megan Elizabeth Owoc is still reviewing records and determining what transfers were subsequently paid to a third person as she does not recall from memory if any of the transfers were sent to a third party, especially because the transfers were of money which is fungible."), *id.* at 9; and

c. Commercial LLCs Responses to Interrogatory Nos. 15 ("As of the time of answering this interrogatory Jack Owoc does not recall who was involved in the management of the Commercial LLCs other than Jack Owoc, who was involved in

certain aspects of the management of the Commercial LLCs."), 16 ("Jack Owoc does not recall all of the circumstances regarding why the Commercial LLCs were not treated as debtors."), *id.* at 18.

33.     Pursuant to the Rules, Defendants are obligated to make a reasonable inquiry in connection with their answers to the Interrogatories, and the Liquidating Trust is entitled to complete, non-evasive answers to its Interrogatories, particularly given the amount of time the Interrogatories have been pending—which is more than eight months.  *See* Fed. R. Civ. P. 26(g) & 33(b)(3).  The reasonableness of Defendants' answers, as required by the Order, should be measured by the information available to the Defendants.  The Owocs have been in possession of an overwhelming majority of Plaintiff's documents – which were previously produced to them by Debtors' counsel during the course of the chapter 11 cases – for over two years.  Notwithstanding, Plaintiff's documents pertaining to the matters at issue in the Interrogatories were produced in their entirety more than three months ago.  As such, the Defendants' non-responsive and evasive answers outlined above fail to satisfy the Order's requirements that Defendants "make significant effort to produce as much responsive information as possible" and their "answers must be reasonable."  Adv. Pro. ECF No. 273 at ¶¶ 2–3.

34.     Interrogatory No. 2 to the Commercial LLCs states, "[d]escribe why the Late Claims are secured by a lien on the assets of the Debtors, including the amount of the Late Claims that are purportedly secured and the basis for any asserted subrogation or reimbursement rights." Instead of providing a responsive answer, the Commercial LLCs answered as follows:

> [i]t is Jack Owoc's understanding that based on the bank documents Owoc now sits in the super priority position of Truist Bank, and all the remaining funds in the estate should have been returned to him and must be returned to him immediately. There may be other grounds but this is what Jack Owoc recalls at this time.

14

*Id.* at 15.  This answer fails to address what portion of the Late Claims are purportedly secured and the basis for any asserted subrogation or reimbursement rights.

35.    Interrogatory No. 3 to the Commercial LLCs states, "[d]escribe why the Late Claims purport to assert claims on behalf of "John H. Owoc on behalf of himself and his wholly owned subsidiaries."   Instead of providing a responsive answer to Interrogatory No. 3, the Commercial LLCs answered as follows:

> [i]t is Jack Owoc's understanding that based on the bank documents Owoc now sits in the super priority position of Truist Bank, and all the remaining funds in the estate should have been returned to him and must be returned to him immediately. There may be other grounds but this is what Jack Owoc recalls at this time.

*Id.* at 16.  This answer fails to describe in any way why the Late Claims were purportedly filed on behalf of Jack Owoc *and* his wholly-owned subsidiaries.

### C. The Court Should Award Plaintiff the Attorneys' Fees Incurred to Obtain Complete Answers to the Interrogatories

36.    Defendants' failure to provide  full answers to the Interrogatories is not "substantially justified" – particularly given (i) the amount of time that has elapsed, (ii) the amount of information available to the Defendants for over three months, and (iii) the Court's directive during the hearing on the First Motion, and therefore, the Court should award Plaintiff the reasonable costs and fees associated with preparing the First Motion, attending the hearing on the First Motion, preparing this Second Motion, and attending the hearing on this Second Motion.

37.    Rule 37(a)(5), applicable in this proceeding under Bankruptcy Rule 7037, provides for the award of attorneys' fees to the moving party if a motion to compel is granted unless: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was

substantially justified; or (iii) other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5).

38.     Here, despite having more than eight months to fully answer the Interrogatories and being expressly instructed by the Court to exert "significant effort" to answer the Interrogatories, Defendants ignored the Court's directive to provide answers on a rolling basis, blew their Court-ordered deadline to provide the answers, and still failed to fully answer the Interrogatories (and, as to certain Interrogatories, completely failed to answer by stating only that they are "still reviewing records" and will amend at a later date, which is a non-answer), which, alone, warrants a fee award. *Williams v. Perry Slingsby Sys. Inc. Technip Grp*., No. 08-81076-CIV, 2009 WL 10668667, at *2 (S.D. Fla. Apr. 1, 2009) (granting motion to compel and awarding attorneys' fees where party failed to timely respond to discovery requests). Furthermore, Defendants have had the Plaintiff's documents for over three months, and therefore, have material information at their disposal to completely and reasonably answer the Interrogatories. Accordingly, Plaintiff is entitled to an award of attorneys' fees associated with the First Motion and this Second Motion.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Second Motion and: (i) order Defendants to fully answer the Interrogatories immediately; (ii) order Defendants to reimburse Plaintiff for the attorneys' fees incurred in bringing the First Motion and this Second Motion; and (iii) grant such other and further relief as this Court deems just and proper.

16

Dated: July 30, 2025

**LOWENSTEIN SANDLER LLP**

Jeffrey L. Cohen, Esq. (*admitted pro hac vice*)
Eric Chafetz, Esq. (*admitted pro hac vice*)
Michael A. Kaplan, Esq. (*admitted pro hac vice*)
Markiana J. Julceus, Esq. (*admitted pro hac vice*)
Erica G. Mannix, Esq. (*admitted pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 262-6700
Facsimile: (212) 262-7402
Email: jcohen@lowenstein.com
Email: echafetz@lowenstein.com
Email: mkaplan@lowenstein.com
Email: mjulceus@lowenstein.com
Email: emannix@lowenstein.com

**BAST AMRON LLP**

By: ____/s/ Peter Klock_____
Brett M. Amron (FBN 0148342)
Peter J. Klock, II (FBN 103915)
One Southeast Third Avenue, Suite 2410
Miami, Florida 33131
Telephone: (305) 379-7904
Facsimile: (786) 206-8740
Email: bamron@bastamron.com
Email: pklock@bastamron.com

*Counsel to the Liquidating Trust*

4936-5903-7529, v. 4

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing is being served on all parties registered to receive electronic notifications in this case via CM/ECF on this 30th day of July 2025.

/s/ *Peter Klock*
Peter J. Klock, II

18

# EXHIBIT A

| | |
|---|---|
| **From:** | Peter Klock |
| **To:** | Robert Reynolds; Julceus, Markiana J.; mroher |
| **Cc:** | VPXtrust; VPX Team |
| **Subject:** | RE: Consent to Extension of Discovery End Date - Adv. Pro. No. 24-01009 - VPX Liquidating Trust v. John H. Owoc, et al. |
| **Date:** | Tuesday, June 17, 2025 9:59:50 AM |
| **Attachments:** | image007.png |

Good morning, Rob,

The liquidating trust does not oppose a one-week extension of your clients' deadline to answer the interrogatories.  I'm not sure why you would assume otherwise.  In the future, please attempt to confer with more notice than 6pm on the date of your deadline.  Based upon the motion that you filed a few hours after your email below, it seems that you must have known for at least several days that you were not going to be able to meet this deadline.

With respect to the liquidating trust's intention to seek an extension of the deadlines generally, you should know that it was necessitated by your clients' opposition to the motion for approval of the settlement with the Receiver, which is dragging out the timeline for the resolution of our claims against Tropical Sunset and its subsidiaries.  Without an extension of the deadlines, we'll have to proceed with depositions right away, which will only cause the Receiver to unnecessarily incur substantial attorneys fees participating in depositions and discovery in advance of our securing approval for the settlement.  As your client is one of the owners of Tropical Sunset and its subsidiaries, an extension of the deadlines is in his interest.  Please let us know if we can resolve this issue without having to seek Court intervention.

Best regards,



PETER J. KLOCK, II
Partner

BAST AMRON LLP
SunTrust International Center           O:305.379.7904
One Southeast Third Avenue           D:786.219.4062
Suite 2410                                  pklock@bastamron.com
Miami, Florida 33131                     www.bastamron.com

My LinkedIn Profile

**Listen now to *The Practice Podcast* on YouTube, Spotify, Google, Amazon Music, and Apple Podcasts.**

♻ **Please consider the environment before printing this email.**

-----------------------------------------------------------------------------------------------------------------------------------
This message, together with any attachments, is intended only for the addressee. It may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, use or any action or reliance on this communication is strictly prohibited. If you have received this e-mail in error, please notify the sender immediately by telephone (305.379.7904) or by return e-mail and delete this message, along with any attachments.

**From:** Robert Reynolds <rreynolds@robertreynoldspa.com>
**Sent:** Monday, June 16, 2025 6:00 PM
**To:** Julceus, Markiana J. <MJulceus@lowenstein.com>; mroher <mroher@markroherlaw.com>; Peter Klock <pklock@bastamron.com>
**Cc:** VPXtrust <VPXtrust@lowenstein.com>; VPX Team <VPXteam@bastamron.com>
**Subject:** RE: Consent to Extension of Discovery End Date - Adv. Pro. No. 24-01009 - VPX Liquidating Trust v. John H. Owoc, et al.

Our clients have indicated they oppose any extensions.

Our amended responses to the interrogatories are due today.  We need an additional week to finalize them. I assume that will be objected to so I will file a motion. Please let me know if you have any other questions.

Robert F. Reynolds, Esq.
Law Offices of Robert F. Reynolds, P.A.
101 NE 3rd Avenue
Suite 1800
Fort Lauderdale, Florida 33301
Telephone 954.766.9928
www.robertreynoldspa.com

This message and any attachments are a communication from an attorney, therefore, they may be privileged and/or confidential and are intended for receipt only by the named addressee. If you received this message and any attachments in error, you are asked to please contact the sender for instructions as to the destruction of such message and its attachments, and until such time, you are prohibited from any further dissemination thereof. Thank you for your cooperation in this regard.

**From:** Julceus, Markiana J. <MJulceus@lowenstein.com>
**Sent:** Friday, June 13, 2025 12:15 PM
**To:** Robert Reynolds <rreynolds@robertreynoldspa.com>; mroher <mroher@markroherlaw.com>
**Cc:** VPXtrust <VPXtrust@lowenstein.com>; VPXteam <VPXteam@bastamron.com>
**Subject:** Consent to Extension of Discovery End Date - Adv. Pro. No. 24-01009 - VPX Liquidating Trust v. John H. Owoc, et al.

Counsel –

As you know, we have numerous depositions scheduled in the coming weeks/months as the fact-discovery end date for this matter is August 24, 2025.  However, this week, Judge Russin declined to rule on the Trust's 9019 motion seeking approval of the Tropical Sunset Settlement until after the receivership court enters its own order approving the settlement.  Until we know whether the Tropical Sunset Settlement will be approved by the receivership court and bankruptcy court, it would be inefficient to proceed with depositions.  For that reason, we are postponing the depositions until we have more certainty regarding the settlement.  Notices of

adjournment are forthcoming.

We also intend to file a motion asking the court to extend all of the upcoming deadlines in this matter for 90 days while the Trust, Receiver, and Stag Parties await the approval of the settlement.

Could you please let us know if you consent to the 90-day extension?

Best,

Markiana


| **Markiana Julceus**
| she, her, hers
| Counsel
| Lowenstein Sandler LLP

T: (862) 926-2707
M: (973) 525-8496





---

This message contains confidential information, intended only for the person(s) named above, which may also be privileged. Any use, distribution, copying or disclosure by any other person is strictly prohibited. In such case, you should delete this message and kindly notify the sender via reply e-mail. Please advise immediately if you or your employer does not consent to Internet e-mail for messages of this kind.

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

VITAL PHARMACEUTICALS, INC., *et al.*,[1]

     Debtors.

_____/

VPX LIQUIDATING TRUST, by and through its
Liquidating Trustee,

     Plaintiff,

v.

JOHN H. OWOC, MEGAN ELIZABETH OWOC,
JONATHAN W. OWOC, BRANDEN SHAW,
DAVID RUNNEBAUM, JWO REAL ESTATE
INVESTMENT I, LLC, JWO REAL ESTATE
INVESTMENT II LLC, JW OWOC
ENTERPRISES, LLC, 167 SPYGLASS LN LLC,
120 SPYGLASS LN LLC, 3 PELICAN DR LLC,
TROPICAL SUNSET LLC, STAG
DEVELOPMENT LLC, SHAW INVESTMENTS
& REALTY, INC., ELITE ISLAND LLC, JHO
GA-1 INVESTMENT, LLC, JHO NV-1
INVESTMENT LLC, SHERIDAN REAL
ESTATE INVESTMENT A, LLC, SHERIDAN
REAL ESTATE INVESTMENT B, LLC, and
SHERIDAN REAL ESTATE INVESTMENT C,
LLC,

     Defendants.

_____

Chapter 11 Cases

Case No.: 22-17842-PDR

(Jointly Administered)

Adv. Pro. No. 24-01009-PDR

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

## LIQUIDATING TRUST'S INTERROGATORIES TO
## DEFENDANT ELITE ISLAND, LLC

VPX Liquidating Trust, by and through its Liquidating Trustee (the "<u>Liquidating Trust</u>" or "<u>Plaintiff</u>"), the liquidating trust in the above-captioned chapter 11 bankruptcy cases (the "<u>Chapter 11 Cases</u>") established pursuant to the *Debtors' Second Amended Joint Plan of Liquidation* [Case No. 22-17842-PDR, Dkt. 1905] (the "<u>Plan</u>"), by and through undersigned counsel and pursuant to Federal Rules of Civil Procedure 26 and 33, made applicable to these proceedings by Rules 7026 and 7033 of the Federal Rules of Bankruptcy Procedure, hereby serve its Interrogatories on Defendant Elite Island, LLC ("<u>Elite Island</u>") and requests that Elite Island respond on or before December 22, 2024

## DEFINITIONS

1.      "Answer" refers to the ECF 156, the answer to the Second Amended Complaint filed by Defendants John H. Owoc, Megan Elizabeth Owoc, Elite Island LLC, JHO GA-I Investment LLC, JHO NV-I Investment LLC, Sheridan Real Estate Investment A, LLC, Sheridan Real Estate Investment B, LLC and Sheridan Real Estate Investment C, LLC on October 7, 2024 in the above-captioned adversary proceeding.

2.      "Complaint" refers to ECF 148, the Second Amended Complaint, filed on September 16, 2024 in the above-captioned adversary proceeding.

3.      "Debtors" refers to the debtors in the above-referenced Chapter 11 cases, both individually and collectively, Vital Pharmaceuticals, Inc.; Bang Energy Canada, Inc.; JHO Intellectual Property Holdings, LLC; JHO Real Estate Investment, LLC; Quash Seltzer, LLC; Rainbow Unicorn Bev LLC; and Vital Pharmaceuticals International Sales, Inc.

4.      "Document" has the broadest possible meaning permissible under the Federal Rules of Civil Procedure, including but not limited to all materials that constitute "writings,"

"recordings," or "photographs" within the broadest meaning of Rule 1001 of the Federal Rules of Evidence and all materials that constitute "documents" within the broadest meaning of Rule 7034 of the Federal Rules of Bankruptcy Procedure and Rule 34 of the Federal Rules of Civil Procedure. Documents include, without limitation, all written, graphic or otherwise recorded material, including without limitation, electronically stored information regardless of the form of storage medium, microfilms or other film records or impressions, tape recordings or computer cards, floppy disks or printouts, any and all papers, photographs, films, recordings, memoranda, books, records, accounts, Communications, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, interoffice memoranda or written communications of any nature, recordings of conversations either in writings or upon any mechanical or electrical recording devices, including e-mail, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, calendars, desk calendars, ledgers, schedules, licenses, financial statements, spreadsheets, telephone bills, logs, and any differing versions of any of the foregoing, whether so denominated, formal, informal or otherwise, as well as copies of the foregoing which differ in any way, including by the addition of handwritten notations or other written or printed matter of any nature, from the original.  The foregoing specifically includes electronically stored information (ESI) in any electronic format (e.g., Word, Excel, Outlook, .pdf, HTML, .tif, .jpeg, .wav) and information stored in a computer database and capable of being generated in documentary form, such as electronic mail, voicemail, text messages (i.e., SMS messages), iMessages, other electronic messages including messages sent or received via Slack, WhatsApp, Google, Hangouts, Facebook Messenger, and the like.

5.      "Elite Island" refers to Elite Island LLC and its directors, officer, employee, agent, representative, and attorneys.

6.      "Identify" means:

    a.   With respect to a natural Person, to state the Person's name, present or last known business and residential addresses, business affiliation, and telephone number;

    b.   With respect to an entity, to state the entity's name and present or last known business address;

    c.   With respect to an event or occurrence, to state the date of the event or occurrence, where it occurred, who was present, what was said and what happened;

    d.   With respect to an asset, to state the type or nature of the asset; the date the asset was created and acquired; the date the asset was sold or disposed of; the present location of the asset; a description of the asset, the value of the asset;

    e.   With respect to a Document, to Describe and state the date, author(s), addressee(s), recipient(s), and subject matter of the Document; and

    f.   With respect to a Communication, to state the date of the Communication, the method of the Communication, the names, titles and roles of each PERSON who made, received or participated in the Communication, the purpose of the Communication, the subject matter of the Communication, and what was said or otherwise communicated.

7.      "Including" means including, but not limited to

8.      "Person" means any natural person, partnership, joint venture, company, corporation, association, firm, trust, governmental entity, governmental agency, or any other kind of organization or entity, and any director, officer, employee, agent, representative, attorney, or principal thereof.

9.      "Overseas Highway Property" refers to 72100 Overseas Highway, Islamorada, Florida 33035.

10.     "You," "Your," and "Yourself" refers to Elite Island

## INTERROGATORIES

1.      For each affirmative defense asserted in Your Answer, describe the basis of the defense, including facts supporting the defense, the reasons such facts support such defense, and the person(s) most knowledgeable about the facts and reasons supporting such defense.

2. Describe the circumstances Relating to Elite Island's formation, including the Persons who formed Elite Island, the Persons who were involved in the decision to form Elite Island, the purpose for which Elite Island was formed, and when Elite Island was formed.

3. Describe all actual and intended uses of the Overseas Highway Property during the relevant time period, including how Elite Island used or intended to use, or used, the Overseas Highway Property; the Persons involved in each actual or intended use; and the terms of any actual or contemplated agreements governing any actual or intended use.

4. Identify all assets that Elite Island has ever owned, leased, rented, or otherwise acquired using funds received or transferred from the Debtors, including whether Elite Island still owns that asset and where it is held or located.

5. Identify all revenue that Elite Island has earned from assets acquired using funds received or transferred from the Debtors, including the source of such revenue; the amount of such revenue; and the date that such revenue was earned.

6. Identify all contracts, whether written or unwritten, that Elite Island has entered into Related to assets acquired using funds received or transferred from the Debtors, including the date of the contract, the purpose of the contract, and the relevant counter-party or counter-parties.

7. Identify all distributions that Elite Island has made, including the amount of each distribution; the date of each distribution, and to whom each distribution was made.

8. Identify any transfer set forth on Exhibit H to the Complaint which You deny was made.

9. Identify any transfer set forth on Exhibit H to the Complaint which were made for a reason other than a distribution to Jack Owoc.

10.     For each transfer set forth on Exhibit H to the Complaint, which was subsequently transferred to another person, Identify the recipient of each such subsequent transfer and the amount transferred to each person.

11.     State the current value of the Overseas Highway Property.

12.     Identify each Person who assisted with managing Elite Island or the Overseas Highway Property, including the individual's name, last known telephone number and address, and whether that individual was ever an employee of the Debtors.

Dated: November 22, 2024

**LOWENSTEIN SANDLER LLP**

Jeffrey L. Cohen, Esq.
Eric Chafetz, Esq.
Michael A. Kaplan, Esq.
Markiana J. Julceus, Esq.
Erica G. Mannix, Esq.
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 262-6700
Facsimile: (212) 262-7402
Email: jcohen@lowenstein.com
Email: echafetz@lowenstein.com
Email: mkaplan@lowenstein.com
Email: mjulceus@lowenstein.com
Email: emannix@lowenstein.com

**BAST AMRON LLP.**

By: */s/ Peter J. Klock, II*
Brett M. Amron (FBN 0148342)
Peter J. Klock, II (FBN 103915)
One Southeast Third Avenue, Suite 2410
Miami, Florida 33131
Telephone: (305) 379-7904
Facsimile: (786) 206-8740
Email: bamron@bastamron.com
Email: pklock@bastamron.com

*Counsel to the Liquidating Trust and Liquidating Trustee*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via Email, as indicated, on the party listed below on this 22nd day of November, 2024.

/s/ *Peter J. Klock, II*
Peter J. Klock, Esq.

## SERVICE LIST

**VIA EMAIL**

Elite Island, LLC
c/o Robert F. Reynolds, Esq.
Email: rreynolds@robertreynoldspa.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                              Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al.*,[1]          Case No.: 22-17842-PDR

    Debtors.                                   (Jointly Administered)

_____/

VPX LIQUIDATING TRUST, by and through its
Liquidating Trustee,

        Plaintiff,

v.                                                  Adv. Pro. No. 24-01009-PDR

JOHN H. OWOC, MEGAN ELIZABETH OWOC,
JONATHAN W. OWOC, BRANDEN SHAW,
DAVID RUNNEBAUM, JWO REAL ESTATE
INVESTMENT I, LLC, JWO REAL ESTATE
INVESTMENT II LLC, JW OWOC
ENTERPRISES, LLC, 167 SPYGLASS LN LLC,
120 SPYGLASS LN LLC, 3 PELICAN DR LLC,
TROPICAL SUNSET LLC, STAG
DEVELOPMENT LLC, SHAW INVESTMENTS
& REALTY, INC., ELITE ISLAND LLC, JHO
GA-1 INVESTMENT, LLC, JHO NV-1
INVESTMENT LLC, SHERIDAN REAL
ESTATE INVESTMENT A, LLC, SHERIDAN
REAL ESTATE INVESTMENT B, LLC, and
SHERIDAN REAL ESTATE INVESTMENT C,
LLC,

        Defendants.

_____

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are as: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

**LIQUIDATING TRUST'S INTERROGATORIES TO DEFENDANT
MEGAN ELIZABETH OWOC**

VPX Liquidating Trust, by and through its Liquidating Trustee (the "Liquidating Trust" or

"Plaintiff"), the liquidating trust in the above-captioned chapter 11 bankruptcy cases (the "Chapter

11 Cases") established pursuant to the *Debtors' Second Amended Joint Plan of Liquidation* [Case

No. 22-17842-PDR, Dkt. 1905] (the "Plan"), by and through undersigned counsel and pursuant to

Federal Rule of Civil Procedure 26 and 33, made applicable to these proceedings by Rules 7026

and 7033 of the Federal Rules of Bankruptcy Procedure, hereby serve its Interrogatories on

Defendant Megan Owoc ("Mrs. Owoc") and requests that Mrs. Owoc respond on or before

December 22, 2024.

## DEFINITIONS

1.      "Answer" refers to the ECF 156, the answer to the Second Amended Complaint

filed by Defendants John H. Owoc, Megan Elizabeth Owoc, Elite Island LLC, JHO GA-I

Investment LLC, JHO NV-I Investment LLC, Sheridan Real Estate Investment A, LLC, Sheridan

Real Estate Investment B, LLC and Sheridan Real Estate Investment C, LLC on October 7, 2024

in the above-captioned adversary proceeding.

2.      "Complaint" refers to ECF 148, the Second Amended Complaint, filed on

September 16, 2024 in the above-captioned adversary proceeding.

3.      "Debtors" refers to the debtors in the above-referenced Chapter 11 cases, both

individually and collectively, Vital Pharmaceuticals, Inc.; Bang Energy Canada, Inc.; JHO

Intellectual Property Holdings, LLC; JHO Real Estate Investment, LLC; Quash Seltzer, LLC;

Rainbow Unicorn Bev LLC; and Vital Pharmaceuticals International Sales, Inc.

4.      "Document" has the broadest possible meaning permissible under the Federal Rules

of Civil Procedure, including but not limited to all materials that constitute "writings,"

"recordings," or "photographs" within the broadest meaning of Rule 1001 of the Federal Rules of Evidence and all materials that constitute "documents" within the broadest meaning of Rule 7034 of the Federal Rules of Bankruptcy Procedure and Rule 34 of the Federal Rules of Civil Procedure. Documents include, without limitation, all written, graphic or otherwise recorded material, including without limitation, electronically stored information regardless of the form of storage medium, microfilms or other film records or impressions, tape recordings or computer cards, floppy disks or printouts, any and all papers, photographs, films, recordings, memoranda, books, records, accounts, Communications, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, interoffice memoranda or written communications of any nature, recordings of conversations either in writings or upon any mechanical or electrical recording devices, including e-mail, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, calendars, desk calendars, ledgers, schedules, licenses, financial statements, spreadsheets, telephone bills, logs, and any differing versions of any of the foregoing, whether so denominated, formal, informal or otherwise, as well as copies of the foregoing which differ in any way, including by the addition of handwritten notations or other written or printed matter of any nature, from the original. The foregoing specifically includes electronically stored information (ESI) in any electronic format (e.g., Word, Excel, Outlook, .pdf, HTML, .tif, .jpeg, .wav) and information stored in a computer database and capable of being generated in documentary form, such as electronic mail, voicemail, text messages (i.e., SMS messages), iMessages, other electronic messages including messages sent or received via Slack, WhatsApp, Google, Hangouts, Facebook Messenger, and the like.

5.      "Identify" means:

     a.    With respect to a natural Person, to state the Person's name, present or last known business and residential addresses, business affiliation, and telephone number;

b. With respect to an entity, to state the entity's name and present or last known business address;

c. With respect to an event or occurrence, to state the date of the event or occurrence, where it occurred, who was present, what was said and what happened;

d. With respect to an asset, to state the type or nature of the asset; the date the asset was created and acquired; the date the asset was sold or disposed of; the present location of the asset; a description of the asset, the value of the asset;

e. With respect to a Document, to Describe and state the date, author(s), addressee(s), recipient(s), and subject matter of the Document; and

f. With respect to a Communication, to state the date of the Communication, the method of the Communication, the names, titles and roles of each PERSON who made, received or participated in the Communication, the purpose of the Communication, the subject matter of the Communication, and what was said or otherwise communicated.

6.      "Including" means including, but not limited to

7.      "Person" means any natural person, partnership, joint venture, company, corporation, association, firm, trust, governmental entity, governmental agency, or any other kind of organization or entity, and any director, officer, employee, agent, representative, attorney, or principal thereof.

8.      "Person" means any natural person, partnership, joint venture, company, corporation, association, firm, trust, governmental entity, governmental agency, or any other kind of organization or entity, and any director, officer, employee, agent, representative, attorney, or principal thereof.

9.      "Relates to," "Related to," or "Relating to" means, without limitation, the following concepts: concerning, discussing, describing, setting forth, reflecting, dealing with, pertaining to, concerning, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, referencing, summarizing, criticizing, reporting, commenting, from, to, or otherwise involving, in whole or in part.

10.    "Southwest Ranches Property" refers to the property located at 16720 Stratford Court, Southwest Ranches, Florida.

11.    "You," "Your," and "Yourself" refers to Megan Owoc

## <u>INSTRUCTIONS</u>

1.      These Interrogatories are continuing in nature and responses must be supplemented if you obtain further or different information.  Plaintiff specifically reserves its right to seek supplementary responses to these discovery requests.

2.      If you assert a claim of privilege in responding or objecting to any request, and if you refuse to comply with the request due to such assertion, you shall in the response or objection identify the nature of the privilege (including work product) which is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, set forth the state privilege rule being invoked.  In asserting privilege, you shall indicate whether any documents relevant to the Interrogatory response exist.

3.      Unless otherwise specified in a specific Interrogatory, the time period for these requests is January 1, 2017 to Present.

4.      These interrogatories shall be deemed continuing so as to require supplemental answers if Plaintiff obtains further information between the time the answers are served and the time of trial.

5.      Each request to identify or produce a document or documents shall be deemed to call for the identification or production of the original document or documents to the extent that they are in or subject to, directly or indirectly, the control of the party to whom these interrogatories are addressed.  In addition, each request should be considered as including a request for separate identification or production of all copies and, to the extent applicable, preliminary drafts of documents that differ in any respect from the original or final draft or from each other (e.g., by reason of differences in form or content or by reason of handwritten notes or comments having been added to one copy of a document but not on the original or other copies thereof).

6.      The singular shall be deemed to include the plural and vice versa.  The feminine shall be deemed to include the masculine and vice versa.  The word "and" shall be deemed to include the disjunctive "or" and vice versa.

## **INTERROGATORIES**

1.      For each affirmative defense asserted in Your Answer, describe the basis of the defense, including facts supporting the defense, the reasons such facts support such defense, and the person(s) most knowledgeable about the facts and reasons supporting such defense.

2.      Identify any transfer set forth on Exhibit C to the Complaint which You deny was made.

3.      Identify any transfer set forth on Exhibit C to the Complaint which were made for a reason other than a distribution to Jack Owoc.

4.       For each transfer set forth on Exhibit C to the Complaint, which was subsequently transferred to another person, Identify the recipient of each such subsequent transfer and the amount transferred to each person.

5.      Describe each instance in which an employee of the Debtors assisted You with Your personal finances, including the manner in which the employee assisted You, whether that assistance was provided in the scope of his or her employment, and whether that employee was personally compensated by You for his or her work.

6.      Describe each lawsuit or litigation where an employee of the Debtors provided You with legal representation and for each such lawsuit or litigation, including the employee who provided the legal representation, the subject-matter of the lawsuit, and how that employee was compensated for his or her work.

7.      Describe the costs, expenses, and revenues relating to filming, editing, and disseminating the YouTube videos on the YouTube page formerly known as the "Bang Family Energy Page," including the identity of any employees of the Debtors that assisted or worked on

producing content for the YouTube page, the amounts paid to those employees, whether those amounts were paid by You or the Debtors, any other costs related to the YouTube page and how those costs were paid; and the revenue generated from the YouTube page, if any.

8.     Describe the costs and expenses relating to the creation and development of "MegLiz Swim," including but not limited to, any employees of the Debtors that assisted or worked on creating, designing, or developing swimwear or marketing for "MegLiz Swim," the amounts paid to those employees; whether those amounts where paid by You or the Debtors; any other costs related to MegLiz Swim and how those costs were paid.

9.     Identify any Debtor-related events held at Your Southwest Ranches Property, including the date of the event, the reason why it was held at the Southwest Ranches Property, any the attendees.

Dated: November 22, 2024

**LOWENSTEIN SANDLER LLP**

Jeffrey L. Cohen, Esq.
Eric Chafetz, Esq.
Michael A. Kaplan, Esq.
Markiana J. Julceus, Esq.
Erica G. Mannix, Esq.
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 262-6700
Facsimile: (212) 262-7402
Email: jcohen@lowenstein.com
Email: echafetz@lowenstein.com
Email: mkaplan@lowenstein.com
Email: mjulceus@lowenstein.com
Email: emannix@lowenstein.com

**BAST AMRON LLP.**

By: */s/ Peter J. Klock, II*
Brett M. Amron (FBN 0148342)
Peter J. Klock, II (FBN 103915)
One Southeast Third Avenue, Suite 2410
Miami, Florida 33131
Telephone: (305) 379-7904
Facsimile: (786) 206-8740
Email: bamron@bastamron.com
Email: pklock@bastamron.com

*Counsel to the Liquidating Trust and Liquidating Trustee*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via Email, as indicated, on the party listed below on this 22nd day of November, 2024.

/s/ *Peter J. Klock, II*
Peter J. Klock, Esq.

**SERVICE LIST**

**VIA EMAIL**

Megan Elizabeth Owoc
c/o Robert F. Reynolds, Esq.
Email: rreynolds@robertreynoldspa.com

<sup> </sup>1UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*,[1] | Case No.: 22-17842-PDR |
| Debtors. | (Jointly Administered) |

_____/

VPX LIQUIDATING TRUST, by and through its
Liquidating Trustee,

      Plaintiff,

v.                                  Adv. Pro. No. 24-01009-PDR

JOHN H. OWOC, MEGAN ELIZABETH OWOC,
JONATHAN W. OWOC, BRANDEN SHAW,
DAVID RUNNEBAUM, JWO REAL ESTATE
INVESTMENT I, LLC, JWO REAL ESTATE
INVESTMENT II LLC, JW OWOC
ENTERPRISES, LLC, 167 SPYGLASS LN LLC,
120 SPYGLASS LN LLC, 3 PELICAN DR LLC,
TROPICAL SUNSET LLC, STAG
DEVELOPMENT LLC, SHAW INVESTMENTS
& REALTY, INC., ELITE ISLAND LLC, JHO
GA-1 INVESTMENT, LLC, JHO NV-1
INVESTMENT LLC, SHERIDAN REAL
ESTATE INVESTMENT A, LLC, SHERIDAN
REAL ESTATE INVESTMENT B, LLC, and
SHERIDAN REAL ESTATE INVESTMENT C,
LLC,

      Defendants.

_____

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

**LIQUIDATING TRUST'S INTERROGATORIES TO
DEFENDANTS JHO GA-I INVESTMENT LLC, JHO NV-I INVESTMENT LLC,
SHERIDAN REAL ESTATE INVESTMENT A, LLC, SHERIDAN REAL ESTATE
INVESTMENT B, LLC, AND SHERIDAN REAL ESTATE INVESTMENT C, LLC**

VPX Liquidating Trust, by and through its Liquidating Trustee (the "Liquidating Trust" or "Plaintiff"), the liquidating trust in the above-captioned chapter 11 bankruptcy cases (the "Chapter 11 Cases") established pursuant to the *Debtors' Second Amended Joint Plan of Liquidation* [Case No. 22-17842-PDR, Dkt. 1905] (the "Plan"), by and through undersigned counsel and pursuant to Federal Rules of Civil Procedure 26 and 33, made applicable to these proceedings by Rules 7026 and 7033 of the Federal Rules of Bankruptcy Procedure, hereby serve its Interrogatories on Defendants JHO GA-I Investment LLC, JHO NV-I Investment LLC, Sheridan Real Estate Investment A, LLC, Sheridan Real Estate Investment B, LLC and Sheridan Real Estate Investment C, LLC ("Commercial LLCs") and requests that the Commercial LLCs respond on or before December 22, 2024.

## DEFINITIONS

1.      "Answer" refers to the ECF 156, the answer to the Second Amended Complaint filed by Defendants John H. Owoc, Megan Elizabeth Owoc, Elite Island LLC, JHO GA-I Investment LLC, JHO NV-I Investment LLC, Sheridan Real Estate Investment A, LLC, Sheridan Real Estate Investment B, LLC and Sheridan Real Estate Investment C, LLC on October 7, 2024 in the above-captioned adversary proceeding.

2.      "AZ Property" refers to the property located at 1635 S. 43rd Avenue, Phoenix, Arizona 85009.

3.      "Bankruptcy Proceeding" means the Debtors' jointly administered bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of Florida, styled as In re Vital Pharmaceuticals, Inc., et al., Case No. 22-17842.

4. "Complaint" refers to ECF 148, the Second Amended Complaint, filed on September 16, 2024 in the above-captioned adversary proceeding.

5. "Commercial LLCs" refers to Sheridan A, Sheridan B, Sheridan C, JHO NV, and JHO GA.

6. "Commercial LLCs' Claims" refers to the general unsecured claims asserted by John H. Owoc, on his behalf, the Commercial LLCs, and "JHO Real Estate LLC" in the Chapter 11 Cases.

7. "Debtors" refers to the debtors in the above-referenced Chapter 11 cases, both individually and collectively, Vital Pharmaceuticals, Inc.; Bang Energy Canada, Inc.; JHO Intellectual Property Holdings, LLC; JHO Real Estate Investment, LLC; Quash Seltzer, LLC; Rainbow Unicorn Bev LLC; and Vital Pharmaceuticals International Sales, Inc.

8. "Document" has the broadest possible meaning permissible under the Federal Rules of Civil Procedure, including but not limited to all materials that constitute "writings," "recordings," or "photographs" within the broadest meaning of Rule 1001 of the Federal Rules of Evidence and all materials that constitute "documents" within the broadest meaning of Rule 7034 of the Federal Rules of Bankruptcy Procedure and Rule 34 of the Federal Rules of Civil Procedure. Documents include, without limitation, all written, graphic or otherwise recorded material, including without limitation, electronically stored information regardless of the form of storage medium, microfilms or other film records or impressions, tape recordings or computer cards, floppy disks or printouts, any and all papers, photographs, films, recordings, memoranda, books, records, accounts, Communications, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, interoffice memoranda or written communications of any nature, recordings of conversations either in writings or upon any mechanical or electrical

recording devices, including e-mail, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, calendars, desk calendars, ledgers, schedules, licenses, financial statements, spreadsheets, telephone bills, logs, and any differing versions of any of the foregoing, whether so denominated, formal, informal or otherwise, as well as copies of the foregoing which differ in any way, including by the addition of handwritten notations or other written or printed matter of any nature, from the original.  The foregoing specifically includes electronically stored information (ESI) in any electronic format (e.g., Word, Excel, Outlook, .pdf, HTML, .tif, .jpeg, .wav) and information stored in a computer database and capable of being generated in documentary form, such as electronic mail, voicemail, text messages (i.e., SMS messages), iMessages, other electronic messages including messages sent or received via Slack, WhatsApp, Google, Hangouts, Facebook Messenger, and the like.

9. "Identify" means:

   a. With respect to a natural Person, to state the Person's name, present or last known business and residential addresses, business affiliation, and telephone number;

   b. With respect to an entity, to state the entity's name and present or last known business address;

   c. With respect to an event or occurrence, to state the date of the event or occurrence, where it occurred, who was present, what was said and what happened;

   d. With respect to an asset, to state the type or nature of the asset; the date the asset was created and acquired; the date the asset was sold or disposed of; the present location of the asset; a description of the asset, the value of the asset;

   e. With respect to a Document, to Describe and state the date, author(s), addressee(s), recipient(s), and subject matter of the Document; and

   f. With respect to a Communication, to state the date of the Communication, the method of the Communication, the names, titles and roles of each PERSON who made, received or participated in the Communication, the purpose of the Communication, the subject matter of the Communication, and what was said or otherwise communicated.

10. "Including" means including, but not limited to.

11.     "JHO GA" refers to JHO GA-1 Investment, LLC and its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

12.     "Late Claims" refers to Claim Nos. 767, 768, 769, 770, 771, and 772 in the Chapter 11 Cases.

13.     "Late Claims Addendum" refers to the Addendum in Support of Amended Proof of Claim of John H. Owoc on Behalf of Himself and His Wholly-Owned Entities JHO GA-1 Investment, LLC, JHO NV-1 Investment, LLC, Sheridan Real Estate Investment A, LLC, Sheridan Real Estate Investment B, LLC, Sheridan Real Estate Investment C, LLC, and JHO Real Estate, LLC filed along with the Late Claims.

14.     "Lithia Springs Property" refers to the property located at 7705 Staples Dr, Douglasville, Georgia.

15.     "Person" means any natural person, partnership, joint venture, company, corporation, association, firm, trust, governmental entity, governmental agency, or any other kind of organization or entity, and any director, officer, employee, agent, representative, attorney, or principal thereof.

16.     "Relates to," "Related to," or "Relating to" means, without limitation, the following concepts: concerning, discussing, describing, setting forth, reflecting, dealing with, pertaining to, concerning, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, referencing, summarizing, criticizing, reporting, commenting, from, to, or otherwise involving, in whole or in part.

17.     "Sheridan A" refers to Sheridan Real Estate Investment A, LLC and its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

18.     "Sheridan A Property" refers to the property located at 20311 Sheridan Street, Pembroke Pines, Florida.

19.     "Sheridan B" refers to Sheridan Real Estate Investment B, LLC and its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

20.     "Sheridan B Property" refers to the property located at 20351 Sheridan Street, Pembroke Pines, Florida.

21.     "Sheridan C" refers to Sheridan Real Estate Investment C, LLC and its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

22.     "Sheridan C Property" refers to the property located at 20421 Sheridan Street, Pembroke Pines, Florida.

23.     "Southwest Ranches Property" refers to the property located at 16720 Stratford Court, Southwest Ranches, Florida.

24.     "Wagon Trail Property" refers to the property located at 4117 Wagon Trail Avenue, Las Vegas, Nevada.

# INSTRUCTIONS

1.      These Interrogatories are continuing in nature and responses must be supplemented if you obtain further or different information.  Plaintiff specifically reserves its right to seek supplementary responses to these discovery requests.

2.      If you assert a claim of privilege in responding or objecting to any request, and if you refuse to comply with the request due to such assertion, you shall in the response or objection identify the nature of the privilege (including work product) which is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, set forth the state privilege rule being invoked.  In asserting privilege, you shall indicate whether any documents relevant to the Interrogatory response exist.

3.      Unless otherwise specified in a specific Interrogatory, the time period for these requests is January 1, 2017 to Present.

4.      These interrogatories shall be deemed continuing so as to require supplemental answers if Plaintiff obtains further information between the time the answers are served and the time of trial.

5.      Each request to identify or produce a document or documents shall be deemed to call for the identification or production of the original document or documents to the extent that they are in or subject to, directly or indirectly, the control of the party to whom these interrogatories are addressed.  In addition, each request should be considered as including a request for separate identification or production of all copies and, to the extent applicable, preliminary drafts of documents that differ in any respect from the original or final draft or from each other (e.g., by reason of differences in form or content or by reason of handwritten notes or comments having been added to one copy of a document but not on the original or other copies thereof).

6.      The singular shall be deemed to include the plural and vice versa.  The feminine shall be deemed to include the masculine and vice versa.  The word "and" shall be deemed to include the disjunctive "or" and vice versa.

## **INTERROGATORIES**

1.      For each affirmative defense asserted in Your Answer, describe the basis of the defense, including facts supporting the defense, the reasons such facts support such defense, and the person(s) most knowledgeable about the facts and reasons supporting such defense.

2.      Describe why the Late Claims are secured by a lien on the assets of the Debtors, including the amount of the Late Claims that are purportedly secured and the basis for any asserted subrogation or reimbursement rights.

3.      Describe why the Late Claims purport to assert claims on behalf of "John H. Owoc on behalf of himself and his wholly owned subsidiaries."

4.      Describe why the Sheridan A Property was titled in the name of Sheridan A, rather than one of the Debtors, when the Debtors funds or financing were used to acquire the property.

5.      Describe why the Sheridan B Property was titled in the name of Sheridan B, rather than one of the Debtors, when the Debtors funds or financing were used to acquire the property.

6.      Describe why the Sheridan C Property was titled in the name of the Sheridan C, rather than one of the Debtors, when the Debtors funds or financing were used to acquire the property.

7.      Describe why the Lithia Springs Property was titled in the name of JHO GA, rather than one of the Debtors, when the Debtors funds or financing were used to acquire the property.

8.      Describe why the Late Claims are secured by a lien on the assets of the Debtors, including the amount of the Late Claims that are purportedly secured and the basis for any asserted subrogation or reimbursement rights.

9.     Identify who prepared the market rent comps for the Sheridan A Property which are referenced in the Late Claims' Addendum, state when the market rent comps were prepared, and describe how and by whom the preparer was compensated.

10.    Identify who prepared the market rent comps for the JHO Property which are referenced in the Late Claims' Addendum, state when the market rent comps were prepared, and describe how and by whom the preparer was compensated.

11.    Describe why the Sheridan A Property was titled in the name of Sheridan A, rather than one of the Debtors, when the Debtors funds or financing were used to acquire the property.

12.    Describe why the Sheridan B Property was titled in the name of Sheridan B, rather than one of the Debtors, when the Debtors funds or financing were used to acquire the property.

13.    Describe why the Sheridan C Property was titled in the name of the Sheridan C, rather than one of the Debtors, when the Debtors funds or financing were used to acquire the property.

14.    Describe why the Lithia Springs Property was titled in the name of JHO GA, rather than one of the Debtors, when the Debtors funds or financing were used to acquire the property.

15.    Identify each person who assisted with managing the Commercial LLCs including the individual's name, last known telephone number and address, and whether that individual was ever an employee of the Debtors.

16.    Describe the circumstances Relating to the Commercial LLCs not being included as debtors in the Bankruptcy Proceeding, including the reason(s) why each Commercial LLC was not included as a debtor in the Bankruptcy Proceeding and the Persons who were involved in that decision.

Dated: November 22, 2024

**LOWENSTEIN SANDLER LLP**

Jeffrey L. Cohen, Esq.
Eric Chafetz, Esq.
Michael A. Kaplan, Esq.
Markiana J. Julceus, Esq.
Erica G. Mannix, Esq.
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 262-6700
Facsimile: (212) 262-7402
Email: jcohen@lowenstein.com
Email: echafetz@lowenstein.com
Email: mkaplan@lowenstein.com
Email: mjulceus@lowenstein.com
Email: emannix@lowenstein.com

**BAST AMRON LLP.**

By: _/s/ Peter J. Klock, II_
Brett M. Amron (FBN 0148342)
Peter J. Klock, II (FBN 103915)
One Southeast Third Avenue, Suite 2410
Miami, Florida 33131
Telephone: (305) 379-7904
Facsimile: (786) 206-8740
Email: bamron@bastamron.com
Email: pklock@bastamron.com

*Counsel to the Liquidating Trust and Liquidating Trustee*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via Email, as indicated, on the party listed below on this 22nd day of November, 2024.

/s/ *Peter J. Klock, II*
Peter J. Klock, Esq.

## SERVICE LIST

**VIA EMAIL**

Commercial LLC's
c/o Robert F. Reynolds, Esq.
Email: rreynolds@robertreynoldspa.com

1UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*,[1] | Case No.: 22-17842-PDR |
|     Debtors. | (Jointly Administered) |

_____/

VPX LIQUIDATING TRUST, by and through its
Liquidating Trustee,

      Plaintiff,

v.

JOHN H. OWOC, MEGAN ELIZABETH OWOC,
JONATHAN W. OWOC, BRANDEN SHAW,
DAVID RUNNEBAUM, JWO REAL ESTATE
INVESTMENT I, LLC, JWO REAL ESTATE
INVESTMENT II LLC, JW OWOC
ENTERPRISES, LLC, 167 SPYGLASS LN LLC,
120 SPYGLASS LN LLC, 3 PELICAN DR LLC,
TROPICAL SUNSET LLC, STAG
DEVELOPMENT LLC, SHAW INVESTMENTS
& REALTY, INC., ELITE ISLAND LLC, JHO
GA-1 INVESTMENT, LLC, JHO NV-1
INVESTMENT LLC, SHERIDAN REAL
ESTATE INVESTMENT A, LLC, SHERIDAN
REAL ESTATE INVESTMENT B, LLC, and
SHERIDAN REAL ESTATE INVESTMENT C,
LLC,

      Defendants.

Adv. Pro. No. 24-01009-PDR

_____

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

**LIQUIDATING TRUST'S INTERROGATORIES TO DEFENDANT
JOHN H. OWOC**

VPX Liquidating Trust, by and through its Liquidating Trustee (the "Liquidating Trust" or "Plaintiff"), the liquidating trust in the above-captioned chapter 11 bankruptcy cases (the "Chapter 11 Cases") established pursuant to the *Debtors' Second Amended Joint Plan of Liquidation* [Case No. 22-17842-PDR, Dkt. 1905] (the "Plan"), by and through undersigned counsel and pursuant to Federal Rules of Civil Procedure 26 and 33, made applicable to these proceedings by Rules 7026 and 7033 of the Federal Rules of Bankruptcy Procedure, hereby serve its Interrogatories on Defendant John H. Owoc ("Mr. Owoc") and requests that Mr. Owoc respond on or before December 22, 2024.

**<u>DEFINITIONS</u>**

1.      "Answer" refers to the ECF 156, the answer to the Second Amended Complaint filed by Defendants John H. Owoc, Megan Elizabeth Owoc, Elite Island LLC, JHO GA-I Investment LLC, JHO NV-I Investment LLC, Sheridan Real Estate Investment A, LLC, Sheridan Real Estate Investment B, LLC and Sheridan Real Estate Investment C, LLC on October 7, 2024 in the above-captioned adversary proceeding.

2.      "AZ Property" refers to the property located at 1635 S. 43rd Avenue, Phoenix, Arizona 85009.

3.      "Complaint" refers to ECF 148, the Second Amended Complaint, filed on September 16, 2024 in the above-captioned adversary proceeding.

4.      "Commercial LLCs" refers to Sheridan A, Sheridan B, Sheridan C, JHO NV, and JHO GA.

5. "Commercial LLCs' Claims" refers to the general unsecured claims asserted by You, on behalf of Yourself, the Commercial LLCs, and "JHO Real Estate LLC" in the Chapter 11 Cases.

6. "Consent Agreement" refers to the January 26, 2023 entered into between JHO IP and Entourage.

7. "Debtors" refers to the debtors in the above-referenced Chapter 11 cases, both individually and collectively, Vital Pharmaceuticals, Inc.; Bang Energy Canada, Inc.; JHO Intellectual Property Holdings, LLC; JHO Real Estate Investment, LLC; Quash Seltzer, LLC; Rainbow Unicorn Bev LLC; and Vital Pharmaceuticals International Sales, Inc.

8. "Document" has the broadest possible meaning permissible under the Federal Rules of Civil Procedure, including but not limited to all materials that constitute "writings," "recordings," or "photographs" within the broadest meaning of Rule 1001 of the Federal Rules of Evidence and all materials that constitute "documents" within the broadest meaning of Rule 7034 of the Federal Rules of Bankruptcy Procedure and Rule 34 of the Federal Rules of Civil Procedure. Documents include, without limitation, all written, graphic or otherwise recorded material, including without limitation, electronically stored information regardless of the form of storage medium, microfilms or other film records or impressions, tape recordings or computer cards, floppy disks or printouts, any and all papers, photographs, films, recordings, memoranda, books, records, accounts, Communications, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, interoffice memoranda or written communications of any nature, recordings of conversations either in writings or upon any mechanical or electrical recording devices, including e-mail, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, calendars, desk calendars, ledgers,

schedules, licenses, financial statements, spreadsheets, telephone bills, logs, and any differing versions of any of the foregoing, whether so denominated, formal, informal or otherwise, as well as copies of the foregoing which differ in any way, including by the addition of handwritten notations or other written or printed matter of any nature, from the original. The foregoing specifically includes electronically stored information (ESI) in any electronic format (e.g., Word, Excel, Outlook, .pdf, HTML, .tif, .jpeg, .wav) and information stored in a computer database and capable of being generated in documentary form, such as electronic mail, voicemail, text messages (i.e., SMS messages), iMessages, other electronic messages including messages sent or received via Slack, WhatsApp, Google, Hangouts, Facebook Messenger, and the like.

9. "Entourage" refers to Entourage IP Holdings, LLC and its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

10. "Fun Energy" refers to Fun Energy, LLC and its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

11. "Identify" means:

   a. With respect to a natural Person, to state the Person's name, present or last known business and residential addresses, business affiliation, and telephone number;

   b. With respect to an entity, to state the entity's name and present or last known business address;

   c. With respect to an event or occurrence, to state the date of the event or occurrence, where it occurred, who was present, what was said and what happened;

   d. With respect to an asset, to state the type or nature of the asset; the date the asset was created and acquired; the date the asset was sold or disposed of; the present location of the asset; a description of the asset, the value of the asset;

   e. With respect to a Document, to Describe and state the date, author(s), addressee(s), recipient(s), and subject matter of the Document; and

   f. With respect to a Communication, to state the date of the Communication, the method of the Communication, the names, titles and roles of each PERSON who made, received or participated in the Communication, the purpose of the

Communication, the subject matter of the Communication, and what was said or otherwise communicated.

12.     "Including" means including, but not limited to.

13.     "JHO GA" refers to JHO GA-1 Investment, LLC and its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

14.     Late Claims" refers to Claim Nos. 767, 768, 769, 770, 771, and 772 in the Chapter 11 Cases.

15.     Late Claims Addendum refers to the Addendum in Support of Amended Proof of Claim of John H. Owoc on Behalf of Himself and His Wholly-Owned Entities JHO GA-1 Investment, LLC, JHO NV-1 Investment, LLC, Sheridan Real Estate Investment A, LLC, Sheridan Real Estate Investment B, LLC, Sheridan Real Estate Investment C, LLC, and JHO Real Estate, LLC filed along with the Late Claims.

16.     "Lithia Springs Property" refers to the property located at 7705 Staples Dr, Douglasville, Georgia.

17.     "Person" means any natural person, partnership, joint venture, company, corporation, association, firm, trust, governmental entity, governmental agency, or any other kind of organization or entity, and any director, officer, employee, agent, representative, attorney, or principal thereof.

18.     "Person" means any natural person, partnership, joint venture, company, corporation, association, firm, trust, governmental entity, governmental agency, or any other kind of organization or entity, and any director, officer, employee, agent, representative, attorney, or principal thereof.

19.     "Relates to," "Related to," or "Relating to" means, without limitation, the following concepts: concerning, discussing, describing, setting forth, reflecting, dealing with, pertaining to, concerning, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, referencing, summarizing, criticizing, reporting, commenting, from, to, or otherwise involving, in whole or in part.

20.     "Rent-Related Claims" refers to the First Rent-Related Claim and the Second Rent-Related Claim.

21.     "Sheridan A" refers to Sheridan Real Estate Investment A, LLC and its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

22.     Sheridan A Property" refers to the property located at 20311 Sheridan Street, Pembroke Pines, Florida.

23.     "Sheridan B" refers to Sheridan Real Estate Investment B, LLC and its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

24.     "Sheridan B Property" refers to the property located at 20351 Sheridan Street, Pembroke Pines, Florida.

25.     "Sheridan C" refers to Sheridan Real Estate Investment C, LLC and its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

26.     "Sheridan C Property" refers to the property located at 20421 Sheridan Street, Pembroke Pines, Florida.

27.     "Southwest Ranches Property" refers to the property located at 16720 Stratford Court, Southwest Ranches, Florida.

28.     "Wagon Trail Property" refers to the property located at 4117 Wagon Trail Avenue, Las Vegas, Nevada.

29.     "You," "Your," and "Yourself" refers to John H. Owoc

## **INSTRUCTIONS**

1.      These Interrogatories are continuing in nature and responses must be supplemented if you obtain further or different information.  Plaintiff specifically reserves its right to seek supplementary responses to these discovery requests.

2.      If you assert a claim of privilege in responding or objecting to any request, and if you refuse to comply with the request due to such assertion, you shall in the response or objection identify the nature of the privilege (including work product) which is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, set forth the state privilege rule being invoked.  In asserting privilege, you shall indicate whether any documents relevant to the Interrogatory response exist.

3.      Unless otherwise specified in a specific Interrogatory, the time period for these requests is January 1, 2017 to Present.

4.      These interrogatories shall be deemed continuing so as to require supplemental answers if Plaintiff obtains further information between the time the answers are served and the time of trial.

5.      Each request to identify or produce a document or documents shall be deemed to call for the identification or production of the original document or documents to the extent that they are in or subject to, directly or indirectly, the control of the party to whom these interrogatories are addressed.  In addition, each request should be considered as including a request for separate identification or production of all copies and, to the extent applicable, preliminary drafts of documents that differ in any respect from the original or final draft or from each other (e.g., by reason of differences in form or content or by reason of handwritten notes or comments having been added to one copy of a document but not on the original or other copies thereof).

6.      The singular shall be deemed to include the plural and vice versa.  The feminine shall be deemed to include the masculine and vice versa.  The word "and" shall be deemed to include the disjunctive "or" and vice versa.

## INTERROGATORIES

1.      For each affirmative defense asserted in Your Answer, describe the basis of the defense, including facts supporting the defense, the reasons such facts support such defense, and the person(s) most knowledgeable about the facts and reasons supporting such defense.

2.      Describe the basis for the Debtors' responsibilities for Your personal tax liabilities, including any relevant agreements or legal authority which required the Debtors to make any payment on Your behalf.

3.      Identify any transfer set forth on Exhibit C to the Complaint which You deny was made.

4.      Identify any transfer set forth on Exhibit C to the Complaint which were made for a reason other than a distribution to Jack Owoc.

5.       For each transfer set forth on Exhibit C to the Complaint, which was subsequently transferred to another person, Identify the recipient of each such subsequent transfer and the amount transferred to each person.

6.      Describe any profits You received in connection with the Owoc Real Estate Enterprise, including the amount and date of the funds received, where the funds received were sent, and any subsequent transferees of the payments.

7.      Describe each instance in which an employee of the Debtors assisted You with Your personal finances, including the manner in which the employee assisted You, whether that

assistance was provided in the scope of his or her employment, and how that employee was compensated for his or her work.

8.      Describe each lawsuit or litigation where an employee of the Debtors provided You with legal representation and for each such lawsuit or litigation, including the identity of the employee who provided the legal representation, the subject-matter of the lawsuit, and how that employee was compensated for his or her work.

9.      Describe the circumstances Relating to Fun Energy's registration of the "Fuel Your Destiny" mark, including how Fun Energy acquired the "Fuel Your Destiny" mark, the Person from whom Fun Energy acquired the "Fuel Your Destiny" mark, the date of acquisition, the terms of acquisition, any consideration provided in connection with the acquisition of the "Fuel Your Destiny" mark, and the purpose for which Fun Energy acquired the "Fuel Your Destiny" mark.

10.     Describe the circumstances Relating to the Consent Agreement, including who authorized the Consent Agreement for both entities, whether the Debtors' Board of Directors approved the Consent Agreement, the date of such approval, the terms of the Consent Agreement, any consideration provided in connection with the Consent Agreement, and the purpose for which the parties entered into the Consent Agreement.

11.     Describe the manner in which You utilized the proceeds You received from the sale of the Lithia Springs Property, including any individuals or entities who received a portion of the proceeds.

12.     Describe the manner in which You utilized the proceeds You received from the sale of the Wagon Trail Property, including any individuals or entities who received a portion of the proceeds.

13.     Describe the manner in which You utilized the proceeds You received from the sale of the Sheridan B Property, including any individuals or entities who received a portion of the proceeds.

14.     Describe why You agreed to reimburse the Debtors for postpetition carrying costs associated with the Lithia Springs Property but did not agree to reimburse the Debtors for postpetition carrying costs associated with the Sheridan A Property.

15.     Identify the basis for the indemnification claims referenced in Paragraph 1(a) of the Late Claims' Addendum, including the specific Debtors' governance documents or statutes which give rise to the claims.

16.     Describe each event for which the Debtors purportedly used the Southwest Ranches property as referenced in Paragraph 1(e) of the Late Claims' Addendum, including the date of the event, the purpose of the event, why the event was held at the Southwest Ranches Property, the attendees of the event, and the monetary value You contend You are entitled to for the event.

17.     Describe why the Owoc Unliquidated Claim and the Original Owoc Claims were filed solely in Your individual capacity.

18.     Describe why the Late Claims purport to assert claims on behalf of "John H. Owoc on behalf of himself and his wholly owned subsidiaries."

19.     Describe why You filed the Rent-Related Claims asserting administrative claims for postpetition rent, rather than filing a motion for payment of an administrative expense claim.

20.     Describe the basis for Your claim to rent Related to the AZ Property, despite the fact that the AZ Property is titled in the name of Debtor JHO Real Estate Investment LLC.

Dated: November 22, 2024

**LOWENSTEIN SANDLER LLP**

Jeffrey L. Cohen, Esq.
Eric Chafetz, Esq.
Michael A. Kaplan, Esq.
Markiana J. Julceus, Esq.
Erica G. Mannix, Esq.
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 262-6700
Facsimile: (212) 262-7402
Email: jcohen@lowenstein.com
Email: echafetz@lowenstein.com
Email: mkaplan@lowenstein.com
Email: mjulceus@lowenstein.com
Email: emannix@lowenstein.com

**BAST AMRON LLP.**

By: /s/ Peter J. Klock, II
Brett M. Amron (FBN 0148342)
Peter J. Klock, II (FBN 103915)
One Southeast Third Avenue, Suite 2410
Miami, Florida 33131
Telephone: (305) 379-7904
Facsimile: (786) 206-8740
Email: bamron@bastamron.com
Email: pklock@bastamron.com

*Counsel to the Liquidating Trust and Liquidating Trustee*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via Email, as indicated, on the party listed below on this 22nd day of November, 2024.

/s/ *Peter J. Klock, II*
Peter J. Klock, Esq.

## SERVICE LIST

**VIA EMAIL**

John H. Owoc
c/o Robert F. Reynolds, Esq.
Email: rreynolds@robertreynoldspa.com

# EXHIBIT C

00845771.DOCX



**Michael A. Kaplan**
Partner

One Lowenstein Drive
Roseland, New Jersey 07068

T: (973) 597-2302
F: (973) 597-2303
M: (215) 740-5090
E: mkaplan@lowenstein.com

January 30, 2025

Via Email

Law Offices of Robert F. Reynolds, P.A.
Robert F. Reynolds, Esq.
15 East Las Olas Blvd., Suite 850
Fort Lauderdale, Florida 33301

Re:     **John H. Owoc, Megan Elizabeth Owoc, Elite Island LLC, and the Commercial LLCs Objections and Responses to Interrogatories and Requests for Admission**
         ***VPX Liquidating Trust v. John H. Owoc, et al.* (Adv. Pro. No. 24-01009 (PDR))**

Dear Mr. Reynolds:

As you are aware, this firm represents the Liquidating Trustee of the Liquidating Trust (the "Liquidating Trust") in the above-referenced adversary proceeding. We write to follow-up on the outstanding responses to the Liquidating Trust's interrogatories and to outline certain deficiencies in the Responses and Objections to Requests for Admissions (together, the "Responses and Objections") recently served by John H. Owoc ("Jack Owoc"), Megan Elizabeth Owoc ("Megan Owoc"), Elite Island LLC ("Elite Island"), and the Commercial LLCs[1] (collectively, the "Owoc Defendants") on January 17, 2025. This letter represents an attempt to meet and confer on these issues without judicial intervention.

## I.     Interrogatories

The Liquidating Trust served interrogatories on the Owoc Defendants on November 22, 2024. To date, the Owoc Defendants have not served responses and objections to the interrogatories. Please provide a response **no later than February 7, 2024**.

## II.     Requests for Admission

As you know, Federal Rule of Civil Procedure 36(a)(4) provides in pertinent part:

> if a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.

---

[1]    "Commercial LLCs" means JHO GA-I Investment LLC, JHO NV-I Investment LLC, Sheridan Real Estate Investment A, LLC, Sheridan Real Estate Investment B, LLC and Sheridan Real Estate Investment C, LLC.

---

NEW YORK     PALO ALTO     NEW JERSEY     UTAH     WASHINGTON, D.C.     Lowenstein Sandler LLP

Fed. R. Civ. P. 36(a)(4).  As outlined below, the Responses and Objections fall far short of the requisite standard because the Owoc Defendants failed to properly admit or deny the requests or conduct a reasonable inquiry into the subject matter of the Requests for Admission.

     **a.**  <u>**Failure to Admit or Deny**</u>

First, the Owoc Defendants merely lodged an objection to the following Requests for Admission, and failed to admit or deny each request:

- Megan Owoc Request Nos. 13, 22, 24, 25.

- Commercial LLCs Request Nos. 78, 95, 96, 98.

- Jack Owoc Request Nos. 7, 36, 37, 39–53, 102, 103, 106–121, 123–125, 128–152, 155–159, 161–163, 294.

As Federal Rule of Civil Procedure 36 makes clear, "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." *Id*.  A party may not simply lodge an objection to a request without admitting or denying it.  Nor may a party lodge an objection and assert that the request is denied solely due to the reasons outlined in the objection.  *Cole v. Raytheon Techs. Corp*., No. 22-CV-62225, 2024 WL 474311, at *3 (S.D. Fla. Feb. 7, 2024) (compelling plaintiff to provide responses to requests for admission where plaintiff "prefaced its responses . . . with an objection," followed by "answer stating it was either 'unable to admit or deny' or 'denied.'").

Further, the objections are meritless.  For example, in response to Request Nos. 106–121, 123–125, 128–152, 155–159, 161–163, Jack Owoc asserted that each request was "not relevant to the claims asserted against John H. Owoc in this case and appear to relate to pending litigation in another case, which is an improper use of a request for admissions since any matters admitted are only admitted for the instant case and not for any other purpose."  *See* Jack Owoc Responses and Objections.  These Requests for Admissions seek admissions about the real estate venture between Jack Owoc, Jonathan Owoc, Brendan Shaw and others that was funded using the Debtors' funds, i.e., the Owoc Real Estate Enterprise.[2]  The Complaint contains more than 50 paragraphs of factual allegations about the Owoc Real Estate Enterprise and Counts 1, 7–10 of the Complaint assert claims for breaches of fiduciary duty against Jack Owoc in connection with fraudulent transfers made to acquire residential real property for the Owoc Real Estate Enterprise, and assert aiding and abetting breach of fiduciary claims against other defendants in this action.  *See* Second Am. Compl. ¶¶ 233–82, 438–50, 504–29.

The Requests for Admission are indisputably relevant to those allegations as they seek information regarding the nature of the transfers from the Debtors to various real estate related entities,

---

[2]    All capitalized terms not otherwise defined herein have the meanings ascribed to them in the Second Amended Complaint filed in the above-captioned matter.  *See* ECF No. 148, Second Am. Compl. (the "<u>Complaint</u>").



confirmation of which real estate entities owned which pieces of real property, and the business arrangement between Jack Owoc and certain of the co-defendants. The business arrangement between Jack Owoc and certain of the co-defendants directly relates to the Counts for aiding and abetting in the Complaint. The mere fact that the information sought in these Requests for Admission may also be the subject of other litigation does not render the Requests for Admissions irrelevant. Nor can Jack Owoc assert a genuine concern about the risk of prejudicing himself in those other proceedings, which commenced after the Complaint was filed, as the Requests for Admission are limited solely to use in the instant litigation. *See* Fed. R. Civ. P. 36(a)(1) ("A party may serve on any other party a written request to admit, ***for purposes of the pending action only***, the truth of any matters within the scope of Rule 26(b)(1)" (emphasis added)).

By way of further example, Jack Owoc's objections to Requests Nos. 49-53 are similarly baseless. Those requests seek information about the launch of the Bang Drink and the Debtors' advertising of "Super Creatine." Count 3 of the Complaint asserts a breach of fiduciary duty claim against Jack Owoc based on the actions he took which gave rise to over $400 million in judgments in the Monster Lawsuit and OBI/Monster Arbitration – the crux of those claims is that Jack Owoc knowingly made false representations regarding the existence of "Super Creatine." *See* Second Am. Compl. ¶¶ 458-469. The Debtors' advertising of Super Creatine, and Jack Owoc's role in the same is plainly relevant to those allegations.

Accordingly, please amend the Responses and Objections identified above to either (i) admit the Requests for Admission, or (ii) explain why the Request for Admission cannot be admitted or denied, and detail the efforts that the Owoc Defendants took to conduct a reasonable inquiry into the subject matter of the Requests for Admission.

### b. <u>Failure to Investigate</u>

Second, the Owoc Defendants also indicated that they lacked sufficient knowledge to admit or deny the following Requests for Admission:

- Jack Owoc Request Nos. 203, 209, 231, 238, 239, 244, 249, 250, 265, 273, 294, 297, 298, 300.

- Commercial LLCs Request Nos. 50, 56, 99.

Federal Rule of Civil Procedure 36(a)(4) permits a party to "assert lack of knowledge or information as a reason for failing to admit or deny ***only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.***" Fed. R. Civ. P. 36(a)(4); *see also Odom v. Roberts*, 337 F.R.D. 347, 351 (N.D. Fla. 2020) ("A party who lacks sufficient knowledge to answer a request for admission cannot simply throw up his hands and refuse to admit a proposition."). Each of the Owoc Defendants' responses to the Requests for Admission identified above omits any explanation of the efforts undertaken to obtain information to admit or deny the request, let alone sufficient



information for the Liquidating Trust to determine whether the Owoc Defendants conducted a reasonable inquiry.

Accordingly, we request that you supplement the Owoc Defendants' Responses and Objections to detail the efforts the Owoc Defendants have undertaken to provide a response to the Requests to the extent the Requests for Admission are neither admitted nor denied as required by Federal Rule of Civil Procedure 36.

### c.  <u>Purportedly Vague Requests</u>

Third, we write to clarify two of the Requests for Admission in response to your Responses and Objections.

The Commercial LLCs objected to Request for Admission No. 100 on the basis that "'JHO RE' is not defined so the request is vague and unclear."  In that request, "JHO RE" refers to JHO Real Estate Investment, LLC and its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.  As revised, Request No. 100 should read "Admit that the AZ Property is owned by "JHO Real Estate LLC."

Similarly, Elite Island objected to Request for Admission No. 9 on the basis that the request was "missing words or it [sic] otherwise vague and unclear and Elite Island, LLC cannot respond to the request as currently phrased."  We are revising Request for Admission No. 9 to read, "Admit that You used the Debtors' funds to acquire the Overseas Highway Property."

In light of those revisions, please provide supplemental responses to the identified Requests for Admission.

Please supplement the Owoc Defendants' Responses and Objections to the Requests for Admission listed above **no later than February 7, 2024.**

Very truly yours,

*/s/ Michael A. Kaplan*
 Michael A. Kaplan



# EXHIBIT D

| | |
|---|---|
| **From:** | Julceus, Markiana J. |
| **To:** | rreynolds; Peter Klock; Brett Amron; Kaplan, Michael A.; Chafetz, Eric S.; Cohen, Jeffrey L.; Mannix, Erica G. |
| **Subject:** | RE: SERVICE OF DISCOVERY DOCUMENTS (VPX Liquidating Trust v. John H. Owoc, et al; Adv. Case No. 24-01009-PDR) |
| **Date:** | Friday, March 7, 2025 10:33:36 AM |
| **Attachments:** | image003.png |
| | image064593.png |
| | VPX - 1.30.25 Letter from M. Kaplan to R. Reynolds re Discovery.pdf |

Mr. Reynolds –

We are following up on the email below and the Deficiency Letter sent to you on January 30, 2025 (attached).  If we do not receive responses to the interrogatories and amended responses to the identified requests for admission **by 10am this Tuesday, March 11, 2025**, we intend to file a motion to compel discovery responses and for attorneys' fees and costs to be heard at the March 26th omnibus hearing.

Best,

Markiana

**Markiana Julceus**
she, her, hers
Counsel
Lowenstein Sandler LLP

T: (862) 926-2707
M: (973) 525-8496





---

**From:** Julceus, Markiana J. <MJulceus@lowenstein.com>
**Sent:** Thursday, January 30, 2025 3:32 PM
**To:** rreynolds <rreynolds@robertreynoldspa.com>; pklock <pklock@bastamron.com>; bamron <bamron@bastamron.com>; Kaplan, Michael A. <MKaplan@lowenstein.com>; Chafetz, Eric S. <EChafetz@lowenstein.com>; Cohen, Jeffrey L. <JCohen@lowenstein.com>; Mannix, Erica G. <EMannix@lowenstein.com>
**Subject:** RE: SERVICE OF DISCOVERY DOCUMENTS (VPX Liquidating Trust v. John H. Owoc, et al; Adv. Case No. 24-01009-PDR)

Mr. Reynolds -

Please see the attached.

Best,

Markiana

**Markiana Julceus**
she, her, hers
Counsel
Lowenstein Sandler LLP

T: (862) 926-2707
M: (973) 525-8496

 



---

**From:** Robert Reynolds <rreynolds@robertreynoldspa.com>
**Sent:** Friday, January 17, 2025 7:05 PM
**To:** pklock <pklock@bastamron.com>; bamron <bamron@bastamron.com>; Kaplan, Michael A. <MKaplan@lowenstein.com>; Chafetz, Eric S. <EChafetz@lowenstein.com>; Cohen, Jeffrey L. <JCohen@lowenstein.com>; Julceus, Markiana J. <MJulceus@lowenstein.com>; Mannix, Erica G. <EMannix@lowenstein.com>
**Subject:** RE: SERVICE OF DISCOVERY DOCUMENTS (VPX Liquidating Trust v. John H. Owoc, et al; Adv. Case No. 24-01009-PDR)

| Court Case Pending In: | United States Bankruptcy Court Southern District of Florida |
|---|---|
| Case Number: | Adv. Case No. 24-01009-PDR |
| Style of Case: | *Liquidating Trust v. John H. Owoc, et al* |
| Title of Document(s) Attached: | 1. ***Responses and Objections to Liquidating Trust's Request for Admission to Defendant Megan Owoc*** <br> 2. ***Responses and Objections to Liquidating Trust's Request for Admission to Defendant Elite Island, LLC*** <br> 3. ***Responses and Objections to Liquidating Trust's Request for Admission to Defendant John H. Owoc*** <br> 4. ***Responses and Ob Objections to Liquidating Trust's Request for Admission to Defendants Commercial, LLCs*** |

| Senders' Name & Telephone Numbers: | Robert F. Reynolds, Esq. 954.766.9928 |
|---|---|

Robert F. Reynolds, Esq.
Law Offices of Robert F. Reynolds, P.A.
515 East Las Olas Boulevard
Suite 850
Fort Lauderdale, Florida 33301
Telephone 954.766.9928
www.robertreynoldspa.com

This message and any attachments are a communication from an attorney, therefore, they may be privileged and/or confidential and are intended for receipt only by the named addressee. If you received this message and any attachments in error, you are asked to please contact the sender for instructions as to the destruction of such message and its attachments, and until such time, you are prohibited from any further dissemination thereof. Thank you for your cooperation in this regard.

---

This message contains confidential information, intended only for the person(s) named above, which may also be privileged. Any use, distribution, copying or disclosure by any other person is strictly prohibited. In such case, you should delete this message and kindly notify the sender via reply e-mail. Please advise immediately if you or your employer does not consent to Internet e-mail for messages of this kind.

# EXHIBIT E

## RESPONSES OF JOHN H. OWOC TO PLAINTIFF'S INTERROGATORIES

1.    For each affirmative defense asserted in Your Answer, describe the basis of the defense including facts supporting the defense, the reasons such facts support such defense, and the person(s) most knowledgeable about the facts and reasons supporting such defense.

ANSWER:  As to the defenses that apply to Jack Owoc, he states as follows: First Defense – statute of limitations is self-explanatory. The Complaint contains assertions of actions that took place more than four years before the filing of the bankruptcy. It is Jack Owoc's understanding that the statute of limitations for all of the claims is four years at most and might be less for some claims, so to the extent the claims seek damages from more than four years ago they are barred. It is unknown who would have the most knowledge as to the foregoing but it is believed that Jack Owoc, Megan Elizabeth Owoc, representatives of Monster and representatives of Orange Bang would have knowledge. Second Defense – the Complaint contains a list of transfers that the Plaintiff seeks to recover. To the extent any transfers are below the statutory limit they are not recoverable. Jack Owoc and any employees of the Debtors who worked in the finance department would have knowledge. Third Defense - the Complaint contains a list of transfers that the Plaintiff seeks to recover. To the extent any transfers were made in the ordinary course, such as all payments of salary and distributions to Jack Owoc that were paid as regular payroll, or according to ordinary business terms, they are not recoverable.  Jack Owoc and any employees of the Debtors who worked in the finance department would have knowledge. Fourth Defense - the Complaint contains a list of transfers that the Plaintiff seeks to recover. To the extent Jack Owoc gave new value for the transfers, such as continuing to work for the Debtors right up to the petition date without being compensated (Jack Owoc worked for the Debtors after the bankruptcy as well) the amount owed to Jack Owoc for these unpaid wages, services and the like would reduce any potential preference recovery. Jack Owoc and any employees of the Debtors who worked in the finance department would have knowledge. Fifth Defense - the Complaint seeks a determination that a property located in Georgia, which is outside the territorial jurisdiction of the Bankruptcy Court, is property of the Debtors. It is Jack Owoc's understanding that the Bankruptcy Court cannot assert jurisdiction over non-debtor properties in other locations. Sixth Defense – the Complaint contains claims seeking declaratory relief. It is Jack Owoc's understanding that the Bankruptcy Court does not fit within the definition of a court that can grant declaratory relief.  The Seventh and Eighth Defenses assert that Jack Owoc took any transfers in good faith and gave value, and that the transfers cannot be avoided. Jack Owoc would have knowledge regarding these defenses. The Ninth Defense asserts that, to the extent any of the fraudulent transfer claims seek recovery for transfer more than four years prior to the Petition Date the claims have been extinguished. Jack Owoc has knowledge. The Tenth Defense asserts a business judgment rule defense and goes to the breach of fiduciary duty claims. All of Jack Owoc's alleged breaches of fiduciary duty that underlie the claims against Jack Owoc are protected by the business judgment rule as the decisions that Jack Owoc made, which grew the Debtors into a multi-billion-dollar business, were all well within the bounds of the business judgment rule. The Eleventh and Twelfth Defenses are based on similar facts. As the Second Amended Complaint states, The Debtors were required to expand their board of directors in 2022. Yet, despite this expansion, the Debtors never took any action to assert any claims against Jack Owoc, never made demand to return any funds, never claimed that any funds allegedly paid to or for Jack Owoc were due to be returned for any reason, never amended the Debtors' schedules to assert that claims existed against Jack Owoc for breach of fiduciary duty, unjust enrichment or for anything else, did not assert any objections to the proofs of claims and scheduled claims of the Defendants, and in fact sat on their rights even after the board fired Jack

Owoc and Megan Elizabeth Owoc. Jack Owoc, Megan Elizabeth Owoc and all persons who served on the board of directors would have knowledge. None of the foregoing is intended to limit the persons who might be called to testify.

2.    Describe the basis for the Debtors' responsibilities for Your personal tax liabilities, including any relevant agreements or legal authority which required the Debtors to make any payment on Your behalf.

ANSWER: Part of Jack Owoc's compensation package included reimbursement for payment of taxes and this was a consistent practice for decades.

3.    Identify any transfer set forth on Exhibit C to the Complaint which You deny was made.

ANSWER:  Jack Owoc is still reviewing records and determining what transfers were made and if any were not made and will amend this response accordingly.

4.    Identify any transfer set forth on Exhibit C to the Complaint which were made for a reason other than a distribution to Jack Owoc.

ANSWER:  Jack Owoc is still reviewing records and determining what transfers were made for a reason other than a distribution to Jack Owoc and will amend this response accordingly. However, as an initial response, Jack Owoc can confirm that the transfers for $5,769.24 were payments of salary to Megan Elizabeth Owoc as compensation for her employment with the Debtors. Additionally, the transfers of $28,846.16 and then $68,866.54 were salary to Jack Owoc and not distributions.

5.    For each transfer set forth on Exhibit C to the Complaint, which was subsequently transferred to another person, Identify the recipient of each such subsequent transfer and the amount transferred to each person.

ANSWER:    Jack Owoc is still reviewing records and determining what transfers were subsequently paid to a third person as she does not recall from memory if any of the transfers were sent to a third party, especially because the transfers were of money which is fungible.

6.    Describe any profits You received in connection with the Owoc Real Estate Enterprise, including the amount and date of the funds received, where the funds received were sent, and any subsequent transferees of the payments.

ANSWER: Jack Owoc never received any profits because any time a property was sold any proceeds were reinvested.

7.  Describe each instance in which an employee of the Debtors assisted You with Your personal finances, including the manner in which the employee assisted You, whether that assistance was provided in the scope of his or her employment, and how that employee was compensated for his or her work.

ANSWER:  Jack Owoc does not recall every specific instance an employee assisted with his personal finances. That being said, Sury Rodriguez had access to every and all bank account under Jack Owoc's name and generally managed all aspects of the money in these accounts. To the extent Jack Owoc received any assistance from any employee of the Debtors with personal finances it was to make sure he received just compensation for earning hundreds of millions of dollars for the companies and acquiring real estate properties that the business used for free and failed to pay Owoc tens of millions of dollars that the companies owed him. From time to time it was impossible to completely bifurcate these entities because of Jack Owoc's extreme generosity in purchasing 1.225 million square feet of real estate that the companies utilized free of charge even though Jack Owoc or companies he owned were the owners of these properties.  Jack Owoc also allowed employees of the companies to use an additional 250,000 square foot non-manufacturing building he owned to operate the Debtors' businesses.

8.  Describe each lawsuit or litigation where an employee of the Debtors provided You with legal representation and for each such lawsuit or litigation, including the employee who provided the legal representation, the subject-matter of the lawsuit, and how that employee was compensated for his or her work.

ANSWER:  Jack Owoc was so valuable to the welfare of the companies that it was determined that the companies could not afford to leave him without legal representation and therefore provided representation on various occasions, including cases where both Jack Owoc and the companies were parties. Moreover, the Companies were a family-owned business who frequently gave employees legal advice. Jack Owoc's longstanding policy was that the companies would also legally defend any employee, whether at fault of not in legal matters and thus frequently did so. The Debtors' entire in-house attorney assisted Jack Owoc and others infrequently. Owoc frequently returned these favors when would appear as the companies' designated witness on dozens of legal cases to protect his employees from having to testify.

9.  Describe the circumstances Relating to Fun Energy's registration of the "You're your Destiny" mark, including how Fun Energy acquired the "Fuel Your Destiny" mark, the Person from whom Fun Energy acquired the "Fuel Your Destiny" mark, the date of acquisition, the terms of acquisition, any consideration provided in connection with the acquisition of the "Fuel Your Destiny" mark, and the purpose for which Fun Energy acquired the "Fuel Your Destiny" mark.

ANSWER:  Jack Owoc does not recall the particulars of this transaction as of the date of responding to these interrogatories.

10. Describe the circumstances Relating to the Consent Agreement, including who authorized the Consent Agreement for both entities, whether the Debtors' Board of Directors approved the Consent Agreement, the date of such approval, the terms of the Consent Agreement, any consideration provided in connection with the Consent Agreement, and the purpose for which the parties entered into the Consent Agreement.

ANSWER:  Jack Owoc does not recall the particulars of this transaction as of the date of responding to these interrogatories.

11. Describe the manner in which You utilized the proceeds You received from the sale of the Lithia Springs Property, including any individuals or entities who received a portion of the proceeds.

ANSWER: Jack Owoc does not recall all of the specifics of the transaction but to the best of his recollection he  followed the instructions of Trust Bank and counsel as the funds were used to pay down a loan due to Truist Bank.

12. Describe the manner in which You utilized the proceeds You received from the sale of the Wagon Trail Property, including any individuals or entities who received a portion of the proceeds.

ANSWER: Jack Owoc does not recall the particulars of this transaction as of the date of responding to these interrogatories.

13. Describe the manner in which You utilized the proceeds You received from the sale of the Sheridan B Property, including any individuals or entities who received a portion of the proceeds.

ANSWER:  Jack Owoc does not recall all of the specifics of the transaction but to the best of his recollection he  followed the instructions of Trust Bank and counsel as the funds were used to pay down a loan due to Truist Bank.

14. Describe why You agreed to reimburse the Debtors for postpetition carrying costs associated with the Lithia Springs Property but did not agree to reimburse the Debtors for postpetition carrying costs associated with the Sheridan A Property.

ANSWER:  Jack Owoc does not recall the particulars of this transaction as of the date of responding to these interrogatories.

15.    Identify the basis for the indemnification claims referenced in Paragraph 1(a) of the Late
       Claims' Addendum, including the specific Debtors' governance documents or statutes
       which give rise to the claims.

ANSWER:  This question seeks legal opinions and conclusions and Jack Owoc is not an attorney,
so he is unable to answer the question precisely, but it is Jack Owoc's understanding that, because
Jack Owoc was the president, director, and/or managing member or manager of the various
Debtors. The Debtors owe him a common law right of indemnity on all claims asserted against
him.  There may be other indemnification rights that Jack Owoc does not completely understand
as he is not an attorney,

16.    Describe each event for which the Debtors purportedly used the Southwest Ranches
       property as referenced in Paragraph 1(e) of the Late Claims' Addendum, including the date
       of the event, the purpose of the event, why the event was held at the Southwest Ranches
       Property, the attendees of the event, and the monetary value You contend You are entitled
       to for the event.

ANSWER: In January of 2021, Bang Energy's Delish Strawberry Kiss Flavor Launch video was
produced and filmed at the Southwest Ranches Property. Bang Energy needed to rent a yard and
venue for this production and Jack Owoc offered the house and hosted over 50 individuals needed
for the shoot. Using the Southwest Ranches House saved the company $150,000 in venue rental
fees.

In February 2022, Bang Energy's Raging Raspberry Hibiscus Flavor Launch video was produced
and filmed at the Southwest Ranches Property. Bang Energy needed to rent a mansion for this
production and Jack Owoc offered the house and hosted over 65 individuals needed for the shoot.
Using the Southwest Ranches House saved the company $150,000 in venue rental fees.

There may have been other events but Jack Owoc does not recall any others as of the time of
responding to these interrogatories.

17.    Describe why the Owoc Unliquidated Claim and the Original Owoc Claims were filed
       solely in Your individual capacity.

ANSWER:  Jack Owoc does not recall the specifics of the filing of the claims as of the date of the
responses to these interrogatories but believes they were filed by counsel.

18.    Describe why the Late Claims purport to assert claims on behalf of "John H. Owoc on
       behalf of himself and his wholly owned subsidiaries."

ANSWER:  Jack Owoc does not recall the specifics of the filing of the claims as of the date of the
responses to these interrogatories but believes they were filed by counsel.

19.     Describe why You filed the Rent-Related Claims asserting administrative claims for postpetition rent, rather than filing a motion for payment of an administrative expense claim.

ANSWER:  Jack Owoc does not recall the specifics of the filing of the claims as of the date of the responses to these interrogatories but believes they were filed by counsel. If these claims needed to be presented by way of a motion instead of filing a proof of claim Jack Owoc was not aware of this requirement.

20.     Describe the basis for Your claim to rent Related to the AZ Property, despite the fact that the AZ Property is titled in the name of Debtor JHO Real Estate Investment LLC.

ANSWER:   The Arizona properties, including the Phoenix manufacturing facility, were unlawfully transferred without proper authorization. Mr. Owoc has testified under oath in the bankruptcy court that the electronic signatures used in connection with these transfers were not his, and there is no evidence that he knowingly consented to, authorized, or executed such conveyances.

Under Arizona law, real estate transfers must comply with strict statutory formalities. A.R.S. § 33-401(A) provides that "no estate or interest in lands…shall be conveyed…unless the conveyance is in writing and signed by the party." Moreover, valid conveyances typically require wet-ink signatures and notarization—formalities that were not satisfied in this case. The same applies under Florida law, where Fla. Stat. § 689.01 requires that deeds transferring real property be signed in the presence of witnesses and acknowledged before a notary public. The alleged electronic conveyances of the Arizona property do not comply with these essential legal requirements.

Because the Phoenix facility is located in Arizona, Arizona law governs questions of title and transfer. In re Roca, 404 B.R. 531, 540 (Bankr. D. Arizona 2009) ("Since the real estate at issue is located in the State of Arizona, the Court will analyze applicable Arizona law.") The failure to obtain a validly executed and notarized deed renders the transfer facially invalid under Arizona law and unenforceable in Florida as well.

Further, the Florida bankruptcy court lacked jurisdictional authority to unilaterally effectuate the transfer of Arizona real estate. As held in Butner v. United States, 440 U.S. 48, 55 (1979), "Property interests are created and defined by state law." Thus, any action taken by the bankruptcy court that disregards Arizona's governing real estate statutes exceeds its authority and is legally void.

The Phoenix facility is a high-value asset, with the capacity to produce approximately 70 million cases annually, which, at $3.71 per case, translates to an estimated $259 million in potential annual revenue. The unlawful and unauthorized transfer of this facility constitutes not only a violation of state property law but may also rise to the level of fraudulent transfer or concealment under federal bankruptcy law. See 11 U.S.C. §§ 548 and 549, as well as 18 U.S.C. § 152(5), which criminalizes the fraudulent concealment or disposition of property in bankruptcy proceedings.

This transfer must be declared void ab initio, as it violated the substantive real property law of Arizona and the procedural requirements of both Arizona and Florida. It also appears to be part of a broader scheme of bankruptcy misconduct and abuse of jurisdiction.

## **28 U.S.C. § 1746 Declaration**

      I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct to the best of my knowledge and belief.


6/23/2025
_____
Date

By: _____
      John H. "Jack" Owoc

## MEGAN ELIZABETH OWOC'S RESPONSES TO PLAINTIFF'S INTERROGATORIES

1.    For each affirmative defense asserted in Your Answer, describe the basis of the defense, including facts supporting the defense, the reasons such facts support such defense, and the person(s) most knowledgeable about the facts and reasons supporting such defense.

ANSWER:  As to the defenses that apply to Megan Elizabeth Owoc, she states as follows: First – statute of limitations is self-explanatory. The Complaint contains assertions of actions that took place more than four years before the filing of the bankruptcy. It is Megan Elizabeth Owoc's understanding that the statute of limitations for all of the claims is four years at most and might be less for some claims, so to the extent the claims seek damages from more than four years ago they are barred. It is unknown who would have the most knowledge as to the foregoing but it is believed that Jack Owoc, Megan Elizabeth Owoc, representatives of Monster and representatives of Orange Bang  would have knowledge. Second Defense – the Complaint contains a list of transfers that the Plaintiff seeks to recover. To the extent any transfers are below the statutory limit they are not recoverable. Megan Elizabeth Owoc and any employees of the Debtors who worked in the finance department would have knowledge. Third Defense - the Complaint contains a list of transfers that the Plaintiff seeks to recover. To the extent any transfers were made in the ordinary course, such as all payments of salary to Megan Elizabeth Owoc that were paid as regular payroll, or according to ordinary business terms, they are not recoverable.  Megan Elizabeth Owoc and any employees of the Debtors who worked in the finance department would have knowledge. Fourth Defense - the Complaint contains a list of transfers that the Plaintiff seeks to recover. To the extent Megan Elizabeth Owoc gave new value for the transfers, such as continuing to work for the Debtors right up to the petition date without being compensated (Megan Elizabeth Owoc worked for the Debtors after the bankruptcy as well) the amount owed to Megan Elizabeth Owoc for these unpaid wages, services and the like would reduce any potential preference recovery. Megan Elizabeth Owoc and any employees of the Debtors who worked in the finance department would have knowledge.  The Eleventh and Twelfth Defenses are based on similar facts. As the Second Amended Complaint states, The Debtors were required to expand their board of directors in 2022. Yet, despite this expansion, the Debtors never took any action to assert any claims against Megan Elizabeth Owoc, never made demand to return any funds, never claimed that any funds allegedly paid to or for Megan Elizabeth Owoc were due to be returned for any reason, never amended the Debtors' schedules to assert that claims existed against Megan Elizabeth Owoc for unjust enrichment or for anything else, did not assert any objections to the proofs of claims and scheduled claims of the Defendants, and in fact sat on their rights even after the board fired Jack Owoc and Megan Elizabeth Owoc. Jack Owoc, Megan Elizabeth Owoc and all persons who served on the board of directors would have knowledge.  None of the foregoing is intended to limit the persons who might be called to testify.

If an affirmative defense is not addressed in this interrogatory then Megan Elizabeth Owoc is not asserting that defense in opposition to the claims asserted against her.

2.    Identify any transfer set forth on Exhibit C to the Complaint which You deny was made.

ANSWER:  Megan Elizabeth Owoc is still reviewing records and determining what transfers were made and if any were not made and will amend this response accordingly.

3.      Identify any transfer set forth on Exhibit C to the Complaint which were made for a reason other than a distribution to Jack Owoc.

ANSWER:  Megan Elizabeth Owoc is still reviewing records and determining what transfers were made for a reason other than a distribution to Jack Owoc and will amend this response accordingly. However, as an initial response, Megan Elizabeth Owoc can confirm that the transfers for $5,769.24 were payments of salary to Megan Elizabeth Owoc as compensation for her employment with the Debtors. Additionally, the transfers of $28,846.16 and then $68,866.54 were salary to Jack Owoc and not distributions.

4.      For each transfer set forth on Exhibit C to the Complaint, which was subsequently transferred to another person, Identify the recipient of each such subsequent transfer and the amount transferred to each person.

ANSWER:  Megan Elizabeth Owoc is still reviewing records and determining what transfers were subsequently paid to a third person as she does not recall from memory if any of the transfers were sent to a third party, especially because the transfers were of money which is fungible.

5.      Describe each instance in which an employee of the Debtors assisted You with Your personal finances, including the manner in which the employee assisted You, whether that assistance was provided in the scope of his or her employment, and whether that employee was personally compensated by You for his or her work.

ANSWER:  Megan Elizabeth Owoc does not recall any instance where an employee of the Debtors assisted her with her personal finances. The employees of the Debtors did not have access to Megan Elizabeth Owoc's personal accounts.

6.       Describe each lawsuit or litigation where an employee of the Debtors provided You with legal representation and for each such lawsuit or litigation, including the employee who provided the legal representation, the subject-matter of the lawsuit, and how that employee was compensated for his or her work.

ANSWER:  Megan Elizabeth Owoc does not recall any instance where an employee of the Debtors provided her with legal representation.

7.  Describe the costs, expenses, and revenues relating to filming, editing, and disseminating the YouTube videos on the YouTube page formerly known as the "Bang Family Energy Page," including the identity of any employees of the Debtors that assisted or worked on producing content for the YouTube page, the amounts paid to those employees, whether those amounts were paid by You or the Debtors, any other costs related to the YouTube page and how those costs were paid; and the revenue generated from the YouTube page, if any

ANSWER: The cost of editing for Bang Energy Family videos is $100.00 per video. The work was done by a freelancer hired by Megan Elizabeth Owoc and paid by Megan Elizabeth Owoc. Invoices were previously provided in the Debtors' cases. Production and filming was performed by Megan Elizabeth Owoc. No revenue was made on this channel when it was called Bang Energy Family.

8.  Describe the costs and expenses relating to the creation and development of "MegLiz Swim," including but not limited to, any employees of the Debtors that assisted or worked on creating, designing, or developing swimwear or marketing for "MegLiz Swim," the amounts paid to those employees; whether those amounts were paid by You or the Debtors; any other costs related to MegLiz Swim and how those costs were paid.

ANSWER:  MegLiz Swim was created and developed by Megan Elizabeth Owoc.  To the best of Megan Elizabeth Owoc's recollection no employees of the Debtors assisted or worked for MegLiz Swin and the Debtor did not pay any amounts related to MegLiz Swim.

9.  Identify any Debtor-related events held at Your Southwest Ranches Property, including the date of the event, the reason why it was held at the Southwest Ranches Property, any the attendees.

ANSWER: In January of 2021, Bang Energy's Delish Strawberry Kiss Flavor Launch video was produced and filmed at the Southwest Ranches Property. Bang Energy needed to rent a yard and venue for this production and Megan Elizabeth Owoc offered the house and hosted over 50 individuals needed for the shoot. Using the Southwest Ranches House saved the company $150,000 in venue rental fees.

In February 2022, Bang Energy's Raging Raspberry Hibiscus Flavor Launch video was produced and filmed at the Southwest Ranches Property. Bang Energy needed to rent a mansion for this production and Megan Elizabeth Owoc offered the house and hosted over 65 individuals needed for the shoot. Using the Southwest Ranches House saved the company $150,000 in venue rental fees.

There may have been other events but Megan Elizabeth Owoc does not recall any others as of the time of responding to these interrogatories.

## 28 U.S.C. § 1746 Declaration

I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct to the best of my knowledge and belief.

6/23/2025
_____
Date

By: _____

Megan Elizabeth Owoc

## RESPONSES OF ELITE ISLAND, LLC TO PLAINTIFF'S INTERROGATORIES

1.  For each affirmative defense asserted in Your Answer, describe the basis of the defense, including facts supporting the defense, the reasons such facts support such defense, and the person(s) most knowledgeable about the facts and reasons supporting such defense.

ANSWER:  As to the defenses that apply to Elite Island, LLC, it states as follows: First Defense – statute of limitations is self-explanatory. The Complaint contains assertions of actions that took place more than four years before the filing of the bankruptcy. It is Elite Island, LLC's understanding that the statute of limitations for all of the claims is four years at most and might be less for some claims, so to the extent the claims seek damages from more than four years ago they are barred. It is unknown who would have the most knowledge as to the foregoing but it is believed that Jack Owoc and Megan Elizabeth Owoc would have knowledge. The Seventh and Eighth Defenses assert Elite Island took any transfers in good faith and gave value, and that the transfers cannot be avoided. Jack Owoc would have knowledge regarding these defenses. The Ninth Defense asserts that, to the extent any of the fraudulent transfer claims seek recovery for transfer more than four years prior to the Petition Date the claims have been extinguished. Jack Owoc has knowledge. The Tenth Defense asserts a business judgment rule defense and goes to the aiding and abetting breach of fiduciary duty claim. All of Jack Owoc's alleged breaches of fiduciary duty that underlie the claims against Elite Island, LLC for aiding and abetting are protected by the business judgment rule. Because there was no breach of fiduciary duty, there are no aiding and abetting claims. The Eleventh and Twelfth Defenses are based on similar facts. As the Second Amended Complaint states, The Debtors were required to expand their board of directors in 2022. Yet, despite this expansion, the Debtors never took any action to assert any claims against Elite Island, LLC , never made demand to return any property or funds, never claimed that any funds allegedly paid to or for Elite Island, LLC were due to be returned for any reason, never amended the Debtors' schedules to assert that claims existed against Elite Island, LLC for anything, did not amend the Debtors' schedules to assert an ownership interest in the Overseas Highway Property, and in fact sat on their rights even after the board fired Jack Owoc and Megan Elizabeth Owoc. Jack Owoc, Megan Elizabeth Owoc and all persons who served on the board of directors would have knowledge.  None of the foregoing is intended to limit the persons who might be called to testify.

If an affirmative defense is not addressed in this interrogatory then Elite Island, LLC is not asserting that defense in opposition to the claims asserted against it.

2.  Describe the circumstances Relating to Elite Island's formation, including the Persons who formed Elite Island, the Persons who were involved in the decision to form Elite Island, the purpose for which Elite Island was formed, and when Elite Island was formed.

ANSWER: Elite Island was formed on August 26, 2020 which is the date its papers were filed with the state of Florida. Mark Keston and Jack Owoc were the persons involved in the formation of Elite Island, LLC.

3.  Describe all actual and intended uses of the Overseas Highway Property during the relevant time period, including how Elite Island used or intended to use, or used, the Overseas Highway Property; the Persons involved in each actual or intended use; and the terms of any actual or contemplated agreements governing any actual or intended use.

ANSWER: Elite Island, LLC is a multi-member LLC whose specific use has yet to be decided. No use of any property has been determined and there have not been any agreements made regarding any use of any property owned by Elite Island, LLC.

4.  Identify all assets that Elite Island has ever owned, leased, rented, or otherwise acquired using funds received or transferred from the Debtors, including whether Elite Island still owns that asset and where it is held or located.

ANSWER: This question is not entirely clear and has grammatical issues. It also assumes that assets were purchased using funds from the Debtors. That being said. Elite Island has owned and still owns real property located at 72100 Overseas Highway, Islamorada, Florida.

5.  Identify all revenue that Elite Island has earned from assets acquired using funds received or transferred from the Debtors, including the source of such revenue; the amount of such revenue; and the date that such revenue was earned.

ANSWER Jack Owoc does not recall Elite Island, LLC ever receiving any revenue.

6.  Identify all contracts, whether written or unwritten, that Elite Island has entered into related to assets acquired using funds received or transferred from the Debtors, including the date of the contract, the purpose of the contract, and the relevant counter-party or counter-parties.

ANSWER: Jack Owoc dies not recall any contracts.

7.  Identify all distributions that Elite Island has made, including the amount of each distribution; the date of each distribution, and to whom each distribution was made.

ANSWER: None.

8.  Identify any transfer set forth on Exhibit H to the Complaint which You deny was made.

ANSWER:  Elite Island, LLC is still reviewing records and determining what transfers were made and if any were not made and will amend this response accordingly.

9.  Identify any transfer set forth on Exhibit H to the Complaint which were made for a reason other than a distribution to Jack Owoc.

ANSWER:  Elite Island, LLC is still reviewing records and determining what transfers were made and if any were not made and will amend this response accordingly.

10.    For each transfer set forth on Exhibit H to the Complaint, which was subsequently transferred to another person, Identify the recipient of each such subsequent transfer and the amount transferred to each person.

ANSWER:  Elite Island, LLC is still reviewing records and determining what transfers were made and if any were not made and will amend this response accordingly.

11.    State the current value of the Overseas Highway Property.

ANSWER: Unknown but the pending litigation is not helping in determining the value. To the best of Jack Owoc's knowledge and limited understanding of real estate law, an illegal lis pendens filed by the trustee has created a cloud on title to the real property and made the property worthless and impossible to transact business as a lis pendens tells potential buyers, lenders and the like that the property is subject to litigation.

12.    Identify each Person who assisted with managing Elite Island or the Overseas Highway Property, including the individual's name, last known telephone number and address, and whether that individual was ever an employee of the Debtors.

ANSWER: None. The property is a vacant lot and there has been no need for any sort of management.

### 28 U.S.C. § 1746 Declaration

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

6/23/2025
_____
Date

By: _____
John H. "Jack" Owoc, as Authorized
Representative of Elite Island, LLC

### RESPONSES TO LIQUIDATING TRUST'S INTERROGATORIES TO DEFENDANTS JHO GA-I INVESTMENT LLC, JHO NV-I INVESTMENT LLC, SHERIDAN REAL ESTATE INVESTMENT A, LLC, SHERIDAN REAL ESTATE INVESTMENT B, LLC, AND SHERIDAN REAL ESTATE INVESTMENT C, LLC

1.  For each affirmative defense asserted in Your Answer, describe the basis of the defense, including facts supporting the defense, the reasons such facts support such defense, and the person(s) most knowledgeable about the facts and reasons supporting such defense.

ANSWER: As to the defenses that apply to the Commercial LLCs, they state as follows: First Defense – statute of limitations is self-explanatory. The Complaint contains assertions of actions that took place more than four years before the filing of the bankruptcy. It is The Commercial LLCs' understanding that the statute of limitations for all of the claims is four years at most and might be less for some claims, so to the extent the claims seek damages from more than four years ago they are barred. It is unknown who would have the most knowledge as to the foregoing but it is believed that Jack Owoc, Megan Elizabeth Owoc and other employees both former and current would have knowledge. Fifth Defense - the Complaint seeks a determination that a property located in Georgia, which is outside the territorial jurisdiction of the Bankruptcy Court, is property of the Debtors. It is the Commercial LLC's understanding that the Bankruptcy Court cannot assert jurisdiction over non-debtor properties in other locations. Sixth Defense – the Complaint contains claims seeking declaratory relief. It is the Commercial LLC's understanding that the Bankruptcy Court does not fit within the definition of a court that can grant declaratory relief. The Eleventh and Twelfth Defenses are based on similar facts. As the Second Amended Complaint states, The Debtors were required to expand their board of directors in 2022. Yet, despite this expansion, the Debtors never took any action to assert any claims against the Commercial LLCs, never made demand to return any funds, never amended the Debtors' schedules to assert ownership in any of the properties that the Commercial LLCs owned, never amended the Schedules to recategorize any of the claims of the Commercial LLCs as disputed (or otherwise), did not assert any objections to the proofs of claims and scheduled claims of the Defendants until the filing of this matter, and in fact sat on their rights even after the board fired Jack Owoc and Megan Elizabeth Owoc. Jack Owoc, Megan Elizabeth Owoc and all persons who served on the board of directors would have knowledge. None of the foregoing is intended to limit the persons who might be called to testify.

If an affirmative defense is not addressed in this interrogatory then the Commercial LLC's are not asserting that defense in opposition to the claims asserted against them.

2.  Describe why the Late Claims are secured by a lien on the assets of the Debtors, including the amount of the Late Claims that are purportedly secured and the basis for any asserted subrogation or reimbursement rights.

ANSWER: It is Jack Owoc's understanding that based on the bank documents Owoc now sits in the super priority position of Truist Bank, and all the remaining funds in the estate should have been returned to him and must be returned to him immediately. There may be other grounds but this is what Jack Owoc recalls at this time.

3.    Describe why the Late Claims purport to assert claims on behalf of "John H. Owoc on behalf of himself and his wholly owned subsidiaries."

ANSWER: It is Jack Owoc's understanding that based on the bank documents Owoc now sits in the super priority position of Truist Bank, and all the remaining funds in the estate should have been returned to him and must be returned to him immediately. There may be other grounds but this is what Jack Owoc recalls at this time.

4.    Describe why the Sheridan A Property was titled in the name of Sheridan A, rather than one of the Debtors, when the Debtors funds or financing were used to acquire the property.

ANSWER: This interrogatory assumes that the Debtors' funds or financing were used to purchase this property. They were not. The Sheridan entities were all signatories on the financing documents that were executed in order to borrow the money from Branch Banking and Trust that was used to purchase the properties and thus were liable on same. Moreover, when the properties were sold the sales proceeds were used to satisfy all of the obligations, including those that the Debtors owed. Having noted the foregoing, the properties were titled in separate companies for liability purposes.

5.    Describe why the Sheridan B Property was titled in the name of Sheridan B, rather than one of the Debtors, when the Debtors funds or financing were used to acquire the property.

ANSWER: This interrogatory assumes that the Debtors' funds or financing were used to purchase this property. They were not. The Sheridan entities were all signatories on the financing documents that were executed in order to borrow the money from Branch Banking and Trust that was used to purchase the properties and thus were liable on same. Moreover, when the properties were sold the sales proceeds were used to satisfy all of the obligations, including those that the Debtors owed. Having noted the foregoing, the properties were titled in separate companies for liability purposes.

6.    Describe why the Sheridan C Property was titled in the name of the Sheridan C, rather than one of the Debtors, when the Debtors funds or financing were used to acquire the property.

ANSWER: This interrogatory assumes that the Debtors' funds or financing were used to purchase this property. They were not. The Sheridan entities were all signatories on the financing documents that were executed in order to borrow the money from Branch Banking and Trust that was used to purchase the properties and thus were liable on same. Moreover, when the properties were sold the sales proceeds were used to satisfy all of the obligations, including those that the Debtors owed. Having noted the foregoing, the properties were titled in separate companies for liability purposes.

7.    Describe why the Lithia Springs Property was titled in the name of JHO GA, rather than one of the Debtors, when the Debtors funds or financing were used to acquire the property.

ANSWER: This interrogatory assumes that the Debtors' funds or financing were used to purchase this property. They were not. JHO GA was a signatory on the financing documents that were executed in order to borrow the money from Branch Banking and Trust that was used to purchase the property and thus was liable on same. Having noted the foregoing, the properties were titled in separate companies for liability purposes.

8.      Describe why the Late Claims are secured by a lien on the assets of the Debtors, including the amount of the Late Claims that are purportedly secured and the basis for any asserted subrogation or reimbursement rights.

ANSWER: This Interrogatory is a repeat of Interrogatory Number Two above. The above response is incorporated as if set forth herein.

9.      Identify who prepared the market rent comps for the Sheridan A Property which are referenced in the Late Claims' Addendum, state when the market rent comps were prepared, and describe how and by whom the preparer was compensated.

ANSWER: As of the time of answering this interrogatory Jack Owoc is still reviewing records and has not located the answer to this interrogatory but will continue to  investigate and amend this response accordingly.

10.     Identify who prepared the market rent comps for the JHO Property which are referenced in the Late Claims' Addendum, state when the market rent comps were prepared, and describe how and by whom the preparer was compensated.

ANSWER: As of the time of answering this interrogatory Jack Owoc is still reviewing records and has not located the answer to this interrogatory but will continue to  investigate and amend this response accordingly.

11.     Describe why the Sheridan A Property was titled in the name of Sheridan A, rather than one of the Debtors, when the Debtors funds or financing were used to acquire the property.

ANSWER: This interrogatory is a repeat of Number 4 above. The above response is incorporated as if set forth herein.

12.     Describe why the Sheridan B Property was titled in the name of Sheridan B, rather than one of the Debtors, when the Debtors funds or financing were used to acquire the property.

ANSWER: This interrogatory is a repeat of Number 5 above. The above response is incorporated as if set forth herein.

13.     Describe why the Sheridan C Property was titled in the name of the Sheridan C, rather than one of the Debtors, when the Debtors funds or financing were used to acquire the property.

ANSWER: This interrogatory is a repeat of Number 6 above. The above response is incorporated as if set forth herein.

14.     Describe why the Lithia Springs Property was titled in the name of JHO GA, rather than one of the Debtors, when the Debtors funds or financing were used to acquire the property.

ANSWER: This interrogatory is a repeat of Number 7 above. The above response is incorporated as if set forth herein.

15. Identify each person who assisted with managing the Commercial LLCs including the individual's name, last known telephone number and address, and whether that individual was ever an employee of the Debtors.

ANSWER: As of the time of answering this interrogatory Jack Owoc does not recall who was involved in the management of the Commercial LLCs other than Jack Owoc, who was involved in certain aspects of the management of the Commercial LLCs.

16. Describe the circumstances Relating to the Commercial LLCs not being included as debtors in the Bankruptcy Proceeding, including the reason(s) why each Commercial LLC was not included as a debtor in the Bankruptcy Proceeding and the Persons who were involved in that decision.

ANSWER:  Jack Owoc does not recall all of the circumstances regarding why the Commercial LLCs were not treated as debtors. Some of the decisions may have been based on the advice of counsel. Having noted the foregoing Jack Owoc notes that  he used approximately $122 million derived from the sale of his personally owned properties to pay down amounts due to Truist and 12 other syndicated lenders. This repayment reduced the liabilities of the Debtors significantly. As for Mr. Owoc, understanding of the bank documents Owoc now sits in the super priority position of Truist Bank, and all the remaining funds in the estate should have been returned to him and must be returned to him immediately.

### **28 U.S.C. § 1746 Declaration**

I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct to the best of my knowledge and belief.

6/23/2025
_____
Date

By: _____

John H. "Jack" Owoc, as the authorized representative of each of the Commercial LLCs

# EXHIBIT F



One Southeast Third Avenue, Suite 2410 | Miami, Florida 33131 | bastamron.com | 305.379.7904

PETER J. KLOCK, II
pklock@bastamron.com

July 2, 2025

<u>VIA EMAIL</u>
Law Offices of Robert F. Reynolds, P.A.
Robert F. Reynolds, Esq.
15 East Las Olas Blvd., Suite 850
Fort Lauderdale, Florida 33301
rreynolds@robertreynoldspa.com

**Re:    John H. Owoc, Megan Elizabeth Owoc, Elite Island LLC, and the Commercial LLCs Responses to Interrogatories**
***VPX Liquidating Trust v. John H. Owoc, et al.* (Adv. Pro. No. 24-01009 (PDR))**

Dear Mr. Reynolds:

As you are aware, this firm represents the Liquidating Trustee of the Liquidating Trust (the "<u>Liquidating Trust</u>") in the above-referenced adversary proceeding.  We write to outline certain deficiencies in the responses (together, the "<u>Responses</u>") to the Liquidating Trust's interrogatories (the "<u>Interrogatories</u>") recently served by John H. Owoc ("<u>Jack Owoc</u>"), Megan Elizabeth Owoc ("<u>Megan Owoc</u>," and together with Jack Owoc, the "<u>Owocs</u>"), Elite Island LLC ("<u>Elite Island</u>"), and the Commercial LLCs[1] (collectively, the "<u>Owoc Defendants</u>") on June 23, 2025.  This letter represents an attempt to meet and confer on these issues without judicial intervention; we welcome a direct conversation once we receive your written position on the below deficiencies.

As you know, Federal Rule of Civil Procedure ("<u>Rule</u>") 33(b)(3) provides in pertinent part: "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Moreover, Rule 26(g) requires that a party make a "reasonable inquiry" in connection with responding to a discovery request.  *See, e.g.*, *Hollywood Community Synagogue, Inc. v. City of Hollywood, Fla.*, 2005 WL 8154793 ("Interrogatories by their nature often require the answering party to do some work.  The [respondent] should make reasonable inquiry . . . sufficient to enable it to answer this interrogatory.").  Rule 37(a)(3) and Rule 7037(a)(3) of the Federal Rules of Bankruptcy Procedure treat evasive or incomplete answers to interrogatories as a complete failure to respond. Fed. R. Civ. P. 37(a)(3).  As outlined below, the Responses fall far short of the requisite standard because the Owoc Defendants failed to answer many of the Interrogatories fully, and instead provided non-responsive answers.

---

[1]    "Commercial LLCs" means JHO GA-I Investment LLC, JHO NV-I Investment LLC, Sheridan Real Estate Investment A, LLC, Sheridan Real Estate Investment B, LLC and Sheridan Real Estate Investment C, LLC.

*July 2, 2025*
*Page 2*

**First**, the Owoc Defendants provided non-responsive answers by stating that they are "still reviewing records" in their Responses to certain Interrogatories.[2]  These Responses include the following:

- Jack Owoc Responses to Interrogatory Nos. 3 ("Jack Owoc is ***still reviewing records*** and determining what transfers were made and if any were not made and will amend this response accordingly."), 4 ("Jack Owoc is ***still reviewing records*** and determining what transfers were made for a reason other than a distribution to Jack Owoc and will amend this response accordingly. However, as an initial response, Jack Owoc can confirm that the transfers for $5,769.24 were payments of salary to Megan Elizabeth Owoc as compensation for her employment with the Debtors. Additionally, the transfers of $28,846.16 and then $68,866.54 were salary to Jack Owoc and not distributions."), 5 ("Jack Owoc is ***still reviewing records*** and determining what transfers were subsequently paid to a third person as she does not recall from memory if any of the transfers were sent to a third party, especially because the transfers were of money which is fungible.");

- Megan Owoc Responses to Interrogatory Nos. 2 ("Megan Elizabeth Owoc is ***still reviewing records*** and determining what transfers were made and if any were not made and will amend this response accordingly."), 3 ("Megan Elizabeth Owoc is ***still reviewing records*** and determining what transfers were made for a reason other than a distribution to Jack Owoc and will amend this response accordingly. However, as an initial response, Megan Elizabeth Owoc can confirm that the transfers for $5,769.24 were payments of salary to Megan Elizabeth Owoc as compensation for her employment with the Debtors. Additionally, the transfers of $28,846.16 and then $68,866.54 were salary to Jack Owoc and not distributions."), 4 ("Megan Elizabeth Owoc is ***still reviewing records*** and determining what transfers were subsequently paid to a third person as she does not recall from memory if any of the transfers were sent to a third party, especially because the transfers were of money which is fungible.");

- Elite Island Responses to Interrogatory Nos. 8 ("Elite Island, LLC is ***still reviewing records*** and determining what transfers were made and if any were not made and will amend this response accordingly."), 9 ("Elite Island, LLC is ***still reviewing records*** and determining what transfers were made and if any were not made and will amend this response accordingly."), 10 ("Elite Island, LLC is ***still reviewing records*** and determining what transfers were made and if any were not made and will amend this response accordingly."); and

---

[2]    During the hearing on March 26, 2025, Judge Russin gave a clear directive that your clients were to make "significant effort" to complete discovery during the period between March 26, 2025 and the present.  Yet not only are Ms. Owoc's answers to Interrogatory Nos. 2, 3, and 4 entirely unchanged, and therefore reflective of no effort to provide responsive information or complete discovery, but your clients each adopted the same non-responsive answers as to each Interrogatory related to the transfers.



*July 2, 2025*
*Page 3*

- Commercial LLC Responses to Interrogatory Nos. 9 ("As of the time of answering this interrogatory Jack Owoc is ***still reviewing records*** and has not located the answer to this interrogatory but will continue to investigate and amend this response accordingly."), 10 ("As of the time of answering this interrogatory Jack Owoc is ***still reviewing records*** and has not located the answer to this interrogatory but will continue to investigate and amend this response accordingly.").

The Interrogatories were served on the Owoc Defendants on November 22, 2024, over seven months ago. Moreover, the Owoc Defendants have been in possession of the Liquidating Trust's documents, which were produced and served on them more than two months ago. At a minimum, both Jack Owoc and Megan Owoc have recently asserted at a hearing in the Bankruptcy Court that certain transfers related to Tropical Sunset 117, LLC were Jack Owoc's funds, not the Company's. The contradiction between the Owocs' sworn interrogatory Responses and their statements in Court are notable.

**Second**, the Owoc Defendants provided non-responsive answers by stating that they "do not recall" certain information in their Responses to certain Interrogatories. These Responses include the following:

- Jack Owoc Responses to Interrogatory Nos. 5 ("Jack Owoc is still reviewing records and determining what transfers were subsequently paid to a third person as she [sic] ***does not recall*** from memory if any of the transfers were sent to a third party, especially because the transfers were of money which is fungible."), 9 ("Jack Owoc ***does not recall*** the particulars of this transaction as of the date of responding to these interrogatories."), 10 ("Jack Owoc ***does not recall*** the particulars of this transaction as of the date of responding to these interrogatories."), 11 ("Jack Owoc ***does not recall*** all of the specifics of the transaction but to the best of his recollection he followed the instructions of Trust Bank and counsel as the funds were used to pay down a loan due to Truist Bank."), 12 ("Jack Owoc ***does not recall*** the particulars of this transaction as of the date of responding to these interrogatories."), 13 ("Jack Owoc ***does not recall*** all of the specifics of the transaction but to the best of his recollection he followed the instructions of Trust Bank and counsel as the funds were used to pay down a loan due to Truist Bank."), 14 ("Jack Owoc ***does not recall*** the particulars of this transaction as of the date of responding to these interrogatories."), 17 ("Jack Owoc ***does not recall*** the specifics of the filing of the claims as of the date of the responses to these interrogatories but believes they were filed by counsel."), 18 ("Jack Owoc ***does not recall*** the specifics of the filing of the claims as of the date of the responses to these interrogatories but believes they were filed by counsel."), 19 ("Jack Owoc ***does not recall*** the specifics of the filing of the claims as of the date of the responses to these interrogatories but believes they were filed by counsel. If these claims needed to be presented by way of a motion instead of filing a proof of claim Jack Owoc was not aware of this requirement.");



*July 2, 2025*
*Page 4*

- Megan Owoc Responses to Interrogatory Nos. 4 ("Megan Elizabeth Owoc is still reviewing records and determining what transfers were subsequently paid to a third person as she ***does not recall*** from memory if any of the transfers were sent to a third party, especially because the transfers were of money which is fungible."); and

- Commercial LLCs Responses to Interrogatory Nos. 15 ("As of the time of answering this interrogatory Jack Owoc ***does not recall*** who was involved in the management of the Commercial LLCs other than Jack Owoc, who was involved in certain aspects of the management of the Commercial LLCs."), 16 ("Jack Owoc ***does not recall*** all of the circumstances regarding why the Commercial LLCs were not treated as debtors.").

The selective recollection of information and the qualifier "as of the date of the responses to these interrogatories" suggests that, for example, Jack Owoc will seek to improve his recollection at a later time. If Jack Owoc cannot recall the information, so be it. But the notion that his recollection could improve with time strains credulity. As does the qualifier about still reviewing documents. Pursuant to the Rules, Jack Owoc is obligated to make a reasonable inquiry in connection with his response to the Interrogatories, and the Liquidating Trust is entitled to complete, non-evasive answers to its Interrogatories, particularly given the amount of time the Interrogatories have been pending. *See* Fed. R. Civ. P. 26(g) & 33(b)(3).

**Third**, the Commercial LLCs' Response to Interrogatory No. 3 is wholly unresponsive. Interrogatory No. 3 states "[d]escribe why the Late Claims purport to assert claims on behalf of "John H. Owoc on behalf of himself and his wholly owned subsidiaries." The Commercial LLCs' Response to that Interrogatory is "[i]t is Jack Owoc's understanding that based on the bank documents Owoc now sits in the super priority position of Truist Bank, and all the remaining funds in the estate should have been returned to him and must be returned to him immediately. There may be other grounds but this is what Jack Owoc recalls at this time." This Response fails to describe in any way why the Late Claims were purported filed on behalf of Jack Owoc **and** his wholly owned subsidiaries.

**Fourth**, the Commercial LLCs' Response to Interrogatory No. 2 fails to fully respond to the Interrogatory as required by Rule 33(b)(3). Interrogatory No. 2 states "[d]escribe why the Late Claims are secured by a lien on the assets of the Debtors, including the amount of the Late Claims that are purportedly secured and the basis for any asserted subrogation or reimbursement rights." The Commercial LLCs' Response to that Interrogatory is "[i]t is Jack Owoc's understanding that based on the bank documents Owoc now sits in the super priority position of Truist Bank, and all the remaining funds in the estate should have been returned to him and must be returned to him immediately. There may be other grounds but this is what Jack Owoc recalls at this time." If there are any other grounds for asserting a secured claim, the Commercial LLCs must include those grounds in their response to the Interrogatory.

The Liquidating Trust is entitled to full and complete responses to the Interrogatories pursuant to Rule 33(b)(3).



*July 2, 2025*
*Page 5*

Accordingly, please amend the deficient Responses identified above to fully respond to the related Interrogatories **by no later than July 8, 2025**.

Sincerely,

*/s/ Peter Klock*
 Peter J. Klock, II



# EXHIBIT G

| | |
|---|---|
| **From:** | Robert Reynolds |
| **To:** | Peter Klock |
| **Subject:** | Re: VPX Liquidating Trust v. John H. Owoc, et al. (Adv. Pro. No. 24-01009 (PDR); Responses to Interrogatories |
| **Date:** | Thursday, July 24, 2025 12:22:33 PM |
| **Attachments:** | image002.png |

Peter - my apologies for not updating you yesterday. The Owocs are still working on amended responses. I am on a plane to see family and will not be back in the office until Wednesday.  I will keep prodding them to complete the amended responses. If you need anything please let me know I will be checking emails.

Sent via the Samsung Galaxy Z Flip4, an AT&T 5G smartphone
Get Outlook for Android

---

**From:** Peter Klock <pklock@bastamron.com>
**Sent:** Wednesday, July 16, 2025 11:48:18 AM
**To:** Robert Reynolds <rreynolds@robertreynoldspa.com>; Jorge Miranda <jmiranda@bastamron.com>
**Cc:** Kaplan, Michael A. <mkaplan@lowenstein.com>; Mannix, Erica G. <emannix@lowenstein.com>; Julceus, Markiana J. <mjulceus@lowenstein.com>
**Subject:** RE: VPX Liquidating Trust v. John H. Owoc, et al. (Adv. Pro. No. 24-01009 (PDR); Responses to Interrogatories

Good morning, Rob,

I hope all is well.  I sent you the email below ten days ago, and you have yet to either respond to the deficiency letter or even let us know when we might expect a response to the deficiency letter.  If we don't have a response to the deficiency letter by close of business on Friday, July 18, we will seek relief from the Court and note your failure to engage with us on our attempt to confer regarding the discovery deficiencies.

Best regards,



PETER J. KLOCK, II
Partner

BAST AMRON LLP
SunTrust International Center              O:305.379.7904
One Southeast Third Avenue              D:786.219.4062
Suite 2410                                          pklock@bastamron.com
Miami, Florida 33131                          www.bastamron.com

My LinkedIn Profile

**Listen now to *The Practice Podcast* on YouTube, Spotify, Google, Amazon Music, and Apple Podcasts.**

🖨 **Please consider the environment before printing this email.**

-----------------------------------------------------------------------------------------------------------------------------

This message, together with any attachments, is intended only for the addressee. It may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, use or any action or reliance on this communication is strictly prohibited. If you have received this e-mail in error, please notify the sender immediately by telephone (305.379.7904) or by return e-mail and delete this message, along with any attachments.

**From:** Peter Klock
**Sent:** Sunday, July 6, 2025 11:38 AM
**To:** 'Robert Reynolds' <rreynolds@robertreynoldspa.com>; Jorge Miranda <jmiranda@bastamron.com>
**Cc:** Kaplan, Michael A. <mkaplan@lowenstein.com>; Mannix, Erica G. <emannix@lowenstein.com>; Julceus, Markiana J. <mjulceus@lowenstein.com>
**Subject:** RE: VPX Liquidating Trust v. John H. Owoc, et al. (Adv. Pro. No. 24-01009 (PDR); Responses to Interrogatories

Good afternoon, Rob,

I hope you had a nice holiday weekend.  We will serve a notice of cancellation of the Elite Island deposition tomorrow.  We will be in touch regarding re-scheduling the deposition after we have a ruling on our motion to extend the scheduling order deadlines.

Can we expect a response to the deficiency letter by Friday?

Best regards,



PETER J. KLOCK, II
Partner

BAST AMRON LLP
SunTrust International Center              O:305.379.7904
One Southeast Third Avenue              D:786.219.4062
Suite 2410                                        pklock@bastamron.com
Miami, Florida 33131                          www.bastamron.com

My LinkedIn Profile

**Listen now to *The Practice Podcast* on YouTube, Spotify, Google, Amazon Music, and Apple Podcasts.**

🖨 **Please consider the environment before printing this email.**

-------------------------------------------------------------------------------------------------------------------------
This message, together with any attachments, is intended only for the addressee. It may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, use or any action or reliance on this communication is strictly prohibited. If you have received this e-mail in error, please notify the sender immediately by telephone (305.379.7904) or by return e-mail and delete this message, along with any attachments.

**From:** Robert Reynolds <rreynolds@robertreynoldspa.com>
**Sent:** Thursday, July 3, 2025 6:28 PM
**To:** Jorge Miranda <jmiranda@bastamron.com>
**Cc:** Peter Klock <pklock@bastamron.com>; Kaplan, Michael A. <mkaplan@lowenstein.com>; Mannix, Erica G. <emannix@lowenstein.com>; Julceus, Markiana J. <mjulceus@lowenstein.com>
**Subject:** RE: VPX Liquidating Trust v. John H. Owoc, et al. (Adv. Pro. No. 24-01009 (PDR); Responses to Interrogatories

I am in receipt of the attached and will address same. However, there is no way we will be able to respond by next Tuesday. I am walking out the door and will be gone all weekend (a holiday weekend) and am out Monday.

Along these lines something has come up for me next Thursday July 10 and I have to ask you to please move the depo of Elite Island.  We are available July 11, 14 or 16 but on the 16th we would need to start at 11. If those days do not work I will get additional dates. Thanks for you consideration and have a good weekend.

Robert F. Reynolds, Esq.
Law Offices of Robert F. Reynolds, P.A.
101 NE 3rd Avenue
Suite 1800
Fort Lauderdale, Florida 33301
Telephone 954.766.9928
www.robertreynoldspa.com


This message and any attachments are a communication from an attorney, therefore, they may be privileged and/or confidential and are intended for receipt only by the named addressee. If you received this message and any attachments in error, you are asked to please contact the sender for instructions as to the destruction of such message and its attachments, and until such time, you are prohibited from any further dissemination thereof. Thank you for your cooperation in this regard.

**From:** Jorge Miranda <jmiranda@bastamron.com>
**Sent:** Wednesday, July 2, 2025 2:06 PM
**To:** Robert Reynolds <rreynolds@robertreynoldspa.com>
**Cc:** Peter Klock <pklock@bastamron.com>; Kaplan, Michael A. <mkaplan@lowenstein.com>; Mannix, Erica G. <emannix@lowenstein.com>; Julceus, Markiana J. <mjulceus@lowenstein.com>
**Subject:** VPX Liquidating Trust v. John H. Owoc, et al. (Adv. Pro. No. 24-01009 (PDR); Responses to Interrogatories

Good day Mr. Reynolds,

Attached please find correspondence in connection with the above referenced matter and topic.

Regards,



JORGE L. MIRANDA, JR.
Senior Paralegal

BAST AMRON LLP
One Southeast Third Avenue            O:305.379.7904
Suite 2410                           D:786-219-4055
Miami Florida 33131                  jmiranda@bastamron.com
www.bastamron.com

**Listen now to *The Practice Podcast* on YouTube, Spotify, Amazon Music, and Apple Podcasts.**

♻ **Please consider the environment before printing this email.**
--------------------------------------------------------------------------------------------------------------------------------------

This message, together with any attachments, is intended only for the addressee. It may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, use or any action or reliance on this communication is strictly prohibited. If you have received this e-mail in error, please notify the sender immediately by telephone (305.379.7904) or by return e-mail and delete this message, along with any attachments.

# EXHIBIT H

| | |
|---|---|
| **From:** | Robert Reynolds |
| **To:** | Peter Klock; Jorge Miranda |
| **Cc:** | Kaplan, Michael A.; Mannix, Erica G.; Julceus, Markiana J. |
| **Subject:** | RE: VPX Liquidating Trust v. John H. Owoc, et al. (Adv. Pro. No. 24-01009 (PDR); Responses to Interrogatories |
| **Date:** | Sunday, July 20, 2025 11:37:07 PM |
| **Attachments:** | image001.jpg |
| | image002.png |

I have been out of the office for several days since you sent the letter.  We will have a response by Wed. July 23. Thanks.

Robert F. Reynolds, Esq.
Law Offices of Robert F. Reynolds, P.A.
101 NE 3rd Avenue
Suite 1800
Fort Lauderdale, Florida 33301
Telephone 954.766.9928
www.robertreynoldspa.com

This message and any attachments are a communication from an attorney, therefore, they may be privileged and/or confidential and are intended for receipt only by the named addressee. If you received this message and any attachments in error, you are asked to please contact the sender for instructions as to the destruction of such message and its attachments, and until such time, you are prohibited from any further dissemination thereof. Thank you for your cooperation in this regard.

**From:** Peter Klock <pklock@bastamron.com>
**Sent:** Wednesday, July 16, 2025 11:48 AM
**To:** Robert Reynolds <rreynolds@robertreynoldspa.com>; Jorge Miranda <jmiranda@bastamron.com>
**Cc:** Kaplan, Michael A. <mkaplan@lowenstein.com>; Mannix, Erica G. <emannix@lowenstein.com>; Julceus, Markiana J. <mjulceus@lowenstein.com>
**Subject:** RE: VPX Liquidating Trust v. John H. Owoc, et al. (Adv. Pro. No. 24-01009 (PDR); Responses to Interrogatories

Good morning, Rob,

I hope all is well.  I sent you the email below ten days ago, and you have yet to either respond to the deficiency letter or even let us know when we might expect a response to the deficiency letter.  If we don't have a response to the deficiency letter by close of business on Friday, July 18, we will seek relief from the Court and note your failure to engage with us on our attempt to confer regarding the discovery deficiencies.

Best regards,

PETER J. KLOCK, II
Partner

BAST AMRON LLP
SunTrust International Center          O:305.379.7904
One Southeast Third Avenue           D:786.219.4062
Suite 2410                           pklock@bastamron.com
Miami, Florida 33131                  www.bastamron.com

My LinkedIn Profile

**Listen now to *The Practice Podcast* on YouTube, Spotify, Google, Amazon Music, and Apple Podcasts.**

♻ **Please consider the environment before printing this email.**
-------------------------------------------------------------------------------------------------------------------
This message, together with any attachments, is intended only for the addressee. It may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, use or any action or reliance on this communication is strictly prohibited. If you have received this e-mail in error, please notify the sender immediately by telephone (305.379.7904) or by return e-mail and delete this message, along with any attachments.

---

**From:** Peter Klock
**Sent:** Sunday, July 6, 2025 11:38 AM
**To:** 'Robert Reynolds' <rreynolds@robertreynoldspa.com>; Jorge Miranda <jmiranda@bastamron.com>
**Cc:** Kaplan, Michael A. <mkaplan@lowenstein.com>; Mannix, Erica G. <emannix@lowenstein.com>; Julceus, Markiana J. <mjulceus@lowenstein.com>
**Subject:** RE: VPX Liquidating Trust v. John H. Owoc, et al. (Adv. Pro. No. 24-01009 (PDR); Responses to Interrogatories

Good afternoon, Rob,

I hope you had a nice holiday weekend.  We will serve a notice of cancellation of the Elite Island deposition tomorrow.  We will be in touch regarding re-scheduling the deposition after we have a ruling on our motion to extend the scheduling order deadlines.

Can we expect a response to the deficiency letter by Friday?

Best regards,

PETER J. KLOCK, II
Partner

BAST AMRON LLP
SunTrust International Center          O:305.379.7904
One Southeast Third Avenue           D:786.219.4062
Suite 2410                           pklock@bastamron.com
Miami, Florida 33131                  www.bastamron.com

[My LinkedIn Profile](#)

**Listen now to _The Practice Podcast_ on [YouTube](#), [Spotify](#), [Google](#), [Amazon Music](#), and [Apple Podcasts](#).**

♻ **Please consider the environment before printing this email.**

-------------------------------------------------------------------------------------------------------------------------------
This message, together with any attachments, is intended only for the addressee. It may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, use or any action or reliance on this communication is strictly prohibited. If you have received this e-mail in error, please notify the sender immediately by telephone (305.379.7904) or by return e-mail and delete this message, along with any attachments.

**From:** Robert Reynolds <[rreynolds@robertreynoldspa.com](mailto:rreynolds@robertreynoldspa.com)>
**Sent:** Thursday, July 3, 2025 6:28 PM
**To:** Jorge Miranda <[jmiranda@bastamron.com](mailto:jmiranda@bastamron.com)>
**Cc:** Peter Klock <[pklock@bastamron.com](mailto:pklock@bastamron.com)>; Kaplan, Michael A. <[mkaplan@lowenstein.com](mailto:mkaplan@lowenstein.com)>; Mannix, Erica G. <[emannix@lowenstein.com](mailto:emannix@lowenstein.com)>; Julceus, Markiana J. <[mjulceus@lowenstein.com](mailto:mjulceus@lowenstein.com)>
**Subject:** RE: VPX Liquidating Trust v. John H. Owoc, et al. (Adv. Pro. No. 24-01009 (PDR); Responses to Interrogatories

I am in receipt of the attached and will address same. However, there is no way we will be able to respond by next Tuesday. I am walking out the door and will be gone all weekend (a holiday weekend) and am out Monday.

Along these lines something has come up for me next Thursday July 10 and I have to ask you to please move the depo of Elite Island.  We are available July 11, 14 or 16 but on the 16th we would need to start at 11. If those days do not work I will get additional dates. Thanks for you consideration and have a good weekend.

Robert F. Reynolds, Esq.
Law Offices of Robert F. Reynolds, P.A.
101 NE 3rd Avenue
Suite 1800
Fort Lauderdale, Florida 33301
Telephone 954.766.9928
[www.robertreynoldspa.com](http://www.robertreynoldspa.com)

This message and any attachments are a communication from an attorney, therefore, they may be privileged and/or confidential and are intended for receipt only by the named addressee. If you received this message and any attachments in error, you are asked to please contact the sender for instructions as to the destruction of such message and its attachments, and until such time, you are prohibited from any further dissemination thereof. Thank you for your cooperation in this regard.

**From:** Jorge Miranda <[jmiranda@bastamron.com](mailto:jmiranda@bastamron.com)>
**Sent:** Wednesday, July 2, 2025 2:06 PM
**To:** Robert Reynolds <[rreynolds@robertreynoldspa.com](mailto:rreynolds@robertreynoldspa.com)>
**Cc:** Peter Klock <[pklock@bastamron.com](mailto:pklock@bastamron.com)>; Kaplan, Michael A. <[mkaplan@lowenstein.com](mailto:mkaplan@lowenstein.com)>; Mannix, Erica G. <[emannix@lowenstein.com](mailto:emannix@lowenstein.com)>; Julceus, Markiana J. <[mjulceus@lowenstein.com](mailto:mjulceus@lowenstein.com)>

**Subject:** VPX Liquidating Trust v. John H. Owoc, et al. (Adv. Pro. No. 24-01009 (PDR); Responses to Interrogatories

Good day Mr. Reynolds,

Attached please find correspondence in connection with the above referenced matter and topic.

Regards,



JORGE L. MIRANDA, JR.
Senior Paralegal

BAST AMRON LLP
One Southeast Third Avenue            O:305.379.7904
Suite 2410                            D:786-219-4055
Miami Florida 33131                   jmiranda@bastamron.com
www.bastamron.com

## Listen now to *The Practice Podcast* on YouTube, Spotify, Amazon Music, and Apple Podcasts.

🌲 **Please consider the environment before printing this email.**
-----------------------------------------------------------------------------------------------------------------------
This message, together with any attachments, is intended only for the addressee. It may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, use or any action or reliance on this communication is strictly prohibited. If you have received this e-mail in error, please notify the sender immediately by telephone (305.379.7904) or by return e-mail and delete this message, along with any attachments.