

**ORDERED in the Southern District of Florida on March 23, 2026.**



**Peter D. Russin, Judge**
**United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

In re:                                                                Chapter 11 Case


VITAL PHARMACEUTICALS, INC., et al.,             Case No. 22-17842-PDR

    Debtors.

_____/

VPX LIQUIDATING TRUST,

    Plaintiff,                                            Adv. Pro. No. 24-01009-PDR

v.


JOHN H. OWOC, et al.,

    Defendants.

_____/

**ORDER GRANTING LIQUIDATING TRUST'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT THREE AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Corporate officers who breach their fiduciary duties do not become immune from accountability simply because they are also the only stockholders. Florida law imposes fiduciary obligations on directors and officers for the protection of the corporation itself—not for the benefit of any particular class of shareholders, and not subject to waiver by a sole owner who later finds it convenient to argue that no one was harmed but himself. When those obligations are breached and the corporation is driven into bankruptcy, the right to enforce them passes to the trustee or liquidating trust.

The question before the Court is whether John H. Owoc—VPX's founder, sole shareholder, sole director, and CEO—breached his fiduciary duties to the corporation by orchestrating a false advertising campaign that a federal jury found to be willful and deliberate, resulting in a judgment approaching $300 million. The Liquidating Trust argues that he did and moves for partial summary judgment on Count Three of its Second Amended Complaint.[1] Mr. Owoc opposes and raises a Cross-Motion for Summary Judgment embedded in his Response.[2] For the reasons that follow, the Liquidating Trust's Motion is granted, and Mr. Owoc's Cross-Motion is denied.

### I. Background

---

[1] Dkt. No. 364.

[2] Dkt. No. 384.

Mr. Owoc founded Vital Pharmaceuticals, Inc. ("VPX") in 1993, serving as its sole officer and shareholder.[3] Under his leadership, VPX experienced significant growth and commercial success with its Bang energy drink brand.[4] At its peak, the company generated over $1 billion in annual revenue—an extraordinary achievement by any measure.[5]

However, central to Bang's commercial success were marketing claims about a proprietary ingredient Mr. Owoc called "Super Creatine." VPX marketed Super Creatine as a superior form of creatine that provided significant physical and mental health benefits.[6] Those claims, as a federal jury would later find, were false.[7] The Complaint in this adversary proceeding refers to the false advertising as the "Super Creatine Scheme."[8]

It is undisputed—and the Defendant has expressly acknowledged in his briefing and sworn declaration—that Mr. Owoc was VPX's sole shareholder, sole

---

[3] Declaration of John H. Owoc (Dkt. No. 384) at ¶¶ 2–3.

[4] Declaration of John DiDonato in Support of Chapter 11 Petitions and First Day Motions (Main Case Dkt. No. 26) at ¶¶ 8-9. Mr. Owoc included Mr. DiDonato's Declaration as Exhibit C to Defendant's Response in Opposition and Cross-Motion for Summary Judgment (Dkt. No. 384) (the "Response"). The Court may take judicial notice of Mr. DiDonato's Declaration under Federal Rule of Evidence 201. Rule 201(c)(1) provides that the Court may take judicial notice on its own, and the Eleventh Circuit has provided that courts may take judicial notice of their own records. *United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987).

[5] Declaration of John DiDonato in Support of Chapter 11 Petitions and First Day Motions (Main Case Dkt. No. 26) at ¶ 9.

[6] *Monster Energy Co. v. Vital Pharms., Inc.*, No. 23-55451 (9th Cir. Apr. 15, 2025) (mem.), at 2.

[7] Jury Verdict Form, *Monster Energy Co. v. Vital Pharms., Inc.*, No. 5:18-cv-01882-JGB-SHK (C.D. Cal.).

[8] Second Amended Complaint (Dkt. No. 148) at ¶13.

director, and Chief Executive Officer at all times relevant to the allegations in Count Three.[9] Defendant's own papers state that VPX had "no corporate will separate from Mr. Owoc's own."[10] There were no minority shareholders, no independent directors, and no board other than Mr. Owoc himself.[11]

In 2018, Monster Energy Company filed suit against both VPX and Mr. Owoc individually in the United States District Court for the Central District of California, alleging that the Super Creatine advertising violated Section 43(a) of the Lanham Act (the "Monster False Advertising Litigation").[12] Following a seven-week jury trial, the jury: (1) found both VPX and Mr. Owoc liable for false advertising; (2) found that their false advertising was willful and deliberate; and (3) awarded $271,924,174 in damages.[13] Monster was additionally awarded approximately $21 million in attorneys' fees and over $6 million in costs.[14] The total judgment—which the Court will refer to as the "False Advertising Judgment"—approached $300 million.

The jury was instructed that "VPX and/or Mr. Owoc acted willfully if they knew that their advertising was false or misleading or if they acted with indifference to

---

[9]Declaration of John H. Owoc at ¶¶ 2–3.

[10]Response at 24. Representations in a party's brief qualify as judicial admissions that can be used against them for purposes of summary judgment. *American Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th Cir. 1988).

[11]Defendants' Statement of Disputed Material Facts (Dkt. No. 387) ¶¶ 1–2.

[12]*Monster Energy Co. v. Vital Pharms., Inc.*, No. 5:18-cv-01882-JGB-SHK (C.D. Cal.).

[13]Jury Verdict Form, *Monster Energy Co. v. Vital Pharms., Inc.*, No. 5:18-cv-01882-JGB-SHK (C.D. Cal.).

[14]*Monster Energy Co. v. Vital Pharms., Inc.*, No. 5:18-cv-01882-JGB-SHK (C.D. Cal.), Order Denying Motion for New Trial (Dkt. No. 1040), at 31, 33.

whether their advertising was false or misleading."[15] This instruction is significant. The jury's willfulness finding necessarily encompassed a determination that Mr. Owoc either knew that the advertising was false or acted with indifference to whether it was.

The district court denied Defendants' post-trial motions, confirming that the jury "necessarily found that Defendants' advertising of Super Creatine (1) is false or misleading; (2) deceives or is likely to deceive consumers; (3) is material to consumers' purchasing decisions; and (4) injured Monster."[16] Mr. Owoc appealed. The Ninth Circuit affirmed, describing the "key issue at trial" as "whether Monster had shown that Owoc's advertisement of BANG as containing Super Creatine was false advertising under the Lanham Act."[17]

The False Advertising Judgment was one of the principal reasons for VPX's bankruptcy filing on October 10, 2022.[18] Ultimately, a Chapter 11 plan of liquidation was confirmed and became effective on November 21, 2023, establishing the VPX Liquidating Trust,[19] which is the Plaintiff in this adversary proceeding. The Trust filed its Motion for Partial Summary Judgment on December 23, 2025, seeking a

---

[15]Jury Instructions, *Monster Energy Co. v. Vital Pharms., Inc.*, No. 5:18-cv-01882-JGB-SHK (C.D. Cal.), Trial Tr. 28:23–29:5.

[16]*Monster Energy Co. v. Vital Pharms., Inc.*, No. 5:18-cv-01882-JGB-SHK (C.D. Cal.), Order Denying Motion for New Trial (Dkt. No. 1040), at 18.

[17]*Monster Energy Co. v. Vital Pharms., Inc.*, No. 23-55451 (9th Cir. Apr. 15, 2025) (mem.), at 5.

[18]Declaration of John DiDonato in Support of Chapter 11 Petitions and First Day Motions (Main Case Dkt. No. 26) at ¶ 41.

[19]Second Amended Joint Plan of Liquidation (Main Case Dkt. No. 1905).

determination of liability on Count Three—breach of fiduciary duty arising from the Super Creatine Scheme.

## II. Jurisdiction

This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157. Section 1334(b) confers jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11."[20] A proceeding is 'related to' a bankruptcy case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[21] This adversary proceeding satisfies that standard. The Liquidating Trust's claims, if successful, would augment the estate's assets available for distribution to creditors—a direct and substantial effect on the administration of the estate.

Although there is a reasonable basis to treat the Liquidating Trust's breach of fiduciary duty claims as core proceedings under 28 U.S.C. § 157(b)(2)(A) and (O), the Court need not resolve that question. Because the claims arise under Florida state law and exist independent of the Bankruptcy Code, *Stern v. Marshall* may raise a constitutional barrier to entry of final judgment regardless of statutory core status.[22] The Court therefore treats the proceeding as non-core under § 157(c). The question of finality is resolved by the parties' consent under § 157(c)(2), which, as the Supreme Court confirmed in *Wellness International Network, Ltd. v. Sharif*, satisfies Article

---

[20] 28 U.S.C. § 1334(b).

[21] *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir. 1990).

[22] *Stern v. Marshall*, 564 U.S. 462, 502 (2011).

III and authorizes this Court to enter final judgment.[23] Under § 157(c)(2), a bankruptcy court may enter a final order in such a proceeding with the consent of all parties.[24] Here, the parties have consented,[25] and the Court thus has authority to enter final judgments in this proceeding.

### III. Legal Standard

Summary judgment is governed by Federal Rule of Civil Procedure 56(a), which provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[26] The movant bears the initial burden of demonstrating

---

[23]*Wellness International Network, Ltd. v. Sharif*, 575 U.S. 665, 685 (2015).

[24]28 U.S.C. § 157(c)(2).

[25] The parties consented by virtue of this Court's Order Setting Scheduling Conference and Establishing Procedures and Deadlines (Dkt. No. 3) (the "Scheduling Order"), which provides: "**OBJECTION TO ENTRY OF FINAL ORDERS AND JUDGMENTS BY THE BANKRUPTCY COURT; CONSENT.** Unless otherwise ordered by the Court, not later than **4:00 p.m. two business days** before the scheduling conference, each party objecting to the entry of final orders or judgments by this Court on any issue in this proceeding must file with this Court a motion pursuant to Rule 7016(b), Fed. R. Bankr. P., requesting that this Court determine whether this proceeding is subject to the entry of final orders or judgments by this Court. Any such motion will be treated as an objection to the entry of final orders or judgments by this Court. **FAILURE OF ANY PARTY TO FILE A MOTION ON OR BEFORE THE DEADLINE PROVIDED IN THIS PARAGRAPH CONSTITUTES CONSENT BY SUCH PARTY TO THIS COURT ENTERING ALL APPROPRIATE FINAL ORDERS AND JUDGMENTS IN THIS PROCEEDING."** The scheduling conference was continued multiple times ultimately held on November 13, 2024 (*See* Dkt. No. 114). Accordingly, the parties had until November 11, 2024, to object to this Court entering final orders. Neither party objected by that date, which constitutes consent under the Scheduling Order.

Mr. Owoc also moved to withdraw the reference to the District Court on February 14, 2025 (Amended Motion for Withdrawal of Reference, Dkt. No. 232), and that motion was transmitted to the District Court on March 13, 2025, commencing Civil Action Number: 0:25-cv-60486-MD (Dkt. Nos. 248, 249). However, the request to withdraw the reference was likewise untimely under this Court's Scheduling Order. As of now, the Amended Motion for Withdrawal of Reference is still pending before the District Court. The timeliness and effect of that motion, however, are matters for the District Court to resolve. This Court proceeds on the basis that the parties' consent, as established by the Scheduling Order, authorizes entry of final judgment.

[26]Fed. R. Civ. P. 56(a), made applicable by way of Fed. R. Bankr. P. 7056.

the absence of a genuine issue of material fact.[27] Once met, the non-movant must come forward with specific facts showing a genuine issue for trial; a mere scintilla of evidence is insufficient.[28] The Court views the evidence in the light most favorable to the non-moving party.[29]

### IV. Analysis

Under Florida law, a claim for breach of fiduciary duty requires three elements: (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) damages proximately caused by the breach.[30] The Court addresses each in turn.

### A. Collateral Estoppel Establishes the Factual Predicate

Before reaching the elements, the Court addresses the threshold question of collateral estoppel. The Liquidating Trust contends that the jury's findings in the Monster False Advertising Litigation preclude Mr. Owoc from relitigating whether he willfully and deliberately engaged in false advertising of Super Creatine. The Court agrees.

As an initial matter, the Liquidating Trust has moved for the Court to take judicial notice of the First Amended Complaint in the Monster False Advertising Litigation,[31] the jury verdict form in that case,[32] the District Court's order denying

---

[27]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[28]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[29]*Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

[30]*Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002); *Taubenfeld v. Lasko*, 324 So. 3d 529, 537–38 (Fla. 4th DCA 2021).

[31]*Monster Energy Company v. Vital Pharmaceuticals, Inc.*, First Amended Complaint (Dkt. No. 61), Case No. 19-1882-JGB (C.D. Cal.)

[32]*Id.*, Verdict Form (Dkt. No. 890).

Mr. Owoc's post-trial motions,[33] and the Ninth Circuit's affirmance of the jury verdict and District Court's ruling,[34] all of which were attached as exhibits to the Liquidating Trust's Motion For Partial Summary Judgment on Count Three. The Court grants that request.

Under Federal Rule of Evidence 201, the Court may take judicial notice of a fact that "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[35] Courts routinely take judicial notice for the Liquidating Trust's precise purpose—bringing court records from prior litigation into evidence when considering dispositive motions, finding such records capable of determination from sources that cannot be reasonably questioned.[36]

The Court notes that, with regard to Monster's First Amended Complaint, the Court does not accept the allegations therein for the truth of the matters asserted. Rather, the Complaint simply provides the Court context for that litigation. On the other hand, the Court must credit the findings from the jury verdict, District Court, and Ninth Circuit, as the Court will now explain.

---

[33]*Id.,* Order (1) DENYING Defendants' Motion for New Trial, Judgment Notwithstanding the Verdict, or Remittitur (Dkt. No. 921); (2) GRANTING IN-PART Plaintiff's Motion for Equitable Relief, Fees, and Costs (Dkt. No. 928); (3) DENYING Defendant's Request for Clarification (Dkt. No. 1035); and (4) DENYING Defendant's Application to File Supplemental Opposition Under Seal (Dkt. No. 1038) (Dkt. No. 1050).

[34]*Monster Energy Company v. Vital Pharmaceuticals, Inc.*, Nos. 23-055451 and 24-244 (9th Cir.) (April 15, 2025 Memorandum).

[35]Fed. R. Evid. 201(b).

[36]*Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010).

In the Eleventh Circuit, collateral estoppel applies when: (1) the issue is identical to one previously litigated; (2) the issue was actually litigated; (3) the determination was critical and necessary to the earlier judgment; and (4) the estopped party had a full and fair opportunity to litigate.[37] The doctrine may be used offensively to preclude a party from relitigating issues previously determined against it.[38]

Each element is satisfied here. The factual predicate of Count Three—that Mr. Owoc willfully and deliberately engaged in false advertising of Super Creatine—is identical to the central issue in the Monster False Advertising Litigation. The issue was not resolved by default or stipulation; it was the product of a seven-week jury trial. The findings were critical and necessary to the Lanham Act verdict—the district court confirmed the jury "necessarily found" that the advertising was false, misleading, material, and injurious,[39] and the Ninth Circuit described it as "the key issue at trial."[40] Mr. Owoc had every opportunity to litigate the point. He was a named defendant, was represented by counsel, and defended through trial and two levels of appellate review.

---

[37]*In re MDL-1824 Tri-State Water Rts. Litig.*, 644 F.3d 1160, 1202 (11th Cir. 2011).

[38]*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 337 (1979).

[39]*Monster Energy Co. v. Vital Pharms., Inc.*, No. 5:18-cv-01882-JGB-SHK (C.D. Cal.), Order Denying Motion for New Trial (Dkt. No. 1040), at 18.

[40]*Monster Energy Co. v. Vital Pharms., Inc.*, No. 23-55451 (9th Cir.) (Apr. 15, 2025 Memorandum), at 5.

Accordingly, Mr. Owoc is collaterally estopped from relitigating the findings of the False Advertising Judgment, and those findings are established for purposes of this proceeding.

### B. Element One: Duty

The first element is straightforward. Under the Florida Business Corporations Act, directors must discharge their duties "in good faith" and "with the care an ordinarily prudent person in a like position would exercise under similar circumstances."[41] Officers are subject to the same obligations.[42] It is undisputed that Mr. Owoc was VPX's sole director and CEO throughout the relevant period. He owed VPX fiduciary duties of care, loyalty, and good faith by virtue of those positions. The duty element is established as a matter of law.

### C. Element Two: Breach

The applicable standard for breach of the duty of care under Florida law is gross negligence, which has been described as "synonymous with engaging in an irrational decision making process."[43] As articulated by the District Court for the Southern District of Florida in *In re Tousa*, corporate strategy fails the standard of care when it reflects "a knowing and deliberate indifference to the potential risk of harm to the Company."[44]

---

[41]Fla. Stat. § 607.0830(1).

[42]Fla. Stat. § 607.08411(1)–(2); *Taubenfeld*, 324 So. 3d at 538.

[43]*In re TOUSA, Inc.*, 437 B.R. 447, 462 (S.D. Fla. 2010).

[44]*Id.*

The jury in the Monster False Advertising Litigation found that Mr. Owoc's false advertising was "willful and deliberate." Pursuant to the jury instructions, that means the jury found he knew that the advertising was false or misleading or acted with indifference to whether the advertising was false or misleading.[45] The Court is mindful that Mr. Owoc maintains, with evident conviction, that Super Creatine is a legitimate compound. But a federal jury heard seven weeks of evidence and concluded otherwise, finding that Mr. Owoc knew that Super Creatine was not a legitimate compound or acted with indifference to that fact.[46] Those findings are preclusive, and this Court is bound by them. The avenue for challenging the jury's conclusion was the appellate process in the Monster case—not relitigation here. Mr. Owoc pursued such an appeal and lost.

A director who causes the corporation to engage in a years-long false advertising campaign that he knew was false, or acted with indifference to whether it was false, is the precise "knowing and deliberate indifference to the potential risk of harm to the Company" that the *Tousa* court held breaches the fiduciary duty of care.

### D. Element Three: Damages

The damages here arise from the False Advertising Judgment approaching $300 million. The causal chain requires no inference: Mr. Owoc directed the false

---

[45]Jury Instructions, *Monster Energy Co. v. Vital Pharms., Inc.*, No. 5:18-cv-01882-JGB-SHK (C.D. Cal.), Trial Tr. 28:23–29:5.

[46]Jury Verdict Form, *Monster Energy Co. v. Vital Pharms., Inc.*, No. 5:18-cv-01882-JGB-SHK (C.D. Cal.).

advertising, Monster sued, a jury found the advertising willfully and deliberately false, and VPX was held jointly and severally liable for $271.9 million in damages, plus fees and costs. VPX would not have been saddled with such judgment but for Mr. Owoc's conduct. Accordingly, the damages element is met, as are the other two elements, and the Court holds that Mr. Owoc breached his fiduciary duties to VPX via his conduct resulting in the False Advertising Judgment.

Because the Liquidating Trust seeks only a determination of liability at this time, the precise quantification of damages is reserved for further proceedings. For now, it suffices to say that the third element of breach of fiduciary duty is met, and Mr. Owoc is thus liable for his breach.

## V. Defendant's Arguments

The Court now turns to Defendant's arguments in opposition. Mr. Owoc raises a broad array of defenses, some procedural, some equitable, some substantive. The Court has considered each of them carefully. None creates a genuine dispute of material fact or otherwise bars summary judgment.

### A. Arguments Against Collateral Estoppel

#### 1. Evidentiary Objection

Defendant argues that the Trust's Statements of Undisputed Facts improperly rely on allegations from Monster's complaint. The objection is misplaced. The Trust does not rely on Monster's complaint as evidence of truth. It relies on the jury verdict, the district court's post-trial orders, and the Ninth Circuit's memorandum—final judicial determinations, not allegations. The Monster complaint provides context for

what was at issue, nothing more. The preclusive findings come from the verdict and its affirmance.

### 2. Pending Certiorari

Defendant argues that the False Advertising Judgment lacks preclusive effect because a petition for certiorari is pending before the United States Supreme Court. That is not the law. As the Eleventh Circuit has made clear, "[t]he established rule in the federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal."[47] The Monster judgment has been entered by the district court, post-trial motions have been denied, and the Ninth Circuit has affirmed. The Supreme Court has not granted certiorari. And even if certiorari were granted and review were underway, the judgment would nevertheless retain its preclusive effect. If the Supreme Court were to vacate the underlying judgment, this Court could revisit the issue at that time.

### 3. Collateral Estoppel "Symmetry"

Defendant argues that the Trust applies collateral estoppel asymmetrically invoking findings against Mr. Owoc while ignoring VPX's co-liability. This argument misapprehends the Trust's theory of the case. The Trust does not deny VPX's liability; to the contrary, it relies on it. The damages arose precisely from VPX's liability approaching $300 million caused by Mr. Owoc's breach—VPX's co-liability supplies the third element of the claim. There is no asymmetry. The cases Defendant cites

---

[47]*Jaffree v. Wallace*, 837 F.2d 1461, 1467 (11th Cir. 1988).

articulate the standard elements of collateral estoppel, all of which are satisfied here.[48]

### B. Arguments Against Standing

Defendant invokes several related arguments purporting to defeat the Trust's standing: derivative standing limitations, in pari delicto, unclean hands, and abuse of process. Defendant characterizes these as standing challenges; the Court addresses them as affirmative defenses. Each fails.

### 1. Derivative Standing

Defendant argues the Trust lacks standing because, under 11 U.S.C. § 541(a)(1), it acquires no greater rights than VPX possessed. The premise is correct, but the conclusion does not follow.

VPX always had a cause of action for breach of fiduciary duty against its sole director. The fact that VPX would not have brought such a claim—because the wrongdoer controlled the entity—does not mean the claim did not exist. It means only that there was no one positioned to enforce it. That is precisely the situation that the establishment of a liquidating trust is designed to address. As the Supreme Court has recognized, fiduciary obligations are normally enforceable by the corporation directly, but "in the event of bankruptcy of the corporation," they become "enforceable by the trustee," because "that standard of fiduciary obligation is designed for the protection

---

[48]*Allen v. McCurry*, 449 U.S. 90 (1980); *Montana v. United States*, 440 U.S. 147 (1979).

of the entire community of interests in the corporation—creditors as well as stockholders."[49]

The Liquidating Trust serves as the independent voice that the corporation lacked while the wrongdoer was in control. It may bring the claim that VPX had against Mr. Owoc.

### 2. *In Pari Delicto*

Mr. Owoc next argues that the doctrine of *in pari delicto* bars the Trust's claims. That defense fails for a number of reasons.

#### a. What the Doctrine Means and Where It Comes From

The Latin phrase *in pari delicto* means, simply, "in equal fault." The full maxim from which it derives—*in pari delicto potior est conditio defendantis*—translates roughly as: where both parties are equally in the wrong, the position of the defendant is the stronger one.[50]

To understand what that means in practice, start with a simple example. Suppose two people agree to run an illegal gambling operation together. The venture collapses. One of them sues the other for his share of the money. What should a court do?

The doctrine of *in pari delicto* supplies the answer: nothing. The court declines to intervene. Not because it likes the defendant, but because it will not lend its resources to settling a dispute between two people who were equally responsible for

---

[49]*Pepper v. Litton*, 308 U.S. 295, 307 (1939).

[50]*Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985).

creating the problem in the first place. As the Supreme Court explained, the doctrine rests on two foundational principles. First, courts should not serve as referees between wrongdoers—they have better things to do than sort out the relative grievances of parties who were both misbehaving. Second, denying relief to a wrongdoer is itself a form of deterrence—if you cannot run to court when your illegal scheme goes sideways, you have one more reason not to start the scheme.[51]

The doctrine is old. Its roots reach back centuries into English common law and before that into Roman law, and it has been recognized in American courts since the earliest days of the republic. It is an equitable doctrine, meaning it originated not in rigid statutory rules but in courts of conscience. These courts asked not merely what the law technically required, but what justice demanded. That equitable origin means the doctrine was never meant to be applied mechanically. Courts of equity have always recognized that blanket rules can produce unjust results in particular cases, and they have developed exceptions accordingly.

### b. What the Doctrine Is Not Designed to Do

Understanding what *in pari delicto* was designed to do requires understanding what it was not designed to do. It is not a reward for defendants. It is not a general license for wrongdoers to escape accountability. And it is not a tool for the powerful to insulate themselves from the consequences of their own misconduct.

The doctrine was designed for a specific and limited situation: two parties who were both independently at fault, who voluntarily engaged in the same wrongdoing,

---

[51]*Id.*

dispute their relative entitlements arising from that shared wrongdoing.  In that situation, a court steps back and says: we will not sort this out.  The parties made their choices; they can live with the consequences.

When the situation does not fit that description—when the parties were not independently at fault, when the plaintiff was not a voluntary wrongdoer, or when the very nature of the claim is that the defendant wronged the plaintiff rather than that both wronged each other—the doctrine has no application.  As one court aptly cautioned, courts should not be "so enamored with the Latin phrase '*in pari delicto*' that they blindly extend the rule to every case where illegality appears somewhere in the transaction."[52]

### c. How the Doctrine Works in Corporate Cases

When a corporation—or someone acting on its behalf, like a bankruptcy trustee or a liquidating trust—sues a third party, and that third party invokes *in pari delicto*, the defense works through the law of agency and imputation. A corporation cannot act on its own; it can only act through human beings—its officers, directors, and employees. Under basic agency principles, what those people do within the scope of their authority is attributed, or "imputed," to the corporation.  So, if a corporation's officers committed fraud that harmed a third party, and the third party later sues the corporation, the corporation cannot deny that the fraud was its own—the officers were its agents, and their acts were its acts.

---

[52]*Norwood v. Judd*, 93 Cal. App. 2d 276, 289 (1949).

That imputation principle has real consequences for *in pari delicto*. If a corporation's officers participated in wrongdoing, that wrongdoing is imputed to the corporation. A trustee who later steps into the corporation's shoes is bound by the same history. Courts have held that the trustee cannot sue others for their role in the wrongdoing if the corporation itself was an equal participant.[53]

But imputation—the rule that attributes an agent's acts to a principal—has its own limits. The most important limit is the adverse interest exception: an agent's misconduct is not imputed to the principal if the agent was acting entirely in his own interest and adversely to the interest of the corporation.[54] The logic is straightforward: imputation is based on the idea that the agent and principal are, in a relevant sense, one—the agent is working for the principal, carrying out the principal's purposes. When an agent abandons the principal's interests entirely and acts only for himself, that unity breaks down. The corporation is not complicit; it is a victim.

### d. The Defense as Applied Here

### i. Waiver

As an affirmative defense, *in pari delicto* must be pled in a responsive pleading.[55] The Eleventh Circuit is clear that failure to plead an affirmative defense

---

[53]*Official Committee of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 354 (3d Cir. 2001).

[54]*In re CBI Holding Co.*, 529 F.3d 432, 448 (2d Cir. 2008).

[55]Fed. R. Civ. P. 8(c), incorporated by Fed. R. Bankr. P. 7008.

in the answer results in waiver.[56] This Court has applied that rule to this precise defense.[57] Mr. Owoc did not plead *in pari delicto* in his answer and affirmative defenses. He raises it for the first time in opposition to summary judgment—a stage at which new affirmative defenses cannot be introduced.[58] The defense is waived. That conclusion alone is dispositive.

## ii. The Doctrine Does Not Fit This Claim

Even if the defense had been properly preserved, it would fail because the doctrine does not apply to a claim of this kind. Recall the doctrine's premise: two parties, independently and voluntarily at fault, dispute their relative grievances arising from shared wrongdoing. That premise requires two parties with genuinely independent culpability.  It requires that the plaintiff made its own autonomous choice to participate in the conduct at issue.  Without that independence—without two separate actors, each exercising its own will in the same wrongdoing—there are not two wrongdoers.  There is one wrongdoer, and someone that wrongdoer harmed.

Here, the record establishes that VPX had, in Mr. Owoc's own words, "no corporate will separate from Mr. Owoc's own."[59] He was the sole shareholder, sole director, and chief executive officer of VPX for the entirety of the relevant period.[60]

---

[56]*Seaberg v. Steak N' Shake Operations, Inc.*, 697 F. App'x 941, 943 (11th Cir. 2017).

[57]*In re No Rust Rebar, Inc.*, No. 23-01087, 2025 WL 1571065, at *5 n.40 (Bankr. S.D. Fla. June 3, 2025).

[58]*See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

[59]Response at 24. Representations in a party's brief qualify as judicial admissions that can be used against them for purposes of summary judgment. *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).

[60]*Id*. at 3.

VPX did not independently choose to engage in the Super Creatine scheme; VPX had no capacity to make an independent choice. Mr. Owoc made the choice, and because he was VPX's only decision-maker, the law attributed that choice to VPX as well.

The jury in the Monster False Advertising Litigation found VPX and Mr. Owoc jointly and severally liable for willful false advertising. Mr. Owoc points to that finding as proof that VPX was an "active participant" and equal wrongdoer, making it ineligible to sue him. But that argument collapses under scrutiny. VPX's liability in the Monster False Advertising Litigation was the legal consequence of Mr. Owoc's own conduct being attributed to the entity he wholly controlled. The jury's finding of willfulness against VPX reflects Mr. Owoc's willfulness, not some independent institutional decision by VPX to deceive. VPX had no will of its own—Mr. Owoc has admitted as much. A finding of equal liability against an entity with no independent decision-making capacity is not a finding of equal responsibility in the sense the doctrine requires.

Put plainly: you cannot be in equal fault with yourself. Mr. Owoc was VPX. The conduct was his. The liability was his, attributed back to the corporate form he owned and controlled. Allowing him to point to that attribution as a shield against accountability to VPX would be, as the Delaware Court of Chancery put it, "to let fiduciaries immunize themselves through their own wrongful, disloyal acts—a "transparently silly result."[61] The doctrine was designed to prevent courts from refereeing disputes between wrongdoers. There is only one wrongdoer here.

---

[61]*Stewart v. Wilmington Trust SP Servs.*, 112 A.3d 271, 304 (Del. Ch. 2015).

### iii. The Fiduciary Duty Exception

Even setting aside the threshold problem just described, the defense fails for an additional and independent reason: *in pari delicto* has never been applied, in Florida or elsewhere, to bar a corporation's claim against its own officer for breach of the duty that officer owed to the corporation. The doctrine has been applied to bar trustees' claims against third parties including auditors, lawyers, and investment bankers, who allegedly failed to detect or prevent corporate fraud.[62] That is a fundamentally different situation. In those cases, the defendant owed no duty to the corporation as a fiduciary; the imputation framework was being used to level the playing field between a wrongdoing corporation and a professional who facilitated the wrong.  Here, Mr. Owoc is the wrongdoer, and the claim is that he violated the specific duty he owed to VPX as its officer and director. Extending *in pari delicto* to that situation would not level a playing field. It would immunize the very person whose faithlessness is the subject of the suit.

This distinction is recognized across jurisdictions.  Courts applying Delaware corporate law, which Florida courts regularly consult on matters of corporate governance, have held that *in pari delicto* does not bar a claim by a corporation or its representative against the corporation's own faithless fiduciary.[63] The reasoning is intuitive: a fiduciary cannot use the consequences of his own breach to immunize

---

[62]*See, e.g., O'Halloran v. PricewaterhouseCoopers LLP*, 969 So. 2d 1039, 1046 (Fla. 2d DCA 2007).

[63]*Stewart v. Wilmington Trust SP Services, Inc.*, 112 A.3d 271, 303–04 (Del. Ch. 2015), *aff'd*, 126 A.3d 1115 (Del. 2015).

himself from accountability for that breach.  As previously stated, to hold otherwise "would be to let fiduciaries immunize themselves through their own wrongful, disloyal acts—a transparently silly result."[64] The Eleventh Circuit has stated that it relies "with confidence upon Delaware law to construe Florida corporate law" and that "Florida courts have relied upon Delaware corporate law to establish their own corporate doctrines."[65]

This Court need not predict whether Florida would adopt the full doctrinal framework of the fiduciary duty exception as Delaware has articulated it. It is enough to observe that no court, in Florida or elsewhere, has applied *in pari delicto* to defeat a corporation's own fiduciary duty claim against its own officer. This Court declines to be the first. Equity does not immunize faithless fiduciaries from the claims of the entities they betrayed.

### iv. The Bateman Eichler Test—An Additional and Independent Basis for Rejection

Even if all of the above analysis were set aside, the defense would independently fail the two-part test the Supreme Court established in *Bateman Eichler, Hill Richards, Inc. v. Berner*,[66] the very case Mr. Owoc relies upon.

*Bateman Eichler* holds that *in pari delicto* does not bar a claim unless two conditions are met: (1) the plaintiff bears "at least substantially equal responsibility" for the underlying violations, and (2) preclusion of the suit would not "significantly

---

[64]*Id.*

[65]*Int'l Ins. Co. v. Johns*, 874 F.2d 1447, 1459 n.22 (11th Cir. 1989).

[66] *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299 (1985)

interfere with the effective enforcement" of the relevant law.[67]  Both conditions must be satisfied.  If either fails, the defense does not apply.

The Court assumes, without deciding, that the first condition is technically met given VPX's joint and several liability in the Monster False Advertising Litigation. That assumption is generous to Mr. Owoc for reasons already explained. But the second condition independently defeats his argument.

Consider the consequences of applying *in pari delicto* to facts like these. Mr. Owoc was the sole director, sole shareholder, and chief executive of VPX. As he himself admits, VPX had no corporate will independent of his.  Under Florida law, he owed VPX fiduciary duties—a duty of care and a duty of loyalty—that obligated him to act in the company's best interest and not to expose it to catastrophic liability through willful misconduct.[68]

If *in pari delicto* applies whenever a sole owner-operator's misconduct is attributed back to the corporation he controlled, and under basic agency principles it always will be, then the defense would be available in every such case, without exception. The sole director breaches his duty, the corporation suffers harm, but no one can ever enforce the duty because the corporation is deemed an equal participant in the breach. The fiduciary obligation owed by a sole owner-operator to his corporation would be, in practice, unenforceable. Not as a matter of bad luck in a particular case, but as a structural feature of the law as applied to every sole owner-

---

[67]*Id.* at 310–11.

[68]Fla. Stat. § 607.0830(1); § 607.08411(1)–(2).

operator. That result would systematically immunize the most powerful actors in closely held corporations from the most fundamental obligations corporate law imposes on them.

That is precisely the type of systemic interference with the enforcement of legal obligations that *Bateman Eichler*'s second prong was designed to prevent. The defense fails on this ground as well.

### v. Public Policy

For the same reasons, application of *in pari delicto* here would be contrary to public policy under the framework this district has applied.[69] Here, the doctrine's purposes to deter wrongdoing and keep courts out of disputes between equally culpable parties would be inverted, not served. Applying the defense would not deter wrongdoing; it would insulate it. It would not keep courts out of disputes between wrongdoers; it would prevent a court of equity from providing the remedy that innocent creditors are owed. The Trust's recovery, if any, flows to VPX's unsecured creditors—parties who had nothing to do with Mr. Owoc's conduct and everything to lose from it.

### 3. Unclean Hands

Defendant next invokes the doctrine of unclean hands, an equitable defense rooted in the maxim that "he who comes into equity must come with clean hands."[70] It bars a party from obtaining relief when that party has engaged in inequitable

---

[69]*In re Gosman*, 382 B.R. 826, 838 (S.D. Fla. 2007).

[70]*Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814 (1945).

conduct related to the matter before the court.[71] The doctrine is closely related to in pari delicto, but has traditionally been applied when a plaintiff seeks equitable relief rather than money damages.

In the Eleventh Circuit, a defendant asserting unclean hands must demonstrate two things: (1) that the plaintiff's wrongdoing is directly related to the claim asserted; and (2) that the defendant was personally injured by the plaintiff's conduct.[72]

The first element is arguably met here. VPX was found jointly liable for the false advertising that forms the basis of Count Three, and so VPX's wrongdoing is directly "related to the claim." But the second element is not met. Mr. Owoc cannot credibly claim to have been personally injured by VPX's conduct because VPX's "conduct" was his conduct. He was the sole director, sole officer, and sole decision-maker. He devised the Super Creatine compound and directed its marketing. VPX did not act upon Mr. Owoc to his detriment; Mr. Owoc acted through VPX. He is not a victim of VPX's wrongdoing; he is its sole author.

<u>4. Abuse of Process</u>

Defendant next argues abuse of process, an intentional tort that arises when a party misuses legal process for a purpose other than that for which it was designed. Under Florida law, a claim for abuse of process requires: (1) an illegal, improper, or perverted use of process; (2) an ulterior motive or purpose; and (3) resulting

---

[71]*Id.*

[72]*Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 450–51 (11th Cir. 1993).

damages.[73] Critically, "there is no abuse of process, however, when the process is used to accomplish the result for which it was created. . ."[74]

Defendant has not identified any cognizable abuse. Filing a motion for summary judgment supported by preclusive findings from a prior federal court proceeding is regular use of litigation tools, not a perversion of the judicial process. To accept Defendant's argument would mean that any prevailing party who relies on a prior judgment to streamline subsequent litigation is engaged in abuse of process. That is not the law.

### C. Other Arguments

The Defendant raises a series of additional arguments. The Court has considered each and finds them without merit.

### 1. The Business Judgment Rule

Defendant argues that the business judgment rule shields his marketing decisions from judicial scrutiny. The business judgment rule creates a presumption that in making a business decision, directors acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the corporation.[75] The rule exists because courts recognize that directors are generally better positioned than judges to evaluate the risks and rewards of corporate decisions, even if those decisions ultimately harm the corporation.

---

[73]*Della-Donna v. Nova University, Inc.*, 512 So. 2d 1051, 1053 (Fla. 4th DCA 1987).

[74]*Bothmann v. Harrington*, 458 So. 2d 1163, 1169 (Fla. 3d DCA 1984).

[75]*Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984).

The presumption, however, is rebuttable. A plaintiff may overcome it by demonstrating that the director breached any one of the triads of fiduciary duty — good faith, loyalty, or due care.[76] If any of these preconditions are absent, the rule's protections are overcome. One applicable category of bad faith conduct sufficient to rebut the presumption is "where the fiduciary acts with the intent to violate applicable positive law."[77]

That applies here. A federal jury found, after seven weeks of evidence, that Mr. Owoc's advertising of Super Creatine was willful and deliberate — that he knew the advertising was false or misleading, or acted with indifference to whether it was. That finding establishes that Mr. Owoc knowingly caused VPX to engage in illegal conduct that violated the Lanham Act. A director who knowingly causes his corporation to violate federal law is not acting in good faith and is not acting in the honest belief that his conduct serves the corporation's best interests. The business judgment rule's presumption is rebutted by such conduct. This is not a case of a business judgment gone wrong — a risky but good-faith marketing strategy that backfired. It is a case of a director who caused his corporation to make claims he knew were false or misleading, or acted with indifference to whether they were false or misleading. The rule was not designed to shield such behavior.

### 2. Sole Ownership Does Not Eliminate Fiduciary Duties

---

[76]*Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993).

[77]*In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 67 (Del. 2006).

Defendant argues that his sole ownership of VPX precludes a breach of fiduciary duty claim absent minority shareholders or insolvency. The sole case he cites, *Taubenfeld v. Lasko*,[78] refutes rather than supports his position. *Taubenfeld* holds that officers and directors are "liable for damages to the corporation which result from a breach of their trust, a violation of authority or neglect of duty," and explains that this liability derives from the common law rule that "every agent is responsible to his principal for such acts which result in damage to the principal."[79] The principal is the corporation—not any particular shareholder or class of shareholders. The duty exists because an agent owes obligations to the entity he serves, and it has nothing to do with whoever holds equity. Neither *Taubenfeld* nor the Florida Business Corporations Act conditions fiduciary duties on the presence of minority shareholders.[80] And as discussed in the Court's analysis of *in pari delicto*, conditioning the duty as such would be contrary to public policy.

### 3. Insolvency Is Not an Element of the Claim

Defendant devotes considerable briefing to VPX's solvency, citing audited financials, EBITDA figures, and credit facilities. Defendant argues that VPX was, at certain points, a commercially successful enterprise. But insolvency is not an element of a breach of fiduciary duty claim. The elements are duty, breach, and damages—nothing more. The damage here is the False Advertising Judgment approaching $300

---

[78]*Taubenfeld v. Lasko*, 324 So. 3d 529 (Fla. 4th DCA 2021).

[79]*Id.* (quoting *Flight Equip. & Eng'g Corp. v. Shelton*, 103 So. 2d 615, 627 (Fla. 1958)).

[80]Fla. Stat. §§ 607.0830(1), 607.08411(1)–(2).

million. That is damage to VPX as a corporate entity regardless of whether the judgment rendered VPX insolvent. No Florida statute or case law conditions liability on the corporation's solvency. If the law were otherwise, a wrongdoing fiduciary could escape accountability so long as the corporation's balance sheet remained in the black, no matter how reckless the conduct.

### 4. Cause of Financial Distress

Defendant argues that VPX's financial distress had multiple causes—the OBI arbitration,[81] credit facility defaults, the PepsiCo termination,[82] macroeconomic conditions. This misses the mark. The Trust does not need to prove that the Super Creatine Scheme was the sole cause of VPX's insolvency, nor does it need to prove that the breach caused insolvency at all. The damage is the False Advertising Judgment approaching $300 million —a specific, quantifiable harm with a direct causal chain. Mr. Owoc directed the false advertising, Monster sued, the jury found willful false advertising, and VPX was held liable. The existence of other harms does not sever that chain.

### 5. The Orange Bang Arbitration

Relatedly, Defendant emphasizes the OBI/Monster arbitration—which imposed approximately $175 million in liability on VPX alone—as evidence that Mr. Owoc bears no personal responsibility. The argument is that because VPX was held

---

[81]This litigation arose from VPX's violation of a trademark settlement agreement with Orange Bang, Inc. and resulted in approximately $175 million in liability against VPX. It is the subject of Count Four of the Second Amended Complaint.

[82]Mr. Owoc's unilateral termination of VPX's exclusive distribution agreement with PepsiCo, which spawned multiple lawsuits and a confidential settlement.

liable but Mr. Owoc was not, the OBI result undermines the Trust's theory. It does not. The OBI arbitration involved different legal claims—trademark infringement, not false advertising—and different legal theories. It is the subject of a separate count of the Second Amended Complaint. This Motion concerns Count Three and the damage arising from the False Advertising Judgment, for which Mr. Owoc was found personally liable. The fact that an arbitrator in a different proceeding reached a different liability allocation on different claims does not create a genuine dispute of material fact.

## VI. Defendant's Cross-Motion

Defendant's Cross-Motion rests on the same arguments the Court just rejected. It also suffers from a procedural deficiency: it is not a motion at all, but rather a request for affirmative relief embedded in a responsive brief. Under Federal Rule of Civil Procedure 7(b), a request for a court order must be made by motion.[83] A response is not a motion.[84] And while Rule 56(f)(1) authorizes the Court to grant summary judgment for a nonmovant, that provision is a tool available for the Court to employ in its discretion; it is not a vehicle for a party to file a cross-motion by another name without complying with the procedural requirements.[85]

---

[83]Fed. R. Civ. P. 7(b), incorporated by Fed. R. Bankr. P. 7007.

[84]*CompRehab Wellness Grp., Inc. v. Sebelius*, No. 11-23377-CIV, 2013 WL 1827675, at *7 n.20 (S.D. Fla. Apr. 30, 2013); *Anderson v. Branch Banking & Trust Co.*, 119 F. Supp. 3d 1328, 1351 (S.D. Fla. 2015).

[85]*Abreu v. EB & JB Corp.*, No. 14-23266-CIV, 2015 WL 12570946, at *1 (S.D. Fla. Dec. 8, 2015) ("Rule 56(f)(1) explicitly refers to the court's authority to grant relief for a nonmovant. If a party moved for summary judgment, by definition, it cannot be considered a nonmovant and thus Rule 56(f)(1) would be inapplicable.").

Even if the Cross-Motion were properly filed, it fails on the merits for the reasons already stated. The Cross-Motion is denied.

## VII. Conclusion

The record in this case tells a straightforward story. Mr. Owoc was VPX's sole fiduciary. He devised the Super Creatine compound, directed VPX to market it with health claims that a federal jury found to be willfully and deliberately false, and in doing so exposed VPX to a judgment approaching $300 million. Collateral estoppel bars relitigation of those findings. Each element of the Trust's breach of fiduciary duty claim—duty, breach, and damages—is established as a matter of law. None of Defendant's arguments creates a genuine dispute of material fact, and the equitable and legal defenses he raises are either waived, inapplicable, or contrary to public policy.

Accordingly, **the Court ORDERS**:

1. The Liquidating Trust's Motion to Take Judicial Notice of Certain Filings in Monster Energy Co. v. Vital Pharms., Inc. in Support of Motion for Partial Summary Judgment [Dkt. No. 365] is **GRANTED**.

2. The Liquidating Trust's Motion for Partial Summary Judgment on Count Three of the Second Amended Complaint [Dkt. No. 364] is **GRANTED**. Defendant John H. Owoc is liable for breach of fiduciary duty as alleged in Count Three. The Court's determination of damages is reserved for further proceedings.

3. Defendant's Cross-Motion for Summary Judgment [Dkt. No. 384] is **DENIED**.

# # #

Copies To:
All Parties in Interest.